Heidi McNeil Staudenmaier (#010387)
Brett W. Johnson (#021527)
Sara J. Agne (#026950)
Thomas Clees (#031638)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: hstaudenmaier@swlaw.com
bwjohnson@swlaw.com
sagne@swlaw.com
tclees@swlaw.com
*Attorneys for Defendant Doug Ducey, Governor of Arizona*

MARK BRNOVICH
Attorney General
Firm Bar No. 14000
Thomas K. Chenal (006070)
Karen J. Hartman-Tellez (021121)
Assistant Attorneys General
1275 W. Washington Street
Phoenix, AZ 85007
Telephone (602) 542-4951
Facsimile (602) 542-4385
adminlaw@azag.gov
*Attorneys for Defendant Mark Brnovich*

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

The Tohono O'odham Nation,

Plaintiff,

v.

Douglas Ducey, Governor of Arizona; Mark Brnovich, Arizona Attorney General; and Daniel Bergin, Director, Arizona Department of Gaming, in their official capacities.

Defendants.

Case No. CV-15-01135-DGC

**DEFENDANTS DUCEY AND BRNOVICH'S MOTION TO DISMISS**

**(Oral Argument Requested)**

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Pursuant to Rule 12(b)(1) and (6), Federal Rules of Civil Procedure, Defendants Douglas Ducey, Governor of the State of Arizona, and Mark Brnovich, Attorney General of the State of Arizona, move to dismiss the Tohono O'odham Nation's ("the Nation") Complaint (Doc. 1) with prejudice for lack of jurisdiction and failure to state a claim. This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF ARGUMENT

The Eleventh Amendment bars the Nation from asserting claims against the State directly. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996). To avoid that bar, the Nation instead named three State officials to take advantage of the exception to the State's sovereign immunity. *See Ex Parte Young*, 209 U.S. 123 (1908). The Nation's Complaint asks this Court to enter an injunction under *Ex Parte Young* against Arizona Governor Ducey and Attorney General Brnovich simply because they expressed their views on a state policy and a state law that the Director of the Arizona Department of Gaming ("ADG") is authorized to administer.

As discussed further below, in the years since *Ex Parte Young*, 209 U.S. at 157, the federal judiciary has consistently reaffirmed that *Ex Parte Young* exceptions are inapplicable to situations where state officials lack the requisite connection to the regulatory actions sought. *E.g., Confed. Tribes & Bands of the Yakama Indian Nation v. Locke*, 176 F.3d 467, 469-70 (9th Cir. 1999); *Snoeck v. Broussa*, 153 F.3d 984, 987 (9th Cir. 1998); *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (*per curiam*); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 714 F.2d 946, 955 (9th Cir. 1983).

As the Director of the ADG notes in his motion, an *Ex Parte Young* exception is also wholly foreclosed by Supreme Court precedent. The doctrine is "inapplicable" to suits claiming violations of rights conferred by IGRA. *See Seminole Tribe*, 517 U.S. at 76. IGRA's "detailed remedial scheme for the enforcement against a State of a statutorily created right" shows Congress did not allow alternative means to enforce IGRA's

mandates. *Id*. at 74. In *Seminole Tribe*, the Court concluded that the tribe's suit against the governor of Florida was "barred by the Eleventh Amendment and must be dismissed for a lack of jurisdiction." *Id.* at 76.

The sparse factual allegations against the Governor and Attorney General demonstrate that the Nation cannot establish this Court's subject-matter jurisdiction or even plausibly allege a violation of federal law that merits injunctive relief.[1] The fact that the Nation at times uses the collective "Defendants"—improperly combining all three defendants together—to describe the conduct of ADG does not change this. (*E.g.*, Compl., Doc. 1, at ¶¶ 6, 92, 95, 118, and Prayer for Relief.) Rule 8(a), Fed. R. Civ. P., requires that a complaint provide a defendant with sufficient notice of its alleged wrongdoing so that it can adequately defend against those allegations. A complaint—like that here—that does not differentiate among defendants, fails to provide the notice required by Rule 8. *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal of complaint that failed to "match up the specific factual allegations and the specific legal claims to a specific defendant").

Specifically, the actual allegations against the Governor and Attorney General appear in just two paragraphs:

> **78.** This newly minted position was apparently the product of political pressure by Governor Ducey and Attorney General Brnovich. ADG's April 10 letter attached a letter from the Office of the Arizona Attorney General and a letter from Defendant Ducey. Citing A.R.S. § 5-602, the Attorney General's letter advised ADG that, "[i]n determining whether to certify the proposed casino, [ADG] is vested with the statutory discretion

[1] Subject-matter jurisdiction is a question of law. *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189 (9th Cir. 2008). When considering a Rule 12(b)(1) motion, "the district court is not confined by the facts contained in the four corners of the complaint . . . and need not assume the truthfulness of the complaint." *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). For purposes of the Governor's and Attorney General's Rule 12(b)(6) arguments, all "facts" included in this Memorandum are taken from the Nation's Complaint (Doc. 1), and are taken as true for purposes of this Motion only. The Governor and Attorney General reserve the right to deny or challenge the Nation's factual allegations should this litigation proceed. *See Wyman v. Wyman*, 109 F.2d 473, 474 (9th Cir. 1940). And this Court is not required to accept the truth of any of Plaintiff's legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

> to determine whether the application is at odds with the public welfare and safety and/or is consistent with the thorough and fair regulation of gaming in Arizona." Exh. F at 6 (Letter from Maria Syms to Daniel H. Bergin (Apr. 2, 2015)).
>
> **79.** Defendant Ducey's letter of April 8 "reaffirm[ed] the State of Arizona's position" that the Nation's West Valley Resort "is the product of fraud, fraudulent concealment, and misrepresentation." Exh. F at 7 (Letter from Douglas A. Ducey to Daniel H. Bergin (Apr. 8, 2015)). That letter requested that, if Director Bergin agreed with Governor Ducey that evidence of fraudulent inducement would "be grounds for the denial of the regulatory approvals necessary to operate the proposed casino, … [he] communicate those grounds to the [Nation] at the earliest appropriate date." *Id.* at 8.

(Compl., Doc. 1, at ¶¶ 78-79.) The letters referenced in ¶¶ 78-79 of the Complaint are not actionable conduct, and an injunction against the Governor and Attorney General prohibiting such conduct would not provide the Nation with relief. The Governor and Attorney General simply lack the regulatory connection to this area, in that they cannot issue the approvals the Nation seeks. Thus, the Eleventh Amendment bars the Nations' claims. *See Seminole Tribe*, 517 U.S. at 75-76.

In addition, the Nation's allegations that the Governor and Attorney General's conduct violates rights created by the Indian Gaming Regulatory Act ("IGRA") fail for multiple other reasons, including that (1) the Nation's claims are a *de facto* mandamus action seeking unconstitutional relief; (2) they are non-justiciable; and (3) the Nation, in any event, fails to state a claim for relief.

For these reasons and as more fully explained below, the Court should dismiss the Nation's claims as to the Governor and Attorney General.

## II. THE NATION'S CLAIMS AGAINST THE GOVERNOR AND ATTORNEY GENERAL ARE BARRED BY SOVEREIGN IMMUNITY.

The Eleventh Amendment bars the Nation from pursuing its claims against the State. *See Seminole Tribe*, 517 U.S. at 75-76 (affirming dismissal of complaint seeking state compliance with IGRA on sovereign immunity grounds). And the Nation cannot establish any connection between the State's alleged violation of federal law and the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Governor's or Attorney General's certification or enforcement authority, to bring its claims within an *Ex Parte Young* exception.

Put another way, injunctive relief against the Governor or Attorney General requiring them to certify the Nation's employees and vendors under A.R.S. § 5-602 would be to no avail as they have no such authority. Consequently, the claims against the Governor and Attorney General are truly claims against the State, and the State's sovereign immunity requires dismissal of those claims. *Los Angeles Branch NAACP*, 714 F.2d at 955.

### A. The *Ex Parte Young* Exception Does Not Apply Because the Governor and Attorney General Have No Connection to Enforcement of A.R.S. § 5-602.

*Ex Parte Young* holds that:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer ***must have some connection with the enforcement of the act,*** or else it is making him a party as a representative of the State, and thereby attempting to make the State a party.

209 U.S. at 157 (emphasis added). The "connection" required by *Ex Parte Young* is more than a state official's general supervisory or advisory authority. *Id.* (rejecting the idea that one could sue the governor and attorney general to test the constitutionality of every state statute due to their general duties to enforce the state's laws); *Long v. Van de Kamp*, 961 F.2d at 152 (requiring a "threat of enforcement" by the defendant state official who is capable of engaging in an enforcement action). Importantly, as for the facts alleged here, "the possible use of persuasion" by a state official is insufficient to invoke the *Ex Parte Young* exception. *Snoeck v. Broussa*, 153 F.3d at 987 (dismissing complaint against state officials who could not take enforcement action under court rules they were required to follow).

Here, the Nation has alleged only that the Governor and Attorney General attempted to persuade the Director to follow their interpretations of A.R.S. § 5-602. The Nation has not alleged, nor could it allege, that the Governor or the Attorney General has

any certification or approval authority under A.R.S. § 5-602. Consequently, the Nation cannot establish the connection necessary to use the *Ex Parte Young* exception, and its claims against the Governor and Attorney General must be dismissed.

**1. The Governor Does Not Certify Companies and Individuals Involved in Gaming.**

The Nation's Complaint alleges that ADG's assertion of its authority not to issue certifications and approvals under A.R.S. § 5-602(A) due to the Nation's "disqualifying conduct" violates federal law. (Compl., Doc. 1, at ¶ 101.) Nothing in A.R.S. § 5-602 gives the Governor approval or certification authority. Indeed, the Governor's authority with respect to gaming on Indian Lands includes compacting and appointing ADG's director. *See* A.R.S. §§ 5-601(A), 5-601.02, 5-604(B). In short, he has no connection with certifications under A.R.S. § 5-602, and the Nation's claims against the Governor must be dismissed. *See Los Angeles Branch NAACP*, 714 F.2d at 953 (holding the Eleventh Amendment barred claims against the Governor where his duties and powers lacked the requisite connection to remedying the effects of unconstitutional school segregation to come within *Ex Parte Young*); *see also Confed. Tribes & Bands of the Yakama Indian Nation*, 176 F.3d at 469-70 (dismissing lawsuit in which tribe claimed that operation of state lottery on its reservation violated IGRA, 25 U.S.C. § 2710(d)(1), because the governor did not have responsibility for determining where lottery tickets were sold).

**2. And, The Attorney General Does Not Administer A.R.S. § 5-602.**

Arizona Revised Statutes, Title 5, Chapter 6 mentions the Attorney General only once. Section 5-602.01(C) authorizes the Attorney General to file an action to recover civil penalties imposed by ADG against certificate holders. The Nation complains that ADG is refusing to issue certificates, and therefore A.R.S. § 5-602.01 is not and cannot be at issue.

Moreover, the Attorney General's general authority to provide legal advice to ADG does not bring him within the *Ex Parte Young* exception. *See* A.R.S. § 41-192(A)(1) (naming the Attorney General as the legal advisor for state departments); *So. Pac. Transp.*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

*Co. v. Brown*, 651 F.2d 613, 615 (9th Cir. 1980) (holding that "[t]he attorney general's power to direct and advise does not . . . establish sufficient connection with enforcement to satisfy *Ex Parte Young*"); *Young v. Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008), *overruled on other grounds by Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) ("Allegations of general oversight of State laws are insufficient to establish the required nexus between the State officials, the Governor and the Attorney General, and the alleged violation of Plaintiff's civil rights through the enforcement of [a state law]."). While the Attorney General's legal advice may be persuasive, it is not binding on ADG. *See So. Pac. Transp.*, 651 F.2d at 615. As such, there exists no legally sufficient connection between the Attorney General and ADG's execution of its duties under A.R.S. § 5-602 to warrant the Nation's claims against the Attorney General. *Id.*

### B. Allegations Against the Governor and Attorney General Are Limited to their Expressions of Opinion.

The Nation's Complaint simply alleges that the Governor and Attorney General exerted "political pressure" on defendant Daniel Bergin, the ADG Director (the "Director"). (Compl., Doc. 1, at ¶¶ 78-79; *see also id.* at ¶ 82 (alleging that the Director acted "at the behest of the other Defendants").) Even if true, these allegations are insufficient to give this Court jurisdiction over the Governor and Attorney General.

Specifically, the Nation alleged that the Governor and Attorney General each sent the Director a letter. (*Id.* at ¶¶ 78-79.) The Governor's letter affirmed the State's position regarding the Nation's use of fraud, fraudulent concealment, and misrepresentation to secure its compact with the State ("Compact")—as set forth in *Arizona v. Tohono O'odham Nation,* No. CV-11-00296-PHX-DGC—and explained the Governor's belief that the evidence supporting such position would be grounds for denial of certifications under A.R.S. § 5-602. (*Id*. at Ex. F.) The Governor's letter further invited the Director to inform the Nation "at the earliest appropriate date" if he agreed with the Governor. (*Id*.)

The Attorney General's letter set forth his legal interpretation of A.R.S. § 5-602, that "the Department is vested with the statutory discretion to determine whether the

application [for certification under A.R.S. § 5-602] is at odds with the public welfare and safety and/or is consistent with the thorough and fair regulation of gaming in Arizona." (*Id.* at ¶ 78, Ex. F.) The Attorney General further stated that ADG had the option of exercising such discretion to deny certifications under A.R.S. § 5-602 if it "determines that the Nation has not met its obligations with respect to the regulatory structure set forth in the Arizona Tribal-State Gaming Compact." (*Id.* at Ex. F.) Notably absent from these letters are any mandates to ADG from either the Governor or Attorney General.

## III. THE NATION'S ACTION IS ONE FOR MANDAMUS MASQUERADING AS PREEMPTION.

### A. A Federal Court May Not Issue Mandamus to State Officials.

The Nation does not argue that a specific Arizona law is preempted by IGRA. (*See generally* Compl., Doc. 1.) Instead, it claims IGRA preempts both "defendants' obstruction of lawful Class III gaming" and "state regulation of class II[2] gaming." (Compl., Doc. 1, at 24, 30.) The reality is that the Nation does not approve of the manner in which State officials are applying State law and thus attempts to argue that the offending application of the law is preempted, in essence requesting mandamus relief. *See id.*

This is wholly inappropriate—particularly as an action brought before this Court. *See* 28 U.S.C. § 1361 (limiting federal court mandamus jurisdiction to officers of the United States); *see also Yes on Prop 200 v. Napolitano*, 160 P.3d 1216, 1223 (Ariz. App. 2007) ("If, as Plaintiffs suggest, a mandamus action could be brought to challenge the opinions of the Attorney General . . . courts would effectively become direct legal advisors to the government.").

---

[2] The Nation has no support for its assertion that "Defendants have also threatened to compromise the Nation's ability to engage in Class *II* gaming[.]" (Compl., Doc. 1, at ¶ 84) (emphasis in original). The Governor's and Attorney General's letters merely express their policy positions concerning ADG's discretion to issue *Class III* gaming certifications for the unauthorized facility. Neither correspondence ever mentions Class II gaming. (*See* Compl., Doc. 1, at Ex. F.)

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Even if this action were pending in state court, mandamus relief[3] would be inappropriate. *See Yes on Prop 200*, 160 P.3d at 1223 ("This would be an inappropriate usurpation by the courts of responsibility assigned to the Attorney General and, in our view, a violation of the separation of powers. Our system of government prohibits one branch of the government from exercising the powers granted to another branch of the government.").

**B. Granting The Nation's Requested Relief As to the Governor and Attorney General Would Violate the Anti-Commandeering Doctrine.**

The federal government "may not compel the States to implement, by legislation or executive action, federal regulatory programs . . . [or] force the States to regulate third parties in furtherance of a federal program." *Environmental Def. Ctr., Inc. v. United States Envtl. Prot. Agency*, 344 F.3d 832, 847 (9th Cir. 2003) (internal citations and punctuation omitted); *see also* U.S. CONST. amend. 10 ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). Moreover, it is unconstitutional to "require State or local governments to legislate on behalf of the federal government, or [to] require State officials to administer any federal program." *Life Teen, Inc. v. Yavapai Cnty.*, No. 3:01-CV-1490 RCB, 2003 WL 24224618, at *16 (D. Ariz. Mar. 26, 2003). Granting the Nation's requested relief as to the Governor and Attorney General would unconstitutionally commandeer them as agents of the federal government. *See Printz v. United States*, 521 U.S. 898, 923 (1997) (noting that federal executive "unity would be shattered . . . if Congress could act as effectively without the President as with him, by simply requiring state officers to execute its laws.").

The Governor's ability to negotiate tribal-state gaming compacts on behalf of the State is delegated by the Arizona Legislature and the voters via Proposition 202 in 2002.

[3] The Nation's requests for relief may alternatively be viewed as a request for specific performance of ADG duties pursuant to the Nation's 2002 Compact with the State. Presumably, the Nation seeks to avoid overtly bringing a breach-of-Compact action, which would expose it to traditional contractual affirmative defenses—like fraud—and involve waivers of its sovereign immunity.

*See Am. Greyhound Racing, Inc. v. Hull*, 146 F. Supp. 2d 1012, 1030 (2001), *vacated on other grounds by* 305 F.3d 1015 (9th Cir. 2002). Commandeering the Governor's and Attorney General's authority as the Nation has requested is the equivalent of an order requiring the State to legislate on behalf of the federal government. *See LifeTeen, Inc.*, 2003 WL 24224618, at *16. The Nation requests a "prescription for state and local governing bodies to use their . . . power in a specified way." *See Petersburg Cellular P'ship v. Bd. of Sup'rs of Nottoway Cnty*., 205 F.3d 688, 702 (4th Cir. 2000). The Tenth Amendment simply does not permit the federal government to command a State to "govern according to Congress's instructions." *New York v. United States*, 505 U.S. 144, 162 (1992).

The Nation's requested relief is simply an attempt to make the Governor and Attorney General perform purported specific duties under IGRA instead of complying with Arizona law, in violation of the anti-commandeering doctrine. *See Printz*, 521 U.S. at 923.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## IV. THE NATION'S CLAIMS ARE NOT JUSTICIABLE.

### A. The Nation Lacks Standing to Assert its Claims; It Cannot Show an Injury-in-Fact.

Article III standing requires a plaintiff to show "(1) an injury in fact (i.e., a concrete and particularized invasion of a 'legally protected interest'); (2) causation (i.e., a 'fairly . . . trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is 'likely' and not merely 'speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (internal citations and some quotation marks omitted). The Nation's Complaint does not meet these requirements.

A plaintiff must demonstrate it "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Abstract injury is not enough," the

plaintiff must plead that it has "sustained or is immediately in danger of sustaining some direct injury" before the federal court can assume jurisdiction. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) *(citing Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).

The Complaint raises concerns that Defendants have adopted a legal position authorizing ADG to deny regulatory certifications and approvals submitted by the Nation. (Compl., Doc. 1, at ¶ 82.) But this action has not translated into actual or imminent injury to the Nation. *See Defenders of Wildlife*, 504 U.S. at 560-61. Moreover, the Nation claims that ADG's actions—not the Governor's or Attorney General's—seek "to halt any progress that Plaintiff *might* make" in developing its facility, and "*threaten*[] to interfere with Plaintiff's" right to engage in certain gaming. (Compl., Doc. 1, at ¶¶ 8-9) (emphasis added). As a result, Plaintiff has not demonstrated the first prong of the standing analysis.

**B. Assuming that the Nation Had Suffered the Alleged Injury-in-Fact, Neither the Governor Nor the Attorney General Could Have Caused It.**

The causation prong of the standing doctrine requires there be a connection between the injury and the conduct: "the injury has to be fairly . . . traceable to the challenged action of the defendant." *Defenders of Wildlife*, 504 U.S. at 560 (internal quotation marks omitted). The Nation has not demonstrated an injury in fact to grant standing. Even if an injury exists, it is not traceable to the Governor or Attorney General.

Most of the Nation's allegations in the Complaint address ADG actions. The Governor and the Attorney General are only named parties to this litigation because each sent a letter expressing an opinion regarding ADG's statutory discretion to evaluate whether an application for certification comports with public welfare and safety. (Compl., Doc. 1, at ¶¶ 78-79.) The letters merely provide information and options to ADG—they did not require ADG take any specific action. (Compl., Doc. 1, at Ex. F.) Without any clear connection between the letters and concrete harm, the Nation has not shown that either the Governor or Attorney General caused it injury.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**C. The Relief Sought Would Not Remedy The Nation's Alleged Injury.**

Even if this Court determines there is an injury caused by the Attorney General or Governor, the Nation's requested relief does not resolve such injury. The redressability prong of the standing doctrine requires "an analysis of whether the court has the power to right or to prevent the claimed injury." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). If the requested relief will not resolve the injury, the plaintiff does not have standing to bring the claim.

Here, neither the Governor nor the Attorney General has the ability to consider, grant, or deny gaming certifications or approvals. The Nation's requested remedies focus on the regulation of gaming at the unauthorized facility, a locus of authority that neither the Governor nor Attorney General ultimately control. Even if the Court grants *every* remedy requested, the resulting judgment would be akin to an advisory opinion that will affect neither the Governor nor Attorney General. *See Shell Gulf of Mexico, Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635-36 (9th Cir. 2014) (federal courts lack jurisdiction to grant declaratory relief absent a justiciable case or controversy); *Thomas v. City of Phoenix*, 828 P.2d 1210, 1215 (Ariz. App. 1992) (courts will not hear cases that seek declaratory judgments that are advisory). Thus, the redressability requirement has not been met.

**D. The Nation's Claims Are Unripe.**

Even if the Governor and Attorney General had constitutional or statutory authority to "perform regulatory approvals" for Indian gaming at the unauthorized facility—which they do not—the Nation's allegations fail to allege a ripe claim. (*See* Compl., Doc. 1, at ¶ 95.) The doctrine of ripeness "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (internal citations omitted); *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014), *as amended* (Sept. 2, 2014), *cert. denied*, 135 S. Ct. 1699 (2015).

Ripeness arises in two forms—constitutional and prudential. Constitutional ripeness inquiry turns on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014). Where the "injury" at issue is an "imminent" denial of a regulatory approval, the plaintiff must do more than allege the relevant agency will not exercise its discretion properly—it must show a substantial likelihood that the application actually will be denied ***by the defendant agency***. *Id.* at 1189 (holding allegations that a state environmental agency would not conduct an appropriate analysis for a pending mine application did not present a ripe action for imminent and improper regulatory action). The application cannot be denied here by the Governor or Attorney General because neither has the authority to grant the application and, therefore, the claims by the Nation against the Governor and Attorney General are not constitutionally ripe.[4]

The prudential ripeness inquiry is similar, but considers (1) the fitness of the issues for judicial review—insofar as more facts and administrative action must accrue before the alleged "injury" is clear—and (2) whether the parties would be harmed by withholding consideration. *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123-24 (9th Cir. 2009); *Arizona v. Tohono O'odham Nation*, No. CV11-0296-PHX-DGC, 2011 WL

---

[4] Additionally, the Nation has failed to exhaust its administrative remedies before ADG. A state agency's administrative process "must be completely exhausted before seeking judicial relief." *Life Teen, Inc. v. Yavapai Cnty.*, 2003 WL 24224618, at **9-11; *see also* A.R.S. § 41-1092.09(B); *Estate of Bohn v. Waddell*, 848 P.2d 324, 330-31 (Ariz. App. 1992) (courts lack jurisdiction over unexhausted claims). In this regard, Defendant Bergin's April 17, 2015, letter (Compl., Doc. 1, at Ex. H) invited the Nation to disclaim the allegations of fraudulent conduct with specific evidence. This the Nation also did not do. (Compl., Doc. 1, at Ex. I.)

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

2357833, at *5 and n.3 (D. Ariz. June 15, 2011). Even if Article III is satisfied, a federal court does not appropriately consider the legality of regulatory action until the course of events demonstrates a concrete agency action that harms or threatens to harm the plaintiff. *Colwell*, 558 F.3d at 1124.

The Nation does not allege that any vendor, manufacturer, gaming employee, or contractor has actually requested certification from the Governor or Attorney General, and neither official has denied any regulatory approval.[5] The Nation also does not allege the Governor or Attorney General actually has power to deny Class III gaming certification. The Governor and the Attorney General have no power to deny regulatory approval because they have no power to grant regulatory approval. The Nation's claim is not prudentially ripe. Any quarrel the Nation has with ADG's actions cannot be extended to the Governor or Attorney General for simply providing opinions on an agency's statutory duties—similar actions are taken every day by elected officials, agency counsel, legislators, and the general public in the handling of government affairs. *See United States v. Braren*, 338 F.3d 971, 975-76 (9th Cir. 2003) (holding declaratory judgment actions challenging state water agency's "preliminary evaluation" of water rights were not ripe for review because the state's preliminary opinion on issues presented had no binding effect on agency action not yet initiated by plaintiffs).

Furthermore, the Nation does not, and cannot, allege any plausible facts showing the Governor and Attorney General took any action, or will take any action, with regard to the regulation of gaming at the unauthorized facility. Nothing in the Nation's Complaint—nothing in the history of the related litigation concerning the unauthorized

---

[5] Until it becomes clear who will request certification from the State, and under what circumstances and when, any analysis of how state officers actually will consider regulatory approvals for the unauthorized casino is wholly speculative. The Court should not entertain in the abstract the Nation's attempt to rush a decision declaring rights and obligations under state law. *See Shell*, 771 F.3d at 635-36; *Thomas*, 828 P.2d at 1215. Especially given that the urgency the Nation professes is of its own making. (*See* Tr. of Jt. Sched. Conf., dated July 2, 2015, at 17:5-13 (Statement of Campbell, J.: "[It seems to me for you to be arguing matter is so urgent that I shouldn't give the defendants an opportunity for discovery is really a construct of the Nation's own making.")

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

facility before this Court—demonstrates the Governor or Attorney General took any action concerning the Nation's Class II gaming activities. The Nation's allegations on this point are a bare attempt to garner an advisory opinion on the obvious point that the Nation does not need a tribal-state compact to engage in Class II gaming so long as other agreements are adhered to by the Nation. *See Shell*, 771 F.3d at 635-36 (court lacks jurisdiction to issue declaratory judgment where the parties' legal interests are not sufficiently adverse); *Thomas*, 828 P.2d at 1215 (court should not consider a case seeking advisory declaratory judgment or one that answers moot or abstract questions). There is no constitutionally ripe controversy for the court to review, and the Court has every reason to withhold judgment until the State Certification procedure under the Nation's 2002 Compact with the State actually is invoked.

## V. <u>THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AGAINST THE GOVERNOR AND ATTORNEY GENERAL.</u>

### A. <u>The Supremacy Clause Does Not Provide a Cause of Action.</u>

Both counts of the Nation's Complaint rely on the Supremacy Clause as the source of their causes of action. (Compl., Doc. 1, at ¶¶ 95, 119.) However, "the Supremacy Clause is not the 'source of any federal rights,' . . . and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989)). The Supremacy Clause "instructs courts what to do when state and federal law clash, but it is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.*

The Nation seeks a judicial declaration that ADG's manner of exercising its authority under A.R.S. § 5-602 violates the Nation's rights under IGRA—specifically, 25 U.S.C. § 2710(b) and (d)(1). (*See* Compl., Doc. 1, at ¶¶ 99-100, 117.) Nothing in IGRA, however, provides a remedial scheme for alleged violations of those sections of the statute. *See Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000) (stating that "where IGRA creates a private cause of action, it does

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

so explicitly," and citing provisions that allow tribes to sue to compel action by the National Indian Gaming Commission or to compel states to negotiate compacts). Indeed, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Friends of Amador Cnty. v. Salazar*, No. CIV. 2:10-348 WBS KJM, 2010 WL 4069473, at *4 (E.D. Cal. Oct. 18, 2010) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). "Congress did not create a detailed remedial scheme to enforce § 2710(d)(1), the section that permits class III gaming by tribes." *Id*. at *4. Congress likewise did not create a private right of action in § 2710(b).[6] Because neither the Supremacy Clause nor IGRA creates a cause of action, the Nation has not stated a claim for relief.[7]

**B. <u>Providing Legal Analysis and Opinions to State Agencies Cannot Form the Basis of a Claim for Relief.</u>**

The Complaint's allegations against the Governor and the Attorney General for writing opinion letters are legally insufficient to state a claim for relief against either the Governor or the Attorney General. (*See* Compl., Doc. 1, at ¶¶ 78-79 & Ex. F.) Again, all the Governor has done is express the State's position on a matter of great public interest, while the Attorney General has executed his statutory duty to provide legal advice to state agencies such as ADG. *See* A.R.S. § 41-192(A)(1); *cf. Yes on Prop 200*, 160 P.3d at 1224, ¶ 17 ("[T]he Attorney General has complied with the Duty imposed by statute [issuing a legal opinion], and no action for mandamus lies to perform a duty that has already been completed.").

---

[6] Even insofar as IGRA does create a remedial scheme for certain violations, the Nation's claims are barred by the unavailability of *Ex Parte Young* relief, as discussed *supra*.

[7] Dismissal will not leave the Nation without a remedy. In the Compact, the State and the Nation agreed to dispute resolution procedures. (Compl., Doc. 1, Ex. B, at § 15.) Those procedures remain available, and that section of the Compact underscores—in part (d)—the Nation's failure to state a claim here. (*See* Compl., Doc. 1, Ex. B, at § 15(d) (mentioning only rights to seek injunctive relief against illegal gaming under 25 U.S.C. § 2710(d)(7)(A)(ii) and judgment upon an arbitration award).)

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**C. <u>Neither the Governor Nor Attorney General Are Proper Parties.</u>**

Barring a change in Arizona's Constitution and laws, there is no set of facts under which the Governor or the Attorney General has legal authority to take action with regard to regulatory certifications under the Compact—and thus the Nation cannot state a claim for relief against them as a matter of law. *E.g.*, *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) ("The court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim.").

The Compact mandates State regulatory approvals for gaming and support employees, financiers, management contractors, gaming service providers, certain vendors, and manufacturers and distributors of gaming devices. (Compl., Doc. 1, at Ex. B, Compact § 4; *accord* A.R.S. § 5-602(A)). The Compact explicitly defines "State Certification" as "the process ***utilized by the State Gaming Agency*** to ensure that all Persons required to be certified are qualified to hold such certification in accordance with the provisions of this Compact." (Compl., Doc. 1, at Ex. B, Compact § 2(hh) (emphasis added)). The State retains power under the Compact to designate "the single State agency" that may issue State Certifications. *Id*. § 2(ii). Accordingly, A.R.S. § 5-602(C) authorizes ADG to "execute the duties of this state under the tribal-state compacts." ADG's "regulating activities constitute an exercise of state police power and not merely an exercise of a contractual right." *Simms v. Napolitano*, 73 P.3d 631, 634 (Ariz. App. 2003). Neither the Compact nor Arizona law provides any other state officer authority to issue or withhold regulatory approvals for Indian Gaming.

The Nation asks this Court to remedy "Defendants'" action with regard to regulatory approvals under the Compact. (*See* Compl., Doc. 1, at 32) (prayer for relief.) But, the Nation does not explain what "regulatory steps" the Governor or Attorney General could take, when ADG is the sole agency with authority to issue State Certifications. ADG is the only party against which the Court could even ostensibly grant relief.

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice the Nation's Complaint as against the Governor and the Attorney General.

RESPECTFULLY SUBMITTED this 31st day of July, 2015.

**SNELL & WILMER L.L.P.**

By: *s/ Brett W. Johnson*
Heidi McNeil Staudenmaier
Brett W. Johnson
Sara J. Agne
Thomas Clees
Snell & Wilmer LLP
One Arizona Center
400 East Van Buren, Suite 1900
Phoenix, Arizona 85004-2002
*Attorneys for Doug Ducey, Governor of Arizona*

MARK BRNOVICH
Attorney General

By: *s/ Karen J. Hartman-Tellez*
Thomas K. Chenal
Karen J. Hartman-Tellez
Assistant Attorneys General
1275 West Washington Street
Phoenix, Arizona 85007
*Attorneys for Mark Brnovich*

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2015, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a notice of electronic filing to the EM/ECF registrants.

*s/ Tracy Hobbs*