Jonathan Jantzen, Attorney General, SBN 016220
Laura Berglan, Deputy Attorney General, SBN 022120
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, AZ  85634
(520) 383-3410
jonathan.jantzen@tonation-nsn.gov
laura.berglan@tonation-nsn.gov

Seth P. Waxman (*Pro hac vice*)
Danielle Spinelli (*Pro hac vice*)
Kelly P. Dunbar (*Pro hac vice*)
Sonya L. Lebsack (*Pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000
seth.waxman@wilmerhale.com
danielle.spinelli@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com

*Counsel for Plaintiff Tohono O'odham Nation*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE TOHONO O'ODHAM NATION,<br><br>                      Plaintiff,<br><br>    v.<br><br>DOUGLAS DUCEY, Governor of Arizona; MARK BRNOVICH, Arizona Attorney General; and DANIEL BERGIN, Director, Arizona Department of Gaming, in their official capacities,<br><br>                     Defendants. | Case No. 2:15-cv-01135-PHX-DGC<br><br>**THE TOHONO O'ODHAM NATION'S OPPOSITION TO DEFENDANT DUCEY AND BRNOVICH'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 1

STANDARD OF REVIEW ............................................................................... 4

ARGUMENT ..................................................................................................... 5

I.    THE GOVERNOR AND THE ATTORNEY GENERAL ARE PROPER DEFENDANTS .............. 6

II.   THIS IS NOT A MANDAMUS SUIT ........................................................ 10

III.  DEFENDANTS' "COMMANDEERING" ARGUMENT IS MERITLESS ................................ 11

IV.   THE NATION'S CLAIMS ARE JUSTICIABLE .................................... 11

      A.    The Nation Has Standing ................................................... 11

      B.    The Nation's Claims Are Ripe .......................................... 13

V.    THE NATION HAS STATED A CLAIM ................................................ 14

CONCLUSION ................................................................................................. 15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) ...........................................14

*Alliance Labs, LLC v. Stratus Pharmaceuticals, Inc.*,
    2013 WL 273309 (D. Ariz. Jan. 24, 2013) ..........................................................4

*Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748 (D. Ariz. 2013),
    *appeal docketed*, No. 13-16517 (9th Cir.) ......................................................1, 3

*Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084 (E.D. Cal. 2002) ........................8

*Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983).....................................4

*Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002)......................13

*Confederated Tribes & Bands of the Yakama Indian Nation v. Locke*,
    176 F.3d 467 (9th Cir. 1999) ...............................................................................7

*Culinary Workers Union, Local 226 v. Del Papa*,
    200 F.3d 614 (9th Cir. 1999) ..........................................................................7, 8

*Gay Lesbian Bisexual Alliance v. Evans*, 843 F. Supp. 1424
    (M.D. Ala. 1993) .................................................................................................8

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) ..........................................8, 13

*Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992) ..............................................7

*Los Angeles Branch NAACP v. Los Angeles Unified School District*,
    714 F.2d 946 (9th Cir. 1983) ...............................................................................7

*Los Angeles County Bar Association v. Eu*, 979 F.2d 697
    (9th Cir. 1992) .....................................................................................................6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................5, 11, 12

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)................................14

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) ...........................................8

*Mukarugwiza v. JPMorgan Chase Bank NA*,
  2015 WL 3960889 (D. Ariz. June 30, 2015) .........................................................5

*National Audubon Society, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002) ...............12

*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) ..............13

*San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121
  (9th Cir. 1996) ......................................................................................................12

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ..........................................................12

*Silver v. United States Postal Service*, 951 F.2d 1033 (9th Cir. 1991) ....................6

*Snoeck v. Brussa*, 153 F.3d 984 (9th Cir. 1998) ...................................................6, 7

*Southern Pacific Transportation Co. v. Brown*, 651 F.2d 613
  (9th Cir. 1980) ........................................................................................................7

*Thomas v. Union Carbide Agricultural Products Co.*,
  473 U.S. 568 (1985) ..............................................................................................14

*United States v. Arizona*, 641 F.3d 339 (9th Cir. 2011) .........................................12

*Warth v. Seldin*, 422 U.S. 490 (1975) ....................................................................12

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ............................................................4

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) ..................................................4

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) .............................................14

*Young v. Hawaii*, 548 F. Supp. 2d 1151 (D. Hawaii 2008) ......................................7

*Ex parte Young*, 209 U.S. 123 (1908) ...................................................1, 6, 7, 8, 10

**CONSTITUTIONAL PROVISIONS, STATUTES, RULES, REGULATIONS, AND LEGISLATIVE MATERIALS**

Ariz. Const. art. 5, § 4 ...............................................................................................6

Ariz. Rev. Stat.
  § 5-602 .........................................................................................................*passim*
  § 5-602.01(C) ..........................................................................................................9
  § 5-602(C) ...............................................................................................................3
  § 5-604(B) ...............................................................................................................6

§ 12-2021 ..........................................................................................10

§ 41-101(A)(1) ...................................................................................6

§ 41-193(A)(7) ...................................................................................7

Fed. R. Civ. P.

12(b)(1) ...............................................................................................4

12(b)(6) ...............................................................................................5

Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 ...................1, 4, 9, 11, 12

Plaintiff the Tohono O'odham Nation (the "Nation") hereby opposes the Motion to Dismiss ("Motion" or "Mot.") (Doc. 49) filed by Douglas Ducey and Mark Brnovich, who are sued in their official capacities as Arizona Governor and Arizona Attorney General, respectively.  For the reasons discussed below, both Defendants are proper parties to this suit, and there is a ripe, properly pleaded controversy requiring this Court's intervention. Defendants' Motion should be denied.[1]

## PRELIMINARY STATEMENT

Following this Court's judgment that "the Nation's construction of a casino on the Glendale-area land will not violate [its tribal-state gaming] Compact" and "is expressly permitted by [the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721]," the Nation began constructing the West Valley Resort ("WVR") that this Court had deemed lawful.  *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 753, 754 (D. Ariz. 2013), *appeal docketed*, No. 13-16517 (9th Cir.).  In doing so, the Nation, of course, assumed the risk that this Court's judgment could be reversed on appeal (although only a reversal on the "settlement of a land claim" issue would bar Class III *and* Class II gaming at the WVR; a reversal on the compact-related claims could affect only Class III gaming).  But the Nation did not assume the risk that state officials would manufacture new makeweight grounds for blocking the WVR.

Indeed, the Arizona Department of Gaming ("ADG") initially correctly and candidly acknowledged that it was bound by this Court's decision.  ADG assured the Nation that it would "proceed in the normal course of its business with the various regulatory requirements imposed by IGRA and the Compact, including those concerning TON's Glendale casino, unless applicable laws change or a court orders otherwise."  Compl. Exh. E (Letter from

---

[1] This opposition addresses only those arguments specific to Defendants Ducey and Brnovich, and otherwise incorporates by reference all arguments made in the Nation's opposition to Defendant Bergin's motion to dismiss ("Bergin Opp."), including that *Ex parte Young* applies to this suit, federal courts have inherent equitable power to enjoin state officials from violating federal law, and there is a live controversy involving the obstruction of Class II gaming.

Roger L. Banan to Seth P. Waxman, at 1 (Feb. 19, 2015)) (Doc. 1-4); *see* Compl. ¶¶ 75-76 (Doc. 1).

Applicable law did not change and no court ordered otherwise.  Despite that, less than two months later, ADG reversed its position.  Compl. Exh. F (Letter from Daniel Bergin to Chairman Norris (Apr. 10, 2015) ("Bergin Letter")) (Doc. 1-5); *see generally* Compl. ¶¶ 77-83.  That reversal in position, as the Nation has alleged, was the result of directives from Defendant Ducey—the Governor and head of the Executive Branch of the State—and Defendant Brnovich—the State's Attorney General and lead legal officer.  *E.g.*, Compl. ¶ 5.

Specifically, on April 2, 2015, the Attorney General's office wrote to ADG Director Bergin, addressing the question whether ADG "has authority to issue affirmative certifications or letters of compliance" in connection with the WVR.  Compl. Exh. F (Letter from Maria Syms to Daniel H. Bergin, at 1 ("AG Letter")) (Doc. 1-5).  The AG instructed Director Bergin that A.R.S. § 5-602 gave ADG the "dut[y]" to determine whether certifications are "consistent with the thorough and fair regulation of gaming in Arizona"; that in doing so, ADG was "*compelled* to carefully weigh and evaluate certain facts and claims" regarding the Nation's supposed fraud; and that "[i]n the absence of gubernatorial reconsideration," ADG was "*bound* to the conclusion," reflected in the State's litigating position, "that the Nation did commit actionable malfeasance."  *Id.* at 2 (emphasis added).

On April 8, 2015, Governor Ducey wrote to Director Bergin to emphasize that there had been no "gubernatorial reconsideration," "reaffirm[ing] the State of Arizona's position, already articulated in pending litigation, that [the Nation's] pursuit of [the WVR] is contrary to the public interests and … the product of fraud, fraudulent concealment, and misrepresentation."  Compl. Exh. F (Letter from Douglas A. Ducey to Dan Bergin, at 1 ("Governor Letter")) (Doc. 1-5).  He "urge[d]" Director Bergin to "duly consider these matters in any deliberations."  *Id.*  He referred to "compelling evidence" produced in discovery purportedly supporting the State's claim of fraud, and stated his view that that

evidence, "without more, [is] grounds for denial of the regulatory approvals necessary to operate the proposed casino."  *Id.* at 1, 2.[2]

Two days later, Defendant Bergin wrote to the Nation stating that, "based upon" the "advice" of "Governor Ducey" and "the Arizona Attorney General," he had concluded that ADG "lacks statutory authority to approve TON's Glendale casino notwithstanding" this Court's prior decision.  Bergin Letter at 1.  Defendant Bergin asserted that "the decision in *Arizona et al v. Tohono O'odham Nation* does not control or constrain ADG in performing its statutory duties under A.R.S. § 5-602(C) with respect to certifying or approving" the facility.  *Id.* at 2.  Echoing the Governor's and AG's letters, he explained that "[t]he State's position in the litigation remains unchanged; namely, that principles of fraudulent inducement, promissory estoppel, and misrepresentation nullify any right that TON would otherwise have under the compact to build a Glendale casino.  *This is also ADG's position as an agency of the State.*"  *Id.* at 1 (emphasis added).  Accordingly, he concluded, "[b]ased upon TON's fraud," "ADG would exceed its authority" under A.R.S. § 5-602 "if it were to proceed with any certification or approval processes."  *Id.* at 3.  In a subsequent letter, Defendant Bergin reiterated that he was acting "[i]n accordance with th[e] guidance" he had received, and that "providing regulatory approvals to the proposed Glendale casino would violate [state] statutory mandates."  Compl. Exh. H (Letter from Daniel Bergin to Seth Waxman, at 3 (Apr. 17, 2015)) (Doc. 1-5).[3]

The Nation accordingly brought suit against Governor Ducey, Attorney General Brnovich, and Director Bergin.  The Nation has plausibly alleged—and Defendants'

---

[2] Indeed, Defendant Ducey also asserted that, "[w]hile the court decision regarding sovereign immunity is on appeal, the State's inherent power to void a compact obtained by fraud is unaffected … [and] [y]ou should be aware that the State reserves the power to void the compact as a last resort."  Governor Letter at 2.  That independently establishes the requisite connection between this action and Defendant Ducey.

[3] ADG has since implemented that position by notifying existing and prospective vendors and employees that the Nation's planned facility is not an "authorized" casino and that they "may be subject to legal and/or regulatory risks" for providing goods or services to it.  *See* Compl. ¶¶ 84-91.

correspondence and ADG's about-face on the issue demonstrate—that Defendants Ducey and Brnovich directed ADG's refusal to proceed with any regulatory approval processes for the WVR.  *See* Compl. ¶¶ 5-10, 75-93.  Specifically, Defendants instructed ADG that it possessed unilateral authority under state law to impose requirements on Indian gaming not set out in IGRA or the Compact, and that ADG was bound by Defendants' conclusion that the Nation cannot satisfy those requirements because of purported "actionable malfeasance in [the Nation's] pursuit of" the WVR.  *Id.*; *see also* AG Letter at 2; Governor Letter at 1.

In order to ensure complete relief based on the coordinated conduct of all Defendants to date, the Nation seeks injunctive and declaratory relief against Defendants Ducey and Brnovich, as well as Director Bergin, to prevent further obstruction of the Nation's exercise of its federal rights.  *See* Compl., Prayer for Relief.

## STANDARD OF REVIEW

Where a Rule 12(b)(1) motion argues that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," the Court must treat the allegations of the complaint as true.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where, on the other hand, a Rule 12(b)(1) motion contests the accuracy of jurisdictional allegations, a court "may look beyond the complaint to matters of public record."  *White*, 227 F.3d at 1242.  Such "factual jurisdictional dismissals are exceptional and only warranted where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous."  *Alliance Labs, LLC v. Stratus Pharm., Inc.*, 2013 WL 273309, at *2 (D. Ariz. Jan. 24, 2013).[4]

---

[4] Defendants' suggestion (Mot. 3 n.1) that this Court "'need not assume the truthfulness of the complaint'" is incorrect.  Defendants are not challenging the accuracy of the jurisdictional facts, and even if they were, those allegations are inextricably intertwined with the merits of the case, and cannot be litigated at the motion-to-dismiss stage.  *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

With respect to a "motion to dismiss under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party." *Mukarugwiza v. JPMorgan Chase Bank NA*, 2015 WL 3960889, at *2 (D. Ariz. June 30, 2015).  Allegations must also be plausible, meaning that "the complaint must permit the court to infer more than the mere possibility of misconduct."  *Id.*  Moreover, "'general allegations embrace those specific facts that are necessary to support the claim.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## ARGUMENT

Defendants Ducey and Brnovich's central claim (repeated in various ways) is that they have an "insufficient connection" to this suit and to the regulatory approvals at issue to be proper parties.  That is a remarkable position.  The Nation has alleged that Defendant Bergin embraced the legal position at issue in this preemption suit—that state law gives ADG the authority, indeed the obligation, to refuse regulatory approvals in connection with the WVR—at the "behest" of Defendants Ducey and Brnovich.  Compl. ¶¶ 5, 75-79, 82.  At this stage of the proceedings, that well-pleaded allegation is more than sufficient to establish a requisite "connection" to this suit.

But Defendants' "connection" to the state law at issue is based on more than an unadorned allegation, even at this stage.  Defendants' own correspondence establishes that Defendant Bergin—an executive branch subordinate who serves at the pleasure of the Governor—adopted the novel state-law position at issue in this suit *two days* after receiving a letter from Defendant Ducey and eight days after receiving an "opinion" from Defendant Brnovich instructing Defendant Bergin that he was "bound" to the State's litigation position, absent reconsideration by the Governor.  Defendants Ducey and Brnovich are thus anything but the passive bystanders to the events that they depict.  As a result of their coordinated efforts, ADG has now stated on several occasions and in no uncertain terms that, based on its newly discovered view of state law, it "will not provide the necessary authorizations, certifications, and licenses" for the WVR.  Compl. Exh. J (Letter from Patrick Irvine to Seth P. Waxman, at 3 (June 4, 2015) ("Irvine Letter")) (Doc. 1-5); *see also* Compl. ¶¶ 77-83.  The

5

Nation's Complaint, viewed in light of these established facts, properly alleges that Defendants Ducey and Brnovich have the requisite "connection" under *Ex parte Young* to be subject to suit, and there is a ripe, properly pleaded controversy against them.

## I.   THE GOVERNOR AND THE ATTORNEY GENERAL ARE PROPER DEFENDANTS

*Ex parte Young* permits a suit for prospective injunctive relief for ongoing violations of federal law by state officials where a state official has "some connection with the enforcement of the [law at issue]."  209 U.S. 123, 157 (1908).  That "connection" must, of course, amount to more than the official's status as a "law officer[] of the state."  *Id*.  A plaintiff cannot, for example, "test[] the constitutionality of … every act passed by the legislature … based upon … a general sense" that a governor is "charged with the execution of all its laws" and that the attorney general "represent[s] the state in litigation."  *Id*.

But that is not remotely what the Nation alleges here.  Instead, the Nation has alleged that Defendants Ducey and Brnovich intervened in the normal course of ADG's business, directed ADG to take steps to block the WVR, and caused ADG to adopt the legal position that is the subject of this preemption suit.  Far from alleging the mere "'possible use of persuasion'" by state officials, *see* Mot. 5 (quoting *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir. 1998)), the Nation has alleged (and Defendants' correspondence corroborates) that Defendants Ducey and Brnovich *instructed* ADG to deny the Nation regulatory certifications and approvals on the ground that the Nation had engaged in "actionable malfeasance."  *See supra* pp. 2-3.[5]  That connection, at a minimum, is "fairly direct."  *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

---

[5] To be sure, Governor Ducey's general supervisory and removal authority imbued his "express[ion of] the State's position on a matter of great public interest" (Mot. 16) with legal significance.  As Defendant Ducey acknowledges, under Arizona law, he "take[s] care that the laws be faithfully executed," Ariz. Const. art. 5, § 4, and, by statute, he "supervise[s] the official conduct of all executive and ministerial officers," A.R.S. § 41-101(A)(1).  Mot. 6. As relevant here, he also appointed Defendant Bergin, who "serves at [his] pleasure," A.R.S. § 5-604(B).  That removal authority gives Defendant Ducey considerable legal authority over Director Bergin.  *See Silver v. U.S. Postal Serv.*, 951 F.2d 1033, 1039 (9th Cir. 1991) ("The power to remove is the power to control.").  In addition, Attorney General Brnovich is charged by statute to give advice "[]on demand by … any public officer of the state," A.R.S.

This is therefore not a case in which a plaintiff challenges the constitutionality of a statute and in doing so sues the Governor on the theory that the Governor is the head of the executive branch of the State.  Here, the Governor and Attorney General engaged in a calculated and coordinated effort to direct an executive agency to adopt the very legal position that is the centerpiece of the lawsuit.  That readily distinguishes this case from those on which Defendants rely.  In *Brussa*, there was no specific threat of enforcement or intervention.  *See* 153 F.3d at 987.  In *Long v. Van de Kamp*, the court likewise stated that there was "no threat" and no "real likelihood that the state official will employ his supervisory powers against plaintiffs' interests."  961 F.2d 151, 152 (9th Cir. 1992).[6]  The same is true of Defendants' remaining cases, all of which dismiss Governors or Attorneys General on the ground that the allegations against them made clear that they are being sued as "'mere[] … representative[s] of the state.'"  *Confederated Tribes & Bands of the Yakama Indian Nation v. Locke*, 176 F.3d 467, 470 (9th Cir. 1999) (quoting *Ex parte Young*); *Young v. Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Hawaii 2008) ("Allegations of general oversight … are insufficient."), *overruled on other grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008); *Southern Pac. Transp. Co. v. Brown*, 651 F.2d 613, 614 (9th Cir. 1980) (similar); *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 714 F.2d 946, 953 (9th Cir. 1983) (dismissing governor sued as a mere "surrogate for the state").

By contrast, where, as here, a state official has chosen to intervene in the interpretation or enforcement of the challenged state law, courts have "no difficulty …

---

§ 41-193(A)(7).  As Defendant Brnovich acknowledges, he "set forth his legal interpretation of A.R.S. § 5-602"—the interpretation at issue in this case—under the aegis of his statutory authority.  Mot. 16.

[6] The court in *Long* did not, as Defendants would have it, "requir[e] a 'threat of enforcement'" by a "state official who is capable of engaging in an enforcement action."  Mot. 5.  On the contrary, the court looked not only to whether the official could enforce the statute, but also to whether he had encouraged others to enforce the statute.  *See* 961 F.2d at 152 (noting "no indication that the Attorney General intends to pursue, or encourage local law enforcement agencies to pursue, [the matter]"); *accord Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999) (adopting this reading of *Long*).

concluding that the requisite 'connection' exists." *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999). In *Del Papa*, for example, the Ninth Circuit reversed a district court's dismissal of the Attorney General of Nevada notwithstanding her claim that, in fact, she "did not have the authority to enforce" the challenged statute. *Id.* at 616. "The attorney general's acts of sending the letter to the union, threatening either to enforce the statute on behalf [of] the Banking Commissioner or to refer the matter to a local prosecutor," the court responded, "establish[] … an ample 'connection with the enforcement' of the challenged statute." *See id.* at 618 (distinguishing other Ninth Circuit authority on the ground that there was "no specific threat of enforcement"). The Tenth Circuit also recently concluded that where the "state agencies … are being directed by the Governor in consultation with the Attorney General," the Governor and Attorney General are proper defendants under *Young*. *Kitchen v. Herbert*, 755 F.3d 1193, 1203 (10th Cir. 2014). That is so, the court reasoned, even if the Governor and Attorney General are "'not specifically empowered to ensure compliance with the statute at issue,'" so long as they "'clearly have assisted or currently assist in giving effect to the law.'" *Id.* at 1204.

Other courts have likewise held that when a state official actually inserts himself into a dispute—for example, by writing letters or taking a position on the interpretation of the challenged statute—he is a proper defendant to an *Ex parte Young* suit. *See, e.g.*, *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1106, 1111 (E.D. Cal. 2002), *aff'd sub nom. Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003) ("The history of letters written by the Attorney General and the Director to the plaintiffs and other California card clubs, as well as their interaction with local law enforcement officials" "meets the causal connection requirement under *Young*[.]"); *Gay Lesbian Bisexual Alliance v. Evans*, 843 F. Supp. 1424, 1426 (M.D. Ala. 1993) (Attorney General was a proper party in a suit challenging an Alabama statute barring universities from allocating public funds to certain groups because the university enforced the statute "allegedly in reliance on an 'advisory opinion' from the Attorney General"), *aff'd sub nom. Gay Lesbian Bisexual Alliance v. Pryor*, 110 F.3d 1543 (11th Cir. 1997); *cf. McBurney v. Cuccinelli*, 616 F.3d 393,

401 (4th Cir. 2010) ("We express no opinion on whether a [connection under *Young*] would exist … if an agency relies on an advisory opinion explicitly interpreting [the statute].").

The same is true here.  As the chief executive officer and legal officer of the State, respectively, Defendants Ducey and Brnovich directed ADG to block the WVR on the ground that ADG has state-law authority to prevent the Nation from conducting gaming permitted under IGRA and the Compact.  Compl. ¶ 5.  As described above, they interceded with Defendant Bergin to make clear that ADG was "compelled" under state law to "weigh and evaluate certain facts and claims"—namely, the Nation's alleged fraud—and that "the Department [was] bound to the conclusion" the State had already reached regarding those facts and claims—namely, "that the Nation did commit actionable misfeasance in its pursuit of a new casino in Glendale."  *See supra* pp. 2-3.  Contrary to Defendants' assertions (Mot. 11), their letters can fairly be read to "require ADG … [to] take … specific action," particularly in light of ADG's abrupt reversal of its position following receipt of the letters.[7]

Defendants maintain that their letters were mere "attempt[s] to persuade" that are "insufficient to give this Court jurisdiction over [them]."  Mot. 5-7.  But Defendants' claim that they only "express[ed] an opinion" (Mot. 11), cannot defeat the Nation's well-pleaded allegations that there is a direct causal connection between those supposed "opinion[s]" and ADG's refusal to proceed with regulatory approvals regarding the WVR—particularly given that those "opinion[s]" are expressed as commands to Director Bergin about the scope of his authorities and duties under state law (the issue in this lawsuit).  *See, e.g.*, AG Letter at 2 ("[T]he Department is *compelled* to carefully weigh and evaluate certain facts and claims that the District Court felt it could not consider" and "*bound* to the conclusion that the Nation

---

[7] That the Attorney General also is charged by statute with collecting "civil penalties" imposed on employees and vendors by ADG, A.R.S. § 5-602.01(C), further intertwines him with ADG's decision to threaten employees and vendors for providing goods or services to the WVR.  Compl. ¶¶ 84-91.  Defendants' position (Mot. 6) that this statutory authority is irrelevant to whether the Attorney General is connected to this suit is unconvincing:  ADG has threatened both prospective and current licensees with sanctions, which plainly raises the potential for civil penalties under state law.

did commit actionable malfeasance[.]" (emphasis added)); Ducey Letter at 1 (referencing Defendant Bergin's "*duties* under A.R.S. § 5-602" (emphasis added)). Defendants can point to no decision dismissing state officials who have actually intervened in the interpretation and enforcement of the state law at issue, as Defendants did here.

Finally, Defendants' repeated objection that they cannot be sued because they do not personally certify employees or vendors under Arizona gaming law (Mot. 6-7) misses the point. The Nation has alleged that ADG's refusal to issue regulatory approvals is a direct result of Defendants' position that ADG has state-law authority under A.R.S. § 5-602 to refuse to issue certifications and approvals on the basis of the Nation's "disqualifying conduct," and that ADG is "bound" by the State's position that the Nation engaged in such conduct. Having taken an unequivocal position on that legal question, and directed Defendant Bergin to adopt that position, Defendants Ducey and Brnovich have a more than sufficient "connection" to this suit under *Ex parte Young*.

## II.   THIS IS NOT A MANDAMUS SUIT

Defendants next claim that the Nation's suit "in essence request[s] mandamus relief." Mot. 8; *see, e.g.*, A.R.S. § 12-2021 (describing mandamus as "compel[ing] … performance of an act which the law specially imposes as a duty"). That is simply not so. Nowhere does the Nation seek to order state officials to perform any state-law functions. The Nation seeks only to prohibit state officials—specifically Defendants—from improperly *refusing* to engage in the regulatory approval process related to the WVR based on purported state-law authority to disqualify the Nation from exercising its federal gaming rights. *See* Compl., Prayer for Relief. That is a quintessential preemption suit.[8]

---

[8] Defendants suggest in a footnote that this suit could be construed as one for "specific performance of ADG duties pursuant to the Nation's 2002 Compact." Mot. 9 n.3. That is also wrong. As Defendants have repeatedly made clear, the authority they are invoking is purported *statutory* authority under state law to block the WVR "regardless of whether such gaming would otherwise be permitted by a valid tribal-state compact." Compl. Exh. H (Apr. 17, 2015 Letter, at 1); *see also* AG Letter (quoting A.R.S. § 5-602 and noting ADG's "broad regulatory mission to protect the public"); Ducey Letter (same). The Nation contends that that purported state-law statutory authority is preempted.

1

2  **III.   DEFENDANTS' "COMMANDEERING" ARGUMENT IS MERITLESS**

3          As discussed more fully in the Nation's opposition to Defendant Bergin's motion to

4  dismiss, Defendants' commandeering argument (Mot. 9-10) is likewise unavailing.  *See*

5  Bergin Opp. 16-17.  The Nation's suit does not seek to compel Defendants to implement

6  federal law.  Rather, it seeks an injunction prohibiting them from interfering with the

7  Nation's federal rights by basing regulatory decisions on impermissible factors (*i.e.*,

8  purported state-law authority preempted by IGRA).  That does not "commandeer" anyone.[9]

9  **IV.   THE NATION'S CLAIMS ARE JUSTICIABLE**

10         In an array of arguments essentially identical to the failed claim that they have no

11  "connection" to this suit, Defendants invoke doctrines of standing and ripeness to argue that

12  the Nation's claims are nonjusticiable.  Defendants are wrong.

13         **A.     The Nation Has Standing**

14         Defendants first argue that "[t]he Nation's Complaint does not meet [any of] the[]

15  requirements for standing."  Mot. 10-12.  On the contrary, all the elements are satisfied.  *See,*

16  *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (a plaintiff has Article III

17  standing where (1) he or she suffers an injury-in-fact; (2) there is a "causal connection

18  between the injury and the conduct complained of"; and (3) the injury will likely be

19  redressed by a favorable decision).

20         Defendants' assertion that the Nation has suffered no injury-in-fact is difficult to

21  understand.  Even Defendant Bergin does not contest the Nation's injury—and for good

22  reason.  ADG has said that "pursuant to A.R.S. § 5-602, [ADG] will not provide the

23  necessary authorizations, certifications, and licenses" for the WVR.  Irvine Letter at 3; *see*

24  _____

25         [9] Defendants argue in a footnote that "the Nation has failed to exhaust its
administrative remedies before ADG."  Mot. 13 n.4.  Notably, that argument is not joined by

26  Defendant Bergin, the Director of ADG.  And it is meritless.  The Nation's contention here is
that ADG has no authority to adjudicate the State's "allegations of fraudulent conduct" (*id.*).

27  Defendants cite no authority suggesting that the Nation must submit to an administrative
process that is preempted by federal law, especially given that, here, ADG had already

28  announced that it was bound by the State's litigating position.

*also* Compl. ¶¶ 77-83.  That refusal has injured the Nation by, among other things, imposing

unwarranted burdens on the exercise of its Class III and Class II gaming rights.  Standing

alone, that constitutes injury-in-fact.  *See Lujan*, 504 U.S. at 560 & n.1; *Warth v. Seldin*, 422

U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely

by virtue of 'statutes creating legal rights, the invasion of which creates standing[.]'"); *cf.*

*United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) ("'[A]n alleged constitutional

infringement will often alone constitute irreparable harm.'").  Defendants' refusal to issue

"necessary authorizations, certifications, and licenses" for the WVR (Irvine Letter at 3) also

threatens imminent financial injury:  If Defendants succeed in blocking or delaying gaming

at the WVR, it could cost the Nation millions of dollars in lost revenues.  *See* Compl. ¶ 93;

Prelim. Inj. Mot. 14-16 (Doc. 3).  That, too, is an injury-in-fact.  *See, e.g.*, *Sierra Club v.*

*Morton*, 405 U.S. 727, 733-734 (1972) ("[P]alpable economic injuries have long been

recognized as sufficient to lay the basis for standing."); *San Diego Cty. Gun Rights Comm. v.*

*Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for

standing.").[10]

      Furthermore, the Nation can trace these injuries to Defendants' conduct.  *See Lujan*,

504 U.S. at 560.  A causal chain succeeds even where it has several "links," provided those

links are "plausib[le]."  *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002).

Here, the chain is easy to follow.  ADG originally stated that it would "proceed in the normal

course of its business with the various regulatory requirements imposed by IGRA and the

Compact, including those concerning [the Nation's] Glendale casino, unless applicable laws

change or a court orders otherwise."  Compl. Exh. E (Feb. 19, 2015 Letter, at 1)).  Based on

the intervention of Defendants Ducey and Brnovich, ADG reversed course, explaining that it

would not proceed with "any certification or approval processes relating to the opening or

---

[10] Even if the Nation is successful in opening a Class II facility on the planned
schedule, the Nation has suffered and will suffer certain economic injury due to, among other
things, the substantial resources required to switch from a Class III to a Class II facility mere
months before opening and the eventual substantial costs of upgrading from a Class II to a
Class III facility in the event that the Nation prevails in this suit.

operation of [the Nation's] Glendale casino." Bergin Letter at 3. That reversal, its conspicuous timing, and Defendants' apparent coordination is more than sufficient to link Defendants to ADG's conduct, particularly at this stage of the pleadings. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 869 (9th Cir. 2002) ("look[ing] only to the face of the complaint … [to] conclude that [plaintiff] … adequately established the causation element required for standing"); *see also Herbert*, 755 F.3d at 1204.

Finally, Defendants claim that even if they caused the Nation's injuries, "the Nation's requested relief does not resolve" that injury because "neither the Governor nor the Attorney General has the ability to consider, grant, or deny gaming certifications or approvals." Mot. 12. This again misses the point. The Nation seeks declaratory and injunctive relief to prevent Defendants from wielding state-law authority to interfere with the Nation's exercise of its federal rights. It is irrelevant that neither Defendant Ducey nor Defendant Brnovich personally issues gaming approvals: The Nation seeks to prevent these officials from interfering (as they already have done) with ADG's issuance of those approvals.

**B.    The Nation's Claims Are Ripe**

Relatedly, Defendants contend that the Nation's claims are not ripe. Mot. 12-15. Echoing their failed standing arguments, they argue that because they have no authority to grant regulatory approvals, the Nation has not—and cannot—"'show that there is a substantial controversy … of sufficient immediacy and reality.'" Mot. 13. Once again, that wrongly frames the issue. As Defendants (including Director Bergin) do not dispute, *ADG* "will not provide the necessary authorizations, certifications, and licenses" for the Nation's facility. Irvine Letter at 3; *see also* Compl. ¶¶ 75-83. Indeed, ADG has informed employees and vendors that it has "determined that the proposed West Valley casino is not authorized" and that vendors and employees of unauthorized facilities "may be subject to legal and/or regulatory risks." *See* Compl. Exh. K (ADG Employee & Vendor Notices) (Doc. 1-6). The Nation's claims are thus ripe for decision. *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006) ("'[T]he constitutional component of the ripeness inquiry ..., in many cases, ... coincides squarely with standing's injury in fact prong.'").

The prudential ripeness factors—"'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration'"—are also easily satisfied. *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010). The issues are fit for judicial decision because resolution of the Nation's federal preemption challenge "is purely legal, and will not be clarified by further factual development." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985). In addition, given ADG's unwavering refusal to issue regulatory approvals and its issuance of "notices" to vendors and employees, it can hardly be disputed there has been "some concrete action applying [A.R.S. § 5-602] to the [Nation's] situation in a fashion that harms or threatens to harm [it]." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 891 (1990).[11] That extends fully to the Nation's claims concerning the effect of ADG's actions on Class II vendors and employees, as discussed in the Nation's opposition to Defendant Bergin's motion to dismiss. The Nation need not wait indefinitely for ADG to do what it has said it will do. "'If the injury is certainly impending, that is enough.'" *Union Carbide*, 473 U.S. at 581; *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 148-149 (1967) (ripeness only "protect[s] … agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties"), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

## V.   THE NATION HAS STATED A CLAIM

Finally, Defendants argue that the Complaint fails to state a claim for relief against them. With the exception of Defendants' claim that the Supremacy Clause does not provide a cause of action—which the Nation addresses fully in its opposition to Defendant Bergin's motion to dismiss—these arguments recycle objections Defendants have raised elsewhere and that the Nation already has addressed. That neither Defendant Ducey nor Defendant

---

[11] Contrary to Defendants' arguments (Mot. 14 n.5), it hardly matters "who will request certification from the State, and under what circumstances and when." Director Bergin has stated that "ADG would exceed its authority if it were to proceed with *any* certification or approval processes relating to the opening or operation of [the WVR] … includ[ing] certification of vendors and employees; verification of gaming devices; and the issuance of a letter of compliance." Bergin Letter at 3 (emphasis added).

1   Brnovich personally issues regulatory approvals (Mot. 17) is irrelevant to whether the Nation

2   states a claim for relief against them.  The relief the Nation seeks does not compel either

3   defendant personally to issue regulatory certifications or take "regulatory steps" (*id*.).

4   Rather, it would require each Defendant to refrain from interfering with the issuance of

5   regulatory certifications and approvals on the ground that ADG has state-law authority to

6   decide that the Nation's conduct has "nullified" the Nation's federal rights.  *See* Compl.,

7   Prayer for Relief.

8                                        **CONCLUSION**

9          Defendant Ducey and Brnovich's motion to dismiss should be denied.

Dated:  August 14, 2015

Respectfully submitted,

/s/     Danielle Spinelli
Jonathan Jantzen,
  Attorney General, SBN 016220
Laura Berglan,
  Deputy Attorney General, SBN 022120
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, AZ  85634
Telephone: (520) 383-3410
jonathan.jantzen@tonation-nsn.gov
laura.berglan@tonation-nsn.gov

Seth P. Waxman (*Pro hac vice*)
Danielle Spinelli (*Pro hac vice*)
Kelly P. Dunbar (*Pro hac vice*)
Sonya L. Lebsack (*Pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
seth.waxman@wilmerhale.com
danielle.spinelli@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com

*Counsel for Plaintiff Tohono O'odham Nation*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this 14th day of August, 2015, I electronically transmitted the

3

foregoing document to the Clerk's Office using the CM/ECF System, which will send a

4

notice of filing to all counsel of record.

5

6

/s/  Danielle Spinelli

7

DANIELLE SPINELLI

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28