Laura Berglan, Acting Attorney General, SBN 022120
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, AZ  85634
(520) 383-3410
laura.berglan@tonation-nsn.gov

Seth P. Waxman (*Pro hac vice*)
Danielle Spinelli (*Pro hac vice*)
Kelly P. Dunbar (*Pro hac vice*)
Sonya L. Lebsack (*Pro hac vice*)
Kevin M. Lamb (*Pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000
seth.waxman@wilmerhale.com
danielle.spinelli@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
kevin.lamb@wilmerhale.com

*Counsel for Plaintiff Tohono O'odham Nation*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE TOHONO O'ODHAM NATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>DOUGLAS DUCEY, Governor of Arizona;<br>MARK BRNOVICH, Arizona Attorney General;<br>and DANIEL BERGIN, Director, Arizona<br>Department of Gaming, in their official<br>capacities,<br><br>                    Defendants. | Case No. 2:15-cv-01135-PHX-DGC<br><br>**THE TOHONO O'ODHAM<br>NATION'S REPLY IN SUPPORT<br>OF ITS MOTION TO DISMISS<br>DEFENDANT BERGIN'S<br>AMENDED COUNTERCLAIMS** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

I.    THE NATION'S SOVEREIGN IMMUNITY BARS THE COUNTERCLAIMS ........................... 1

      A.    Equitable Recoupment Has No Application Here ............................... 1

      B.    The Nation Has Not Waived Sovereign Immunity By Asserting A
            "Breach Of Compact" ....................................................... 5

II.   DIRECTOR BERGIN HAS NO CAPACITY TO BRING THE COUNTERCLAIMS .................... 7

III.  COUNTERCLAIMS TWO, THREE, AND FOUR (AND COUNTERCLAIM ONE TO THE
      EXTENT IT TURNS ON COMPACT INVALIDITY) FAIL TO STATE A CLAIM ................. 9

      A.    Promissory Estoppel ...................................................... 10

      B.    Fraud In The Inducement And Misrepresentation ............................ 12

            1.    Actual reliance .................................................... 12

            2.    Justifiable reliance ............................................... 13

CONCLUSION ..................................................................... 15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abarah v. City of Scottsdale Police Department*, 2010 WL 4102563
  (D. Ariz. Oct. 18, 2010) .................................................................. 7, 8, 9

*All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862 (7th Cir. 1999) ................................. 10

*Arizona Independant Redistricting Commission v. Brewer*,
  275 P.3d 1267 (Ariz. 2012) .................................................................. 9

*Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748
  (D. Ariz. 2013) .......................................................... 11, 13, 14, 15

*Bolduc v. Beal Bank, SSB*, 167 F.3d 667 (1st Cir. 1999) ........................... 3

*Bowman v. Honeywell International, Inc.*, 438 F. App'x 613 (9th Cir. 2011) ................ 10

*Bull v. United States*, 295 U.S. 247 (1935) ........................................ 3

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ................................. 6

*Chadam v. Palo Alto Unified School District*, 2014 WL 325323
  (N.D. Cal. Jan. 29, 2014) ...................................................... 6

*Chanay v. Chittenden*, 563 P.2d 287 (Ariz. 1977) ............................... 10

*Chemehuevi Indian Tribe v. California State Board of Equalization*,
  492 F. Supp. 55 (N.D. Cal. 1979) ........................................... 3

*Cimeran v. Cook*, 561 F. App'x 447 (6th Cir. 2014) .............................. 8

*Citizen Band Potawatomi Indian Tribe of Oklhoma v. Oklahoma Tax
  Commission*, 932 F.2d 1355 (10th Cir. 1991) ............................... 4

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Oklahoma Tax
  Commission*, 888 F.2d 1303 (10th Cir. 1989) ........................... 3, 4

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Oklahoma Tax
  Commission*, 1988 WL 122606 (W.D. Okla. Apr. 15, 1988) .................. 3

*Crofton v. CIT Group, Inc.*, 2011 WL 1211566 (D. Ariz. Mar. 30, 2011) ............. 10

*Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61 (D.D.C. 2005) .................. 10

*The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22 (1913) ..................... 6

*Florida v. Seminole Tribe of Florida*, 181 F.3d 1237 (11th Cir. 1999).............7

ii

*Garduno v. National Bank of Arizona*, 738 F. Supp. 2d 1004 (D. Ariz. 2010) ....................... 6

*Gomez v. Illinois State Board of Education*, 811 F.2d 1030 (7th Cir. 1987) .......................... 8

*Harrah v. United States*, 77 F.3d 1122 (9th Cir. 1995) ................................................ 5

*Higginbottom v. State*, 51 P.3d 972 (Ariz. Ct. App. 2002) ............................................ 11

*J & J Sports Products, Inc. v. Mendoza-Govan*, 2011 WL 1544886
    (N.D. Cal. Apr. 25, 2011) ........................................................................ 5

*In re Kirsh*, 973 F.2d 1454 (9th Cir. 1992) ......................................................... 14

*Mann v. GTCR Golder Rauner*, 425 F. Supp. 2d 1015 (D. Ariz. 2006) .......................... 10, 11

*State ex rel. Montgomery v. Mathis*, 290 P.3d 1226 (Ariz. Ct. App. 2012) ............................ 9

*Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of
    Oklahoma*, 498 U.S. 505 (1991).............................................................. 1, 3, 4, 5

*Oneida Tribe of Indians of Wisconsin v. Village of Hobart*,
    500 F. Supp. 2d 1143 (E.D. Wis. 2007) ........................................................... 2

*Pan American Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416
    (9th Cir. 1989) ................................................................................... 4

*Payne v. Arpaio*, 2009 WL 3756679 (D. Ariz. Nov. 4, 2009)........................................... 9

*Pueblo of Pojoaque v. New Mexico*, No. 1:15-cv-00625 (D. N.M. Oct. 7, 2015)................... 7

*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997) ................................... 7

*Quinault Indian Nation v. Comenout*, 2015 WL 1311438
    (W.D. Wash. Mar. 23, 2015) ....................................................................... 1

*Rosebud Sioux Tribe v. Val–U Construction Co.*, 50 F.3d 560 (8th Cir. 1995) ..................... 1

*Rupp v. Omaha Indian Tribe*, 45 F.3d 1241 (8th Cir. 1995) ........................................ 2

*Salt River Pima-Maricopa Indian Community v. Hull*, 945 P.2d 818 (Ariz. 1997) .............. 12

*Skinner v. Pinal County*, 2009 WL 1407363 (D. Ariz. May 20, 2009) ................................. 8

*Spurlock v. Santa Fe Pacific RailRoad Co.*, 694 P.2d 299 (Ariz. Ct. App. 1984) ............... 9

*Star Insurance Co. v. United Commercial Insurance Agency, Inc.*,
    392 F. Supp. 2d 927 (E.D. Mich. 2005) ...................................................... 14, 15

*Tanoh v. Dow Chemical Co.*, 561 F.3d 945 (9th Cir. 2009).................................................. 6

*Thomas v. Maricopa County Board of Supervisors*, 2007 WL 2995634
    (D. Ariz. Oct. 12, 2007).......................................................................... 8

*United States v. Agnew*, 423 F.2d 513 (9th Cir. 1970) .......................................................... 1

*United States v. Nordic Village Inc.*, 503 U.S. 30 (1992).................................................... 1

*United States v. Park Place Associates, Ltd.*, 563 F.3d 907 (9th Cir. 2009) ........................... 1

*United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506 (1940) .................. 3, 5

*United States v. Washington*, 19 F. Supp. 3d 1317 (W.D. Wash. 2000) ................................. 1

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*,
   790 F.3d 1000 (10th Cir. 2015)................................................................................. 1, 2

*Wilson v. Byrd*, 288 P.2d 1079 (Ariz. 1955) ......................................................................... 9

## STATUTES

25 U.S.C.
   § 2710(d)(3)(B) ......................................................................................................... 13
   § 2710(d)(8)(B) ......................................................................................................... 13

42 U.S.C. § 1983 ....................................................................................................................... 8

Ariz. Rev. Stat.
   §§ 5-601 *et seq.*........................................................................................................... 7
   § 5-601.02 .......................................................................................................... 12, 13
   § 5-601.02(A) ............................................................................................................. 8
   § 5-601.02(E)....................................................................................................... 8, 12
   § 5-602(C) .................................................................................................................. 8
   § 5-602.01(C) ............................................................................................................. 8
   § 11-201(A)(1)........................................................................................................... 8

## OTHER AUTHORITIES

80 *C.J.S. Set-off and Counterclaim* § 2 (2015) .................................................................. 3

*Black's Law Dictionary* (10th ed. 2014)............................................................................ 2

Camilla E. Watson, *Equitable Recoupment: Revisiting an Old and Inconsistent
   Remedy*, 65 Fordham L. Rev. 691 (1996) ............................................................... 3

*Restatement (Second) Contracts* § 164 (1981) ................................................................. 13

*Restatement (Second) of Torts* § 541 (1977)................................................................... 14

1    Director Bergin's counterclaims must be dismissed for three independent reasons:

2    (1) they are barred by sovereign immunity; (2) he lacks capacity to bring them; and (3) they

3    fail to state a claim.  Director Bergin offers no persuasive response to any of these points.

4    **I.    THE NATION'S SOVEREIGN IMMUNITY BARS THE COUNTERCLAIMS**

5        A tribe's decision to sue does not waive its immunity from counterclaims, even

6    compulsory counterclaims.  *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian*

7    *Tribe of Okla.*, 498 U.S. 505, 509-510 (1991); *see* MTD 10-14 (Doc. 108).  "Supreme Court

8    precedent couldn't be clearer on this point."  *Ute Indian Tribe of the Uintah & Ouray*

9    *Reservation v. Utah*, 790 F.3d 1000, 1011 (10th Cir. 2015).  Without acknowledging

10   *Oklahoma Tax Commission*, Director Bergin argues that the Nation has waived immunity

11   because his counterclaims sound in "equitable recoupment" and because the Nation has sued

12   for a breach of the Compact.  Each theory fails as a matter of law.

13       **A.    Equitable Recoupment Has No Application Here**

14       Director Bergin's reliance on equitable recoupment is misplaced.  Def.'s Opp. Br. 4-7

15   (Doc. 111) ("Opp.").  Recoupment is a "narrow exception" to sovereign immunity.  *United*

16   *States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 932 n.16 (9th Cir. 2009); *cf. United States*

17   *v. Nordic Vill. Inc.*, 503 U.S. 30, 39 (1992) (explaining that Supreme Court decisions have

18   "substantially narrowed" "equitable recoupment").  At most, it operates as a "'defense' to

19   defeat a plaintiff's claims, not a vehicle for pursuing affirmative judgment."  *Ute Indian*

20   *Tribe*, 790 F.3d at 1011.  It is thus well settled that recoupment does not apply where a

21   defendant seeks an "affirmative judgment" through "injunctive and declaratory relief."  *Id.*;

22   *see Quinault Indian Nation v. Comenout*, 2015 WL 1311438, at *3 (W.D. Wash. Mar. 23,

23   2015); *United States v. Washington*, 19 F. Supp. 3d 1317, 1342 (W.D. Wash. 2000); *see also*

24   *Rosebud Sioux Tribe v. Val–U Constr. Co.*, 50 F.3d 560, 562 (8th Cir. 1995).  Even the

25   authority cited by Director Bergin (at 5) so holds.  *See United States v. Agnew*, 423 F.2d 513,

26   514 (9th Cir. 1970) (recoupment may not be used to secure "affirmative relief").

27       That principle forecloses Director Bergin's reliance on recoupment here.  The

28   counterclaims seek an injunction prohibiting the Nation "from opening a Class III gaming

facility in the Phoenix metropolitan area," Am. Countercl. ¶ 83 (Doc. 96); "reform[ation]" of the Compact, *id.* ¶ 91; and a declaration that "because … the Compact was invalidly entered into, [it] is voidable and unenforceable, in whole or in part, and is subject to rescission," *id.* ¶ 104; *see also id.* at 35-36 (Relief Requested) (seeking "declaration[s]," "judgment[s]," and "injunction[s]").  All of that relief is "affirmative"—indeed, it is identical to relief sought by the State in pending litigation—and it "asks [the Court] to do much more than deny" the Nation's requested relief.  *Ute Indian Tribe*, 790 F.3d at 1011; *see Black's Law Dictionary* 1482 (10th ed. 2014) ("affirmative relief" means "relief sought by a defendant … that could have been maintained independently of the plaintiff's action").

For similar reasons, the counterclaims are not "mirror image" relief.  Opp. 2, 5.  In the cases Director Bergin relies on, a defendant's counterclaim sought the equivalent of a denial of plaintiff's requested relief.  Thus, in *Oneida Tribe of Indians of Wisconsin v. Village of Hobart*, 500 F. Supp. 2d 1143 (E.D. Wis. 2007), a tribe sought a declaration that certain land was not subject to municipal taxation; the defendant sought a declaration that it was.  *Id.* at 1149.  Similarly, in *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241 (8th Cir. 1995), a tribe filed a quiet title action and "affirmatively requested the district court to order the defendants to assert any claims in the disputed lands … against the Tribe"; in those circumstances, the court held, the tribe consented to counterclaims to quiet title.  *Id.* at 1244-1245.  Whether or not those decisions are correct, they are inapposite here.  The Nation seeks to bar ADG from relying on claims of purported fraud as a basis for refusing certifications in connection with the West Valley Resort ("WVR").  The "mirror image" of the Nation's requested relief would be a judgment that ADG has such authority.  But Director Bergin asks for much more: He asks this Court to enter judgments that would rescind the Compact, reform it, or declare it voidable.  Recoupment does not permit such affirmative relief.  *See Ute Indian Tribe*, 790 F.3d at 1011.

That the counterclaims seek affirmative relief is sufficient to foreclose Director Bergin's reliance on recoupment, and this Court need go no further.  However, recoupment is unavailable here for at least two additional reasons.

2

*First*, recoupment applies only where, unlike here, a sovereign sues for money damages. Although, as Director Bergin notes (at 5 n.2), some courts have applied the doctrine outside that context, that extension cannot be squared with first principles or governing precedent. "Recoupment is a common-law, equitable doctrine that permits a defendant to assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff." 80 *C.J.S. Set-off and Counterclaim* § 2 (2015); *see* Camilla E. Watson, *Equitable Recoupment: Revisiting an Old and Inconsistent Remedy*, 65 Fordham L. Rev. 691, 713 (1996) ("Recoupment originated as a limited equitable remedy allowing a defendant to mitigate or defeat a plaintiff's claim for damages[.]"). "Classically," then, "recoupment is permitted only to reduce or eliminate damages, not to gain some other form of relief." *Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 672 n.4 (1st Cir. 1999). Indeed, the Supreme Court has applied recoupment against sovereigns only in actions for money damages. *See Bull v. United States*, 295 U.S. 247, 262 (1935); *United States v. U.S. Fidelity & Guar. Co.*, 309 U.S. 506, 511 (1940). And at least one court in this Circuit has held that recoupment is limited to that context. *See Chemehuevi Indian Tribe v. California State Bd. of Equalization*, 492 F. Supp. 55, 57 n.1 (N.D. Cal. 1979) ("Since the Tribe has dropped its claim for monetary damages … and now seeks only declaratory and injunctive relief and nominal damages, the recoupment exception to the doctrine of sovereign immunity does not apply."), *aff'd*, 757 F.2d 1047 (9th Cir. 1985), *rev'd on other grounds*, 474 U.S. 9 (1985).

Indeed, the *Oklahoma Tax Commission* litigation confirms that recoupment is limited to the money damages context. There, a tribe sued a state agency to enjoin assessment of a tax on the sale of cigarettes at a convenience store. 498 U.S. at 507. The agency counterclaimed, seeking enforcement of the tax assessment and an injunction against cigarette sales absent compliance with state law. *Id.* The district court held that recoupment permitted the counterclaims. 1988 WL 122606, at *7 (W.D. Okla. Apr. 15, 1988). The Tenth Circuit reversed, holding that "[r]ecoupment … is an equitable defense that applies only to suits for money damages." 888 F.2d 1303, 1305 (10th Cir. 1989). As the Court of Appeals explained, because the tribe "sought only injunctive relief," the recoupment doctrine

3

1    was inapplicable, and the counterclaims were barred by tribal sovereign immunity.  *Id.*  On

2    review, although the Supreme Court did not discuss recoupment, it "uph[e]ld the Court of

3    Appeals' determination that the Tribe did not waive its sovereign immunity by filing an

4    action for injunctive relief"—implicitly rejecting the application of recoupment.  498 U.S. at

5    509-510.[1]  And on remand the Tenth Circuit "affirm[ed] [its] previous decision … except for

6    that language in the opinion that conflicts with the decision of the Supreme Court," 932 F.2d

7    1355, 1355 (10th Cir. 1991), thereby reaffirming that "[r]ecoupment … applies only to suits

8    for money damages," 888 F.2d at 1305.[2]

9           *Second*, even under Director Bergin's capacious view of recoupment, the

10   counterclaims do not arise from the same "transaction" as the Nation's suit.  The Nation

11   seeks relief holding that ADG lacks the authority (newly asserted in 2015) to bar the Nation

12   from engaging in Class III gaming at the WVR based on alleged fraud.  That is a

13   straightforward question of law regarding ADG's regulatory authority.  By contrast, in his

14   counterclaims, Director Bergin seeks to litigate issues relating to compact negotiations and a

15   state ballot initiative that occurred nearly 15 years ago.  Although that background supplies

16   context for the Nation's suit, compact-negotiation and ballot-initiative issues do not remotely

17   "'serve as the basis'" for "the Nation's [preemption] claim," as Director Bergin asserts (at 6).

18   Whether the Nation committed fraud nearly 15 years ago (it did not) is distinct from and

19   logically irrelevant to whether ADG has regulatory authority to make that determination now

20   and, on that basis, to deny Class III gaming rights secured by federal law.  Recoupment thus

21

22          [1] Before the Supreme Court, both the United States and the tribe defended the Tenth
23   Circuit's decision on that ground.  *See* U.S. Br., *Oklahoma Tax Comm'n* (No. 89-1322),
     1990 WL 10012681, at \*14 n.12 ("Equitable recoupment permits a defendant to offset a
24   monetary award in favor of the plaintiff by an amount the plaintiff owes the defendant
     arising out of the same transaction.  It is not a basis for awarding affirmative relief."); Resp.
25   Br., *id.*, 1990 WL 10012682, at \*31 n.59 (same).

26          [2] This Court should reject any request by Director Bergin to expand the doctrine of
27   recoupment based on equitable considerations:  "Indian sovereignty, like that of other
     sovereigns, is not a discretionary principle subject to … the equities of a given situation."
28   *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 419 (9th Cir. 1989).

1    does not apply.  *Cf., e.g.*, *Harrah v. United States*, 77 F.3d 1122, 1126-1127 (9th Cir. 1995)

2    ("common thread of factual similarity" was insufficient to render actions occurring in

3    different years the same "transaction" for recoupment purposes).

4         **B.    The Nation Has Not Waived Sovereign Immunity By Asserting A "Breach
5                 Of Compact"**

6         Director Bergin also contends (at 8) that, "[b]y instituting an action premised upon an

7    alleged breach of the Compact, the Nation has waived its sovereign immunity and opened

8    the door to counterclaims that challenge the enforceability of the Compact's terms."  This

9    theory fails as a matter of law for two reasons.

10        *First*, while Director Bergin's framing of the Nation's suit as a breach-of-compact

11   action is wrong (as explained below), more importantly, it is irrelevant to the question

12   whether the Nation has waived immunity.  As the Supreme Court has held, a tribe simply

13   does not waive its immunity from counterclaims by suing, even for a breach of contract.  *See*

14   *U.S. Fidelity & Guaranty Co.*, 309 U.S. at 511-513 (suit for royalties due under leases did

15   not waive immunity for counterclaims seeking credits under those or related leases).

16   Director Bergin's contrary argument conflates defenses with counterclaims.  If he were

17   correct (at 8) that "[t]he Nation's IGRA preemption claim places squarely at issue the

18   Compact's validity," the supposed invalidity of the Compact might be a *defense* to the

19   Nation's claim.[3]  But that does not mean that the Nation has waived its immunity from

20   counterclaims seeking affirmative injunctive and declaratory relief.  The bottom line is that,

21   however its suit is characterized, the Nation did not, by suing Director Bergin, "waive its

22   sovereign immunity from [counterclaims] that could not otherwise be brought."  *Oklahoma*

23   *Tax Comm'n*, 498 U.S. at 509.

24   _____

25        [3] Although Director Bergin has alleged fraudulent inducement and misrepresentation
     as defenses, he is not entitled to affirmative relief, such as Compact reformation or
26   rescission, in connection with those defenses.  To the extent his affirmative defenses seek
     such relief, they are in fact counterclaims barred by the Nation's sovereign immunity.  *See,*
27   *e.g.*, *J & J Sports Prods., Inc. v. Mendoza-Govan*, 2011 WL 1544886, at *7 (N.D. Cal. Apr.
     25, 2011) ("'An affirmative defense is a defense, not a claim for affirmative relief.'").

28

5

*Second*, however often Director Bergin asserts otherwise (at 1 & n.1, 7-10), the Nation has not sued for breach of the Compact.  It is a "well-established rule" that the plaintiff is the "master[] of [its] complaint."  *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009).  As such, the Nation "decide[s] what law [it] will rely upon."  *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (Holmes, J.).  Here, the Nation has alleged that federal law preempts ADG's putative state-law authority to decide that the Nation has engaged in "disqualifying conduct" nullifying the Nation's right to engage in Class III gaming at the WVR.  Compl. ¶¶ 94-113 (Doc. 1).  The Nation's decision as to which substantive law to invoke—not Director Bergin's efforts to recast its claim—is controlling.  *See, e.g.*, *Garduno v. Nat'l Bank of Ariz.*, 738 F. Supp. 2d 1004, 1008-1010 (D. Ariz. 2010); *Chadam v. Palo Alto Unified Sch. Dist.*, 2014 WL 325323, at *6 (N.D. Cal. Jan. 29, 2014) ("[p]laintiffs … are free to assert whichever claims they choose and eschew others"; "[t]he Court evaluates [p]laintiffs' claims as ple[d] not as they have been recast by [defendant]").

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), is instructive.  There, plaintiffs—members of unions protected by *collective* bargaining agreements—brought state-law actions for breach of "*individual* employment contracts."  *Id.* at 394.  Defendant sought to remove to federal court on the theory that federal law completely preempts claims for violations of collective bargaining agreements.  The Supreme Court rejected that theory.  Although plaintiffs "could have brought" suit under the collective bargaining agreements, the Court reasoned, "[a]s masters of the complaint," plaintiffs "chose not to do so," and that choice was dispositive.  *Id.* at 395.  The same is true here.  Whether or not the Nation could have sued for a breach of the Compact, it has not done so, and the Nation's choice must be respected.

This analysis is unaffected by Director Bergin's contention (at 8) that "for IGRA preemption to apply at all, there must be a validly 'entered into' compact."  To start, that is simply wrong:  Under IGRA, States have no role in regulating Class III gaming on Indian lands unless a compact grants such authority.  Thus, if there were no compact in effect between Arizona and the Nation, IGRA would preempt *any* assertion of authority by ADG

over Class III gaming at the WVR. *See, e.g., Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1242-1250 (11th Cir. 1999) (State had no regulatory authority over and could not sue to enjoin Class III gaming conducted in the absence of a compact; IGRA remedial scheme contemplated federal enforcement in such circumstances); TRO/PI Order 22, *Pueblo of Pojoaque v. New Mexico*, No. 1:15-cv-00625 (D.N.M. Oct. 7, 2015) (Doc. 31) ("[T]he State's jurisdiction over gaming activities that occur on the Pueblo's lands ceased when the compact expired.").

Nor does the existence of a compact between the Nation and the State transform the Nation's preemption claim into a breach-of-compact action. *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997), is not to the contrary. That decision—which had nothing to do with tribal immunity, as the tribes were plaintiffs—held that a compact must be approved by the Secretary of the Interior and must have been validly entered into to be effective. *Id.* at 1553. It does not suggest either that preemption claims require a valid compact or that the Nation has sued for breach of compact here. Director Bergin's position (at 9) that "[t]he Nation admitted during oral argument that the preemption claim was based on the Compact" is equally unpersuasive. The cited passage merely acknowledges that Director Bergin might have a defense to preemption if the Compact gave ADG authority to decide that alleged fraud is "disqualifying conduct" that nullifies the Nation's Class III gaming rights at the WVR. That is not an "admi[ssion]" that the Nation sued for breach of the Compact.

## II.   DIRECTOR BERGIN HAS NO CAPACITY TO BRING THE COUNTERCLAIMS

The Court should also dismiss the counterclaims because Director Bergin has no capacity to bring them. Arizona agencies "'possess only those powers … delegated to them by their enabling statutes,'" *Abarah v. City of Scottsdale Police Dep't*, 2010 WL 4102563, at *1 (D. Ariz. Oct. 18, 2010), and the Arizona legislature has not given ADG the power to sue, *see* A.R.S. §§ 5-601 *et seq.*; MTD 14-16. Director Bergin's responses are unavailing.

*First*, Director Bergin argues incorrectly (at 11) that "ADG is a jural entity for disputes related to the Compact." As an initial matter, an agency is either a jural entity or it is not; it cannot be a jural entity for some purposes but not others. *See* MTD 14. That is why

1    ADG's own argument in previous litigation that ADG is not a jural entity and Director

2    Bergin's admission here that ADG lacks general litigation authority (at 11 n.5) are

3    significant.  In any event, even if ADG could have jural status only for "disputes related to

4    the Compact," nothing in the Compact or state law authorizes ADG to sue to enforce the

5    Compact, much less to rescind or reform it.  Courts demand "specific statutory authority …

6    to sue and be sued," not arguments based on "fair[] impli[cations]."  *Skinner v. Pinal Cty*.,

7    2009 WL 1407363, at *2 (D. Ariz. May 20, 2009).[4]  There is no such statutory authority

8    here.  The statutes and Compact provisions Director Bergin cites (at 11-12) establish only

9    that ADG has responsibilities under the Compact; they "say[] nothing about whether [ADG]

10   is a *jural* entity capable of suing and being sued."  *Id*. at *1.  Indeed, state law provides that

11   ADG may not sue to recover civil penalties for violations of a compact or compact-related

12   rules—compelling evidence that ADG is not a jural entity, even in connection with the

13   compacts.  A.R.S. § 5-602.01(C); Compl. Ex. B (Compact) § 7(h) (Doc. 1-2).

14        *Second*, Director Bergin argues (at 13) that he has capacity to assert counterclaims

15   based on the "relief sought by the Nation."  That is also incorrect.  Having been sued under

16   *Ex parte Young*, Director Bergin may assert defenses, but the Nation's suit does not give him

17   authority to sue not otherwise granted to him by state law.  *See Cimeran v. Cook*, 561 F.

18   App'x 447, 450-451 (6th Cir. 2014); *cf. Gomez v. Illinois State Bd. of Educ*., 811 F.2d 1030,

19

20   _____

21        [4] *Thomas v. Maricopa County Bd. of Supervisors*, 2007 WL 2995634 (D. Ariz. Oct.
     12, 2007), is not to the contrary.  In *Thomas*, the Maricopa County Board of Supervisors

22   asserted that it was a non-jural entity to defeat a claim under 42 U.S.C. § 1983; this Court
     concluded that the Board of Supervisors was a municipal governing body that § 1983

23   permitted to be sued.  *Id.* at *6.  The Court also noted, less "importantly," "multiple statutory
     provisions indicating that the Board of Supervisors [was] a jural entity," including provisions

24   giving the Board "the power to enter into contractual agreements and the power to purchase,
     lease, and sell property and other interests of the county."  *Id.* at *5-6.  (In fact, the Board has

25   express statutory authority to sue and be sued.  A.R.S. § 11-201(A)(1); *Abarah*, 2010 WL
     4102563, at *1.)  Director Bergin has no comparable authority.  Arizona law gives the

26   governor, not ADG, the authority to enter into and amend compacts.  A.R.S. § 5-601.02(A),

27   (E).  ADG's role is to "execute the duties of th[e] state under the tribal-state compacts," *id.*

28   § 5-602(C)—a role that arises only after and as a result of the compacts' formation.

1    1043 n.5 (7th Cir. 1987) ("[C]apacity to sue and capacity to be sued are not necessarily

2    coterminous.").  Neither of the cases he cites supports such a proposition.  *Arizona*

3    *Independent Redistricting Commission v. Brewer* held only that an official removed by the

4    governor "has standing to challenge the legality of the … removal."  275 P.3d 1267, 1271

5    (Ariz. 2012).  And *State ex rel. Montgomery v. Mathis* held that the state agency at issue

6    there and in *Brewer* is, in fact, a jural entity because "'capacity to sue was expressly granted

7    in enabling legislation.'"  290 P.3d 1226, 1235 (Ariz. Ct. App. 2012).  That is not so here.

8         *Third*, Director Bergin wrongly suggests that he has capacity—or, alternatively, that

9    the Nation should be "estopped" from asserting his lack of capacity—because the Nation has

10   "previously contracted directly with ADG."  Opp. 13-14.  As a threshold matter, the

11   resolutions to which Director Bergin refers nowhere state that ADG has authority to assert

12   claims in court.  Moreover, Director Bergin cites no authority suggesting capacity can be

13   implied from a course of dealing between the Nation and ADG, *cf. Payne v. Arpaio*, 2009

14   WL 3756679, at *4 (D. Ariz. Nov. 4, 2009) ("[T]here is no doctrine of jural status by

15   estoppel, at least without detrimental reliance in the case at hand."), as opposed to ADG's

16   enabling statute, *see Abarah*, 2010 WL 4102563, at *1.  And the single estoppel decision

17   Director Bergin cites—*Spurlock v. Santa Fe Pac. R.R. Co.*, 694 P.2d 299, 314 (Ariz. Ct.

18   App. 1984)—holds only that a party may not argue that a corporation has been dissolved

19   when the party has contracted and dealt with that corporation.  That is irrelevant here.  The

20   Nation is not disputing that ADG exists; it is disputing that Director Bergin can bring these

21   counterclaims in the absence of statutory authority to do so.

22   **III.    COUNTERCLAIMS TWO, THREE, AND FOUR (AND COUNTERCLAIM ONE TO THE**
23   **EXTENT IT TURNS ON COMPACT INVALIDITY) FAIL TO STATE A CLAIM**

24        Even if Director Bergin's counterclaims were not barred by the Nation's sovereign

25   immunity and Director Bergin's lack of state-law capacity to sue, they fail to state a claim.[5]

26   _____

27        [5] This failure also bars Director Bergin's affirmative defenses based on promissory
     estoppel, fraudulent inducement, or misrepresentation.  *See Wilson v. Byrd*, 288 P.2d 1079,
28   1083 (Ariz. 1955) ("[F]raud as a defense requires proof of all the elements of fraud as a

1

### A.    Promissory Estoppel

The promissory estoppel counterclaim should be dismissed because no such claim is

cognizable in the face of a fully integrated Compact that governs the subject matter at issue—

the location of gaming facilities.  MTD 18-20.  It is black-letter law that there can be no claim

for promissory estoppel where there is an enforceable contract governing the same subject

matter as the alleged promise.  *See, e.g., Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 71

(D.D.C. 2005) (collecting authority).  That is because, "[w]hen there is an express contract

governing the relationship out of which the promise emerged, … there is no gap in the

remedial system for promissory estoppel to fill."  *All-Tech Telecom, Inc. v. Amway Corp.*,

174 F.3d 862, 869 (7th Cir. 1999); *see also Mann v. GTCR Golder Rauner*, 425 F. Supp. 2d

1015, 1032 (D. Ariz. 2006).

Director Bergin does not (and could not) dispute those principles.  Instead, he argues (at

15-16) that he has stated a claim for promissory estoppel because there is "no direct conflict …

between the Compact and the Nation's promise."  To begin with, none of the precedent he

cites supports a "direct conflict" standard.  A promissory estoppel claim is barred if the alleged

promise relates to the same *subject matter* as an express contract, whether or not the promise is

in "direct conflict" with the contract.[6]

claim … [and] [i]f defendants' counterclaim was fatally defective in pleading and proof, so
was their defense grounded on the same theory and couched in the same terms.").

[6] In *Chanay v. Chittenden*, the Arizona Supreme Court rejected a promissory estoppel
claim on the basis that "[t]here can be no implied contract where there is an express contract
between the parties in reference to the same subject matter."  563 P.2d 287, 290 (Ariz. 1977)
(citing authorities); *see Bowman v. Honeywell Int'l, Inc.*, 438 F. App'x 613, 615 (9th Cir.
2011) (citing *Chanay* for the proposition that "Arizona law prohibits an action based on the
promissory estoppel theory of liability if there is an express, written contract on the same
subject matter").  In *Crofton v. CIT Group, Inc.*, 2011 WL 1211566 (D. Ariz. Mar. 30, 2011),
the court noted that the "integrated contract" "supersede[d] any other [verbal agreement]
related to the subject matter of the [contract]" but did not "supersede agreements on subject
matter that [the contract] explicitly exclude[d]."  *Id.* at *4.  Here, the Compact contains no
such exclusion.  To the contrary, the Compact expressly governs the "[l]ocation of [g]aming
[f]acilit[ies]" (Compl. Exh. B (Compact) § 3(j)), and it separately provides that it is the
"entire agreement of the parties with respect to the matters covered" (*id.* § 25).

1     In any event, Director Bergin's argument fails because it depends on the faulty premise

2 (at 16) that the Compact does not "explicitly allow[] the Nation to operate a casino in the

3 Phoenix area." That, however, is precisely what the Compact provides. As this Court has

4 determined in ruling on the State's Compact-related claims, "after long negotiation," the

5 parties' "experienced lawyers" drafted a Compact that "covers every aspect of the Nation's

6 gaming rights and obligations in Arizona," including the central question of where gaming

7 facilities could be located. *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 753 (D.

8 Ariz. 2013) ("*TON II*"), *appeal docketed*, No. 13-16517 (9th Cir.). Indeed, Section 3(j) of the

9 Compact is "titled 'Location of Gaming Facilit[ies],'" *id.* at 764, and it "authorize[s]" gaming

10 on a tribe's Indian Lands—including after-acquired lands—anywhere IGRA allows, Compl.

11 Exh. B (Compact) § 3(j); *see also id.* §§ 2(s), 3(a). Furthermore, the Compact states that

12 "[a]ny Class III Gaming not specifically authorized in … Section 3 is prohibited," *id.* § 3(p),

13 confirming that Section 3(j) provides "specific[] authoriz[ation]" to game on the lands it

14 identifies—that is, anywhere on the Nation's Indian lands that IGRA permits gaming,

15 including in Phoenix.[7] The Compact's unambiguous terms thus govern the subject matter at

16 issue and also "direct[ly] conflict" (Opp. 16) with any promise that the Nation would not

17 engage in gaming on any Indian Lands located in Phoenix. Even on Director Bergin's theory,

18 then, promissory estoppel is unavailable here.[8]

19 ───────────────

20     [7] Director Bergin's allegations not only acknowledge these provisions of the
Compact, but candidly assert that "[t]he[] limits on the … location of gaming facilities were
21 a key part of the consideration bargained for by the State." Am. Countercl. ¶¶ 26-27.

22     [8] Where, as here, a contract governs the same subject matter as the alleged promise,
there can be no promissory estoppel claim, and that is the end of the inquiry. Director
23 Bergin's assertions that the State justifiably relied on the Nation's purported promise are thus
immaterial. Put differently, as a matter of law, the State "cannot establish that [it] justifiably
24 relied … [where there is an] express contract[] … referencing the same subject matters."
25 *Mann*, 425 F. Supp. 2d at 1036; MTD 19. *Higginbottom v. State*, 51 P.3d 972 (Ariz. Ct.
App. 2002), does not suggest otherwise. Like Higginbottom, the State had "'knowledge …
26 contrary [to]'" the alleged promise. *Id.* at 977. Specifically, the State knew the terms of the
Compact, which "does not contain a ban on new casinos in the Phoenix area" and "cannot
27 reasonably be read to include such a ban." *TON II*, 944 F. Supp. 2d at 774. The State thus as
28 a matter of law could not justifiably rely on a contrary "promise."

### B.   Fraud In The Inducement And Misrepresentation

To state viable fraud and misrepresentation counterclaims, Director Bergin must adequately plead that the State *actually* and *justifiably* relied on the Nation's alleged representations and omissions in entering into the Compact.  MTD 20-25.  Director Bergin's response merely confirms that, as a matter of law, he cannot make either showing.

### 1.   Actual reliance

Director Bergin does not contest the black-letter principle that "'[a] party … cannot be defrauded into doing that which it was already legally obligated to do.'"  MTD 22 (citing cases).  Thus, if the State was legally obligated to enter into the Compact, Director Bergin's counterclaims for fraud and misrepresentation fail as a matter of law.  In his opposition, Director Bergin contends only that the State was not under such an obligation, a question of law easily resolved against him.  *See* A.R.S. § 5-601.02 ("[T]he state, through the governor, shall enter into the new standard form of tribal-state gaming compact.").

Director Bergin first points (at 18) to the governor's ability to "negotiate and enter into amendments to [the compacts]."  A.R.S. § 5-601.02(E).  But that provision does not help him.  For one thing, the governor's authority was carefully limited to amendments "consistent" with the terms of Proposition 202.  *Id.*  An amendment barring gaming in the Phoenix area would conflict with the express terms of the standard-form compact, which authorizes gaming everywhere IGRA allows it.  *See supra* p. 11.  Moreover, although the governor could propose amendments to the compacts even after Proposition 202, the State was bound to enter into the standard-form compact at a tribe's request and could not require any amendments.  That is the holding of *Salt River Pima-Maricopa Indian Community v. Hull*, 945 P.2d 818 (Ariz. 1997).  While acknowledging that the governor could seek to negotiate changes, the Arizona Supreme Court held that the governor, "if unsuccessful in any negotiations and if requested by a tribe, must sign the standard form of compact."  *Id.* at 826.

Next, Director Bergin contends (at 18) that the State was not required to enter into the Compact because under § 2(vv)(4) a tribe like Salt River "could have stopped the new compacts from taking effect."  This argument is both wrong and irrelevant.  As the Secretary

of the Interior determined, that provision could not be effective because it violates IGRA, which provides that compacts "shall take effect only when notice of approval by the Secretary … has been published by the Secretary in the Federal Register."  25 U.S.C. § 2710(d)(3)(B); *see also id.* § 2710(d)(8)(B) (Secretarial disapproval authority); Compact Approval Letter from Dep't Int. to Janet Napolitano 2-3 (Jan. 24, 2003) ("Approval Letter"), *available at* http://www.indianaffairs.gov/cs/groups/xoig/documents/text/idc-038169.pdf.[9] In any event, § 2(vv)(4) is immaterial to the issue of reliance:  Whether or not other events were preconditions to the Compact's becoming effective, the State was required by law "to enter into [the Compact]," A.R.S. § 5-601.02, foreclosing any claim that the Nation's representations "induced" the State to do so, *Restatement (Second) Contracts* § 164 cmt. c (1981).  On that key point, Director Bergin has no response.[10]

## 2. Justifiable reliance

Director Bergin's fraud and misrepresentation claims independently fail as a matter of law because, even assuming the State actually relied, it could not have *justifiably* relied on the Nation's purported representations or omissions.  MTD 23-25.

In response, Director Bergin argues (at 16, 18) that whether reliance was reasonable is "'usually'" a question of fact necessitating discovery.  Even if that is generally true, here the Nation and the State have already engaged in extensive discovery and this Court has already made findings and conclusions binding on the parties that are relevant to the issue of reliance.  Specifically, this Court concluded that the Compact was negotiated by sophisticated, sovereign parties, *see TON II*, 944 F. Supp. 2d at 753, 765, and that it "does not contain a ban on new casinos in the Phoenix area, and its terms cannot reasonably be

---

[9] The Secretary approved the Compact only after noting that the provision was "moot since all Indian tribes with a gaming facility in the listed three counties ha[d] entered into a new compact with the State."  Approval Letter 3.

[10] Director Bergin suggests (at 18 n.9) that, "[i]f the State was bound to enter into the Compact because of Proposition 202, it is the voters' sophistication and access to counsel that is relevant."  But Director Bergin does not—and likely could not—challenge the validity of Proposition 202 here.  MTD 22-23 n.10.  He does not contest that in his opposition.

1   read to include such a ban," *id.* at 774.  "[A]ny understanding on the part of the State that the

2   Compact contained such a limitation was not reasonable."  *Id.*

3         Put simply, the State could not, as a matter of law, have *justifiably* relied on the

4   *unreasonable* understanding that "[the Compact] would ensure that no new casinos would be

5   built in the Phoenix metropolitan area."  Opp. 19.  Just like a buyer inspecting a one-eyed

6   horse, the State could readily appreciate the Compact's meaning "at the time by the use of

7   [its] senses."  *Restatement (Second) of Torts* § 541 cmt. a (1977).  Indeed, as the Nation

8   pointed out (at 24-25 & n.11), and Director Bergin does not contest, Arizona law makes clear

9   that where a party is highly sophisticated and ably represented—as the State was here—

10  reliance on a representation that contradicts an agreement's express terms is not justifiable as

11  a matter of law.  *See also In re Kirsh*, 973 F.2d 1454, 1458 (9th Cir. 1992) ("[I]f a person

12  does have 'special knowledge, experience and competence' he may not be permitted to rely

13  on representations that an ordinary person would properly accept.").

14        Director Bergin's contention (at 19) that "the presence of a merger clause in the

15  Compact does not shield the Nation's fraud from judicial review" is equally unavailing.  The

16  Nation has not made that argument.  The Nation's position is that the State—a sovereign,

17  sophisticated, and well-counseled party—could not have justifiably relied on alleged

18  representations that the Compact would not permit gaming in Phoenix or that the Nation

19  would not game in Phoenix as a basis for entering a Compact (1) that comprehensively

20  governed the location of gaming facilities; (2) that any reasonable person would have

21  understood gave the Nation the right to game anywhere IGRA allowed; and (3) that

22  expressly provided that any "statement, agreement, or promise" not reflected in the Compact

23  was unenforceable, Compl. Exh. B (Compact) § 25.  Director Bergin offers no meaningful

24  rebuttal.

25        *Star Insurance Co. v. United Commercial Insurance Agency, Inc.*, 392 F. Supp. 2d

26  927 (E.D. Mich. 2005), does not support Director Bergin's position.  That case underscores

27  that no party should "be heard to complain that [it] relied on oral promises regarding

28  additional or contrary contract terms when there is written proof, signed by both parties to

the contrary"; rather, a party may "justifiably rely" only on a representation "regarding things outside the scope of the contractual terms." *Id*. at 930.  Here, alleged promises about the location of the Nation's gaming facilities are not "outside the scope of the contractual terms"—to the contrary, that issue was central to the Compact, and the Compact included express provisions comprehensively governing the location of gaming facilities.  Indeed, the State previously argued that the location of gaming facilities "was so important that the Governor considered it 'nuclear.'" *TON II*, 944 F. Supp. 2d at 765.  This Court thus held that "a term limiting the geographic location of gaming facilities would [not] naturally be omitted from the Compact." *Id*.  In these circumstances, any reliance by the State on purported extracontractual representations about the location of such gaming facilities could not, as a matter of law, be justifiable.

## CONCLUSION

The Nation's motion to dismiss Director Bergin's counterclaims should be granted.[11]

---

[11] Director Bergin should not be granted leave to amend or join other parties.  This Court set a deadline of January 19, 2016, for joining parties and amending pleadings, CMO ¶ 2 (Doc. 107), emphasizing that the deadline was "[r]eal" and would be "enforce[d]," *id*. ¶ 8.  Director Bergin has not shown "good cause" to change that deadline.  Fed. R. Civ. P. 16(b)(4); *Vicente v. City of Prescott*, 2014 WL 1346075, at *1 (D. Ariz. Apr. 3, 2014).  A motion to intervene would also be untimely and should not be allowed to subvert the deadline for joinder.  Fed. R. Civ. P. 24 (requiring "timely motion"); *Chamness v. Bowen*, 722 F.3d 1110, 1121-1122 (9th Cir. 2013).

1   Dated:  January 29, 2016                Respectfully submitted,

2

3

4                                          /s/    Danielle Spinelli
                                           Laura Berglan,
5                                             Acting Attorney General, SBN 022120
6                                          Office of Attorney General
                                           TOHONO O'ODHAM NATION
7                                          P.O. Box 830
                                           Sells, AZ  85634
8                                          Telephone: (520) 383-3410
9                                          laura.berglan@tonation-nsn.gov

10

11                                         Seth P. Waxman (*Pro hac vice*)
                                           Danielle Spinelli (*Pro hac vice*)
12                                         Kelly P. Dunbar (*Pro hac vice*)
                                           Sonya L. Lebsack (*Pro hac vice*)
13                                         Kevin M. Lamb (*Pro hac vice*)
                                           WILMER CUTLER PICKERING
14                                            HALE AND DORR LLP
15                                         1875 Pennsylvania Avenue, N.W.
                                           Washington, D.C.  20006
16                                         Telephone:  (202) 663-6000
17                                         seth.waxman@wilmerhale.com
                                           danielle.spinelli@wilmerhale.com
18                                         kelly.dunbar@wilmerhale.com
                                           sonya.lebsack@wilmerhale.com
19                                         kevin.lamb@wilmerhale.com

20

21                                         *Counsel for Plaintiff Tohono O'odham Nation*

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 29th day of January, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, which will send a notice of filing to all counsel of record.

                                        /s/  Danielle Spinelli

                                        DANIELLE SPINELLI