Paul K. Charlton, SBN 012449
Karl M. Tilleman, SBN 013435
Erin N. Bass, SBN 030104
STEPTOE & JOHNSON LLC
201 E. Washington Street
Suite 1600
Phoenix, AZ  85004
(602) 257-5200
pcharlton@steptoe.com
ktilleman@steptoe.com
ebass@steptoe.com

Danielle Spinelli (*Pro hac vice*)
Kelly P. Dunbar (*Pro hac vice*)
Sonya L. Lebsack (*Pro hac vice*)
Kevin M. Lamb (*Pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000
danielle.spinelli@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
kevin.lamb@wilmerhale.com

Laura Berglan, Acting Attorney General, SBN 022120
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, AZ  85634
(520) 383-3410
laura.berglan@tonation-nsn.gov

*Counsel for Plaintiff Tohono O'odham Nation*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE TOHONO O'ODHAM NATION,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS DUCEY, Governor of Arizona; MARK BRNOVICH, Arizona Attorney General; and DANIEL BERGIN, Director, Arizona Department of Gaming, in their official capacities,<br><br>Defendants. | Case No. 2:15-cv-01135-DGC<br><br>**THE TOHONO O'ODHAM NATION'S ANSWER TO DEFENDANT BERGIN'S FIRST AMENDED COUNTERCLAIMS** |

The Tohono O'odham Nation (the "Nation") submits this Answer to Defendant Director Daniel Bergin's First Amended Counterclaims (Doc. 96).  The Nation specifically denies each and every allegation of the Counterclaims not expressly admitted, qualified, or denied in this Answer.

## COUNTERCLAIMS

1.      The Nation admits that this action purports to be a suit to enjoin the Nation from engaging in Class III gaming activity that Director Bergin alleges was "procured by the Nation's fraudulent conduct in connection with the Compact," but otherwise denies the remaining allegations and that Director Bergin is entitled to the relief requested.

2.      The allegations in paragraph 2 characterize the Indian Gaming Regulatory Act ("IGRA"), which speaks for itself.  To the extent that the allegations are inconsistent with IGRA, they are denied.

3.      The allegations in paragraph 3 characterize IGRA, which speaks for itself.  To the extent that the allegations are inconsistent with IGRA, they are denied.

4.      The allegations in the first and third sentences of paragraph 4 characterize the compacts between Arizona and 17 Indian tribes, which speak for themselves.  To the extent that the allegations are inconsistent with those compacts, they are denied.  The Nation denies the allegations in the second sentence of paragraph 4.

5.      The allegations in paragraph 5 characterize the Indian Gaming Preservation and Self-Reliance Act ("Proposition 202"), which speaks for itself.  To the extent that the allegations are inconsistent with Proposition 202, they are denied.

6.      Denied.

7.      The allegations in the first sentence of paragraph 7 are denied.  The allegations in the second sentence of paragraph 7 characterize the Gila Bend Indian Reservation Lands Replacement Act ("Lands Replacement Act"), which speaks for itself.  *See* Pub. L. No. 99-503, 100 Stat. 1798 (1986).  To the extent that the allegations are inconsistent with the Lands Replacement Act, they are denied.

8.     The allegations in the first sentence of paragraph 8 are denied, as is the allegation in the second sentence that the provisions in the Nation's compact were agreed to "[i]n return" for the alleged "representations."  The remaining allegations in the second sentence of paragraph 8 characterize the compacts that Arizona has entered into with the Nation and other tribes, which speak for themselves.  To the extent that the allegations are inconsistent with those compacts, they are denied.

9.     The allegation in paragraph 9 is a conclusion of law and therefore requires no response.  To the extent that a response is required, the allegation is denied.

10.     To the extent paragraph 10 states a conclusion of law, no response is required.  To the extent a response is required, the allegations are denied, except that the Nation admits that it intends, if circumstances and the law permit, to conduct Class III gaming activities on its land in Maricopa County (the "Settlement Property"), including land identified by Director Bergin as "Parcel 2."

11.     Denied.

12.     The Nation admits that Director Bergin's First Amended Counterclaims seek to prevent the Nation from conducting Class III gaming activities on the Settlement Property.  The Nation denies that its right to such gaming "was procured by the Nation's fraudulent conduct" or that Director Bergin is entitled to the relief he seeks.

**PARTIES**

13.     The Nation admits that the State of Arizona (the "State") is a party to the Compact.  The second sentence of paragraph 13 is a conclusion of law and therefore requires no response.  To the extent that a response is required, the allegation is denied.

14.     The Nation admits and/or avers that it is a federally recognized Indian tribe whose governmental seat is in Sells, Arizona.  The Nation also admits and/or avers that it operates two Class III gaming facilities in the vicinity of Tucson and one gaming facility near the community of Why.  The final sentence of paragraph 16 states a conclusion of law and therefore requires no response.  To the extent that a response is required, the allegation is denied.  The Nation otherwise denies the allegations in paragraph 14.

**JURISDICTION AND VENUE**

15.    The allegations in paragraph 15 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

16.    The Nation admits that the negotiation and signing of its compact occurred in this federal district and that the real property that is the subject of this action is located in this federal district.  The balance of the allegations in paragraph 16 are conclusions of law and therefore require no response.

**GENERAL ALLEGATIONS**

17.    The allegations in the first sentence of paragraph 17 characterize IGRA, which speaks for itself.  To the extent that those allegations are inconsistent with IGRA, they are denied.  The allegations in the second sentence of paragraph 17 characterize the Nation's 1993 compact with the State, which speaks for itself.  To the extent that those allegations are inconsistent with the compact, they are denied.  The Nation admits that "the State of Arizona and the Nation entered into a compact" on June 24, 1993.

18.    The allegations in the first sentence of paragraph 18 characterize the Nation's 1993 compact with the State, which speaks for itself.  To the extent that those allegations are inconsistent with the compact, they are denied.  The balance of the allegations in paragraph 18 are denied.

19.    The Nation admits the allegations in paragraph 19 to the extent that they refer to the Nation's 1993 gaming compact with the State.  *See* 58 Fed. Reg. 44,000 (Aug. 18, 1993).

20.    The Nation admits and/or avers that, in 1999, various Arizona Indian tribes and the State began to discuss an extension of the terms and the modification of various provisions of the 1993 gaming compacts.  The Nation also admits and/or avers that the initial terms of the then-existing gaming compacts were scheduled to expire over the period from 2003 to 2009.  The Nation denies the balance of the allegations in paragraph 20.

21.     The Nation admits and/or avers that during the period from 1999 to 2002, various Arizona Indian tribes, including the Nation, negotiated with the staff of then-Governor Jane Hull and representatives of the Arizona Department of Gaming regarding potential terms for new gaming compacts.  The Nation denies the balance of the allegations in paragraph 21.

22.     The Nation admits and/or avers that, throughout the course of its negotiations with the staff of then-Governor Jane Hull and representatives of the Arizona Department of Gaming, the parties to those negotiations anticipated having a standard form of gaming compact.  The balance of the allegations in paragraph 22 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

23.     The Nation admits and/or avers that its negotiations with the staff of then-Governor Jane Hull and representatives of the Arizona Department of Gaming included discussions on the topics alleged.  The Nation also admits and/or avers that the tribes and the State reached agreement on those topics before the Governor abandoned her efforts to obtain authority from the Arizona legislature to execute new compacts.  The Nation denies the balance of the allegations in paragraph 23.

24.     The allegations in paragraph 24 characterize the compacts that Arizona has entered into with the Nation and other tribes, which speak for themselves.  To the extent that the allegations are inconsistent with those compacts, they are denied.

25.     The Nation admits that the State asked it to agree to reduce its allocation of gaming facilities from four under its 1993 Compact to three.  The Nation also admits and/or avers that it refused to reduce its allocation of gaming facilities because, if it did so, the Nation would not be able to put all its Class III gaming device rights into play unless it closed its small rural gaming facility near Why, which it had opened only months before the compact negotiations commenced.  To the extent the last sentence of paragraph 25 is a conclusion of law, no response is required.  To the extent that a

-4-

1    response is required to the last sentence, the allegations are denied.  The Nation denies

2    the remaining allegations in paragraph 25.

3         26.    The allegations in paragraph 26 characterize the compacts that Arizona has

4    entered into with the Nation and other tribes and IGRA, which speak for themselves.  To

5    the extent the allegations are inconsistent with those compacts or with IGRA, they are

6    denied.

7         27.    The Nation admits and/or avers that the limits on the number of gaming

8    facilities were a key element of the compacts.  The Nation denies the balance of the

9    allegations in paragraph 27.

10        28.    The allegations in paragraph 28 characterize the compacts that Arizona has

11   entered into with the Nation and other tribes, which speak for themselves.  To the extent

12   the allegations are inconsistent with those compacts, they are denied.

13        29.    The Nation admits that Arizona voters approved Proposition 202 in

14   November 2002.  The Nation denies the balance of the allegations in paragraph 29.

15        30.    The allegations in the first sentence of paragraph 30 characterize a February

16   20, 2002 press release, which speaks for itself.  To the extent that the allegations are

17   inconsistent with that press release, they are denied.  The remaining allegations in

18   paragraph 30 are denied.

19        31.    The Nation admits and/or avers that, prior to 2003, the San Lucy District

20   (or an entity controlled by the San Lucy District) evaluated various properties near

21   Buckeye and Tonopah for economic development (which might or might not include

22   gaming), but neither the District nor its entity was empowered to select property for the

23   Nation.  The Nation admits and/or avers that it did not disclose those activities, but avers

24   that it had no obligation to make such a disclosure.  The Nation denies that it

25   misrepresented its "plans for and claimed authority to seek and obtain a gaming facility in

26   the Phoenix metropolitan area" and/or that it had an obligation to make such a disclosure.

27   To the extent any further allegations are contained in paragraph 31, those allegations are

28   denied.

32.     Denied.  In addition, this Court has held that "no reasonable reading of the Compact could lead a person to conclude that it prohibited new casinos in the Phoenix area," and that "any understanding on the part of the State that the Compact contained such a limitation was not reasonable." *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 753, 768 (D. Ariz. 2013), *aff'd*, 2016 WL 1211834 (9th Cir. Mar. 29, 2016).

33.     The allegations in paragraph 33 are conclusions of law and therefore require no response.  To the extent a response is required, the allegations are denied.

34.     The allegations in the first sentence of paragraph 34 characterize Proposition 202, which speaks for itself.  To the extent that the allegations are inconsistent with Proposition 202, they are denied.  The allegations in the second sentence of paragraph 34 characterize Propositions 200 and 201, which speak for themselves.  To the extent that the allegations are inconsistent with those propositions, they are denied.

35.     The Nation admits and/or avers that, in 2002, seventeen Arizona Indian tribes united to support Proposition 202 and oppose Propositions 200 and 201 under the banner "Arizonans for Fair Gaming and Indian Self Reliance," and that various civic leaders supported their efforts.  The Nation admits and/or avers that it provided approximately $1,800,000 of financial support for that effort.  The Nation denies the balance of the allegations in paragraph 35.

36.     The first and second sentences of paragraph 36 characterize a question-and-answer document, which speaks for itself.  To the extent that the allegations are inconsistent with the document, they are denied.  The Nation admits and/or avers that it contributed a lump sum (or lump sums) to the campaign and that the Nation did not (and was not asked to) earmark funds for any specific aspect of the campaign or for any specific campaign materials.  The Nation lacks knowledge or information sufficient to form a belief as to the truth of the third sentence.  The Nation admits and/or avers that it intended for voters to rely on the campaign materials.  The Nation denies the balance of the allegations in paragraph 36.

37.     The Nation admits and/or avers that it provided information to the campaign for a question and answer in the "Answers to Common Questions" document addressing how the Nation's tribal membership benefits from gaming revenues, but was not otherwise involved in drafting, or providing information for, other portions of the document.  The Nation denies the balance of the allegations in paragraph 37.

38.     The first sentence of paragraph 38 characterizes the question-and-answer document, which speaks for itself.  To the extent that the allegations are inconsistent with the document, they are denied.  The Nation denies the balance of the allegations in paragraph 38, except that the Nation admits and/or avers that it has aboriginal lands in Tucson and that it may operate any or all of its gaming facilities on rural parts of its reservation.

39.     Denied as stated.  The Nation admits and/or avers that certain proponents of Proposition 202 stated that there would be "no additional facilities authorized in Phoenix, and only one additional facility permitted in Tucson," that certain media reported those statements, and that the Nation did not contradict those statements.  The Nation denies the balance of the allegations in paragraph 39.

40.     Denied.

41.     The Nation admits that Ned Norris publicly supported Proposition 202 and made the statements quoted.  However, the Nation denies any inference that Norris intended to convey or did convey that Proposition 202 would not permit new Indian casinos in the vicinity of Phoenix.

42.     The Nation admits the allegations in the first sentence of paragraph 42.  The remaining allegations in paragraph 42 characterize a publicity pamphlet, which speaks for itself.  To the extent that the allegations are inconsistent with the pamphlet, they are denied.

43.     Denied.  In addition, this Court has held that "no reasonable reading of the Compact could lead a person to conclude that it prohibited new casinos in the Phoenix area," and that "any understanding on the part of the State that the Compact contained

-7-

such a limitation was not reasonable." *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 753, 768 (D. Ariz. 2013), *aff'd*, 2016 WL 1211834 (9th Cir. Mar. 29, 2016).

44.     Paragraph 44 quotes from *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 782 (D. Ariz. 2013), which, in turn, quotes the deposition testimony of David LaSarte.  These quotations speak for themselves.  To the extent that the allegations are inconsistent with the text they quote, they are denied.  The Nation otherwise denies the allegations in paragraph 44.

45.     The Nation admits and/or avers that Chairman Manuel and Alexander Ritchie may have met with the editorial boards of Tucson-area newspapers.  The Nation denies the balance of the allegations in paragraph 45.

46.     Paragraph 46 quotes from *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 762-763 (D. Ariz. 2013), which speaks for itself.  To the extent that the allegations are inconsistent with the text of the opinion, they are denied.  The Nation admits and/or avers that Albert Manuel was Chairman of Vi-ikam Doag Industries, a corporation created by the Nation to provide economic development and employment opportunities for members of the Nation's San Lucy District, one of the Nation's political subdivisions.  The Nation otherwise denies the allegations in paragraph 46.

47.     Admitted.

48.     To the extent the allegations in paragraph 48 are conclusions of law, no response is required.  If a response is required, those allegations are denied.

49.     The allegation in paragraph 49 is a conclusion of law and therefore requires no response.  To the extent that a response is required, the allegation is denied.

50.     Denied.

51.     The Nation admits that it participated in the negotiations that led to Proposition 202, supported Proposition 202, and entered into a new compact in 2002 after the voters approved Proposition 202.  The Nation denies the balance of the allegations in paragraph 51, but avers that prior to 2003, the San Lucy District (or an entity controlled by the San Lucy District) evaluated various properties near Buckeye and Tonopah for

1    economic development (which might or might not include gaming), but neither the

2    District nor its entity was empowered to select property for the Nation.  The Nation

3    admits and/or avers that it did not disclose those activities, but avers that it had no

4    obligation to make such a disclosure.

5        52.    Paragraph 52 quotes from *Arizona v. Tohono O'odham Nation*, 944 F.

6    Supp. 2d 748, 762-763 (D. Ariz. 2013), which speaks for itself.  To the extent that the

7    allegations are inconsistent with the text of the opinion, they are denied.  The Nation

8    admits and/or avers that Mary Ann Antone stated (Antone Dep. 16:3-4) that the Nation's

9    Commerce Committee was "looking at land to purchase, not specifically for casino

10   purposes" during the identified timeframe.  The Nation otherwise denies the allegations

11   in paragraph 52.

12       53.    The allegations in the first and second sentences of paragraph 53

13   characterize correspondence between the Nation and the Department of the Interior,

14   which speaks for itself.  To the extent that the allegations are inconsistent with that

15   correspondence, they are denied.  With respect to the allegations in the third sentence of

16   paragraph 53, the Nation admits that it did not tell the parties to the 1999-2002 compact

17   negotiations that such correspondence had occurred, but avers that it had no obligation to

18   do so and that its rights under the Lands Replacement Act are a matter of public record.

19   The Nation denies the balance of the allegations in paragraph 53.

20       54.    Denied as stated.  The Nation admits and/or avers that, prior to 2003, the

21   San Lucy District (or an entity controlled by the San Lucy District) evaluated various

22   properties near Buckeye and Tonopah for economic development (which might or might

23   not include gaming), but neither the District nor its entity was empowered to select

24   property for the Nation.

25       55.    The allegations in the first two sentences of paragraph 55 characterize a

26   January 25, 2000 letter from the Nation to the Department of the Interior, which speaks

27   for itself.  To the extent that the allegations are inconsistent with the letter, they are

28   denied.  The allegations in the third sentence of paragraph 55 characterize a May 31,

2000 letter from the Department of the Interior to the Nation, which speaks for itself.  To the extent that the allegations are inconsistent with the letter, they are denied.  As to the final sentence of paragraph 55, the Nation admits that it did not affirmatively disclose the letters to the State or to other tribes, but avers that it had no obligation to do so and that its rights under the Lands Replacement Act are a matter of public record.

56.    Paragraph 56 quotes from *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 763 (D. Ariz. 2013), which speaks for itself.  To the extent that the allegations are inconsistent with the text of the opinion, they are denied.  The court's opinion, in turn, quotes from anonymous hand-written notes dated "5/18/01," which speak for themselves.  To the extent that the allegations are inconsistent with the text of those notes, they are denied.  The court's opinion also characterizes deposition testimony, which speaks for itself.  To the extent that the characterization is inconsistent with the testimony, it is denied.  The Nation otherwise denies the allegations in paragraph 56.

57.    Paragraph 57 quotes from *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 763 (D. Ariz. 2013), which speaks for itself.  To the extent that the allegations are inconsistent with the text of the opinion, they are denied.  The court's opinion, in turn, quotes from a transcript of a June 26, 2001 meeting, which speaks for itself.  To the extent that the allegations are inconsistent with the transcript, they are denied.  The Nation otherwise denies the allegations in paragraph 57.

58.    Denied.

59.    Admitted.

60.    The Nation admits and/or avers that a meeting involving these attendees took place on August 21, 2002, but otherwise denies the allegations in paragraph 60.

61.    The Nation denies the allegations in paragraph 61 as stated, but avers that Rainier Resources, Inc., a Delaware corporation owned by the Nation, purchased the Settlement Property in August 2003 and that the Settlement Property consists of approximately 135 acres of land in unincorporated Maricopa County.

62.     The Nation denies the allegations in paragraph 62 as stated, but avers that Rainier Resources, Inc., purchased the Settlement Property, that Rainier Resources held title to the Settlement Property in fee simple, and that the Nation acquired the Settlement Property through Rainier Resources in part to prevent public disclosure of its ownership of the Settlement Property.

63.     The Nation admits and/or avers that its ownership of the Settlement Property was not generally known during the period from August 2003 until January 2009, that the Peoria Unified School District opened a high school across the street from the Settlement Property during that time period, and that various restaurants, hotels, and retail establishments were developed within a few miles of the Settlement Property during that time period.  The Nation lacks knowledge or information sufficient to form a belief as to the truth of the allegations relating to the knowledge of the developers of those restaurants, hotels, and retail establishments and therefore denies them.  The Nation denies the balance of the allegations in paragraph 63.

64.     Admitted; however, the conveyance was not recorded until January 28, 2009.

65.     Paragraph 65 quotes from a resolution of the Nation's Legislative Council, which speaks for itself.  To the extent that the allegations are inconsistent with the resolution, they are denied.

66.     Admitted.

67.     Paragraph 67 quotes from a letter from the Nation to the Department of the Interior, which speaks for itself.  To the extent that the allegations are inconsistent with the letter, they are denied.

68.     Denied as stated.  The Nation admits and/or avers that it intends, if circumstances and the law permit, to conduct Class III gaming activities on the Settlement Property.  The Nation also admits and/or avers that it is now conducting Class II gaming on the Settlement Property.

69.     The Nation admits that it claims the right to conduct Class III gaming activities on the Settlement Property.  The Nation denies that any of its past positions, representations, disclosures, or non-disclosures have been inconsistent with that position.  The balance of the allegations in paragraph 69 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

70.     The Nation admits and/or avers that it intends, if circumstances and the law permit, to conduct Class III gaming activities on the Settlement Property.  The Nation denies that any of its past positions, representations, disclosures, or non-disclosures have been inconsistent with that position.  The Nation denies the balance of the allegations in paragraph 70.  The Nation admits and/or avers that it is now conducting Class II gaming on the Settlement Property.

71.     Paragraph 71 characterizes correspondence between Director Bergin and the Nation, which speaks for itself.  To the extent that the allegations are inconsistent with the correspondence, they are denied.

72.     Paragraph 72 characterizes a letter from Director Bergin to the Nation, which speaks for itself.  To the extent that the allegations are inconsistent with the letter, they are denied.

73.     The allegations in paragraph 73 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

## FIRST CAUSE OF ACTION

## DECLARATORY RELIEF – NO DUTY TO CERTIFY

74.     Paragraph 74 reasserts and incorporates the allegations contained in the previous paragraphs, and therefore no further response is required.

75.     Allegations involving "declaratory and injunctive relief with respect to casinos other than the West Valley Resort" have been struck by the Court and require no response.  MTD Countercl. Order 22 (Doc. 127).  The remaining allegations in paragraph 75 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

## SECOND CAUSE OF ACTION

### PROMISSORY ESTOPPEL

76.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

77.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

78.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

79.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

80.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

81.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

82.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

83.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

84.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

85.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

86.     The Court has dismissed the Second Cause of Action (MTD Countercl. Order 17-18); therefore, no response is required.

## THIRD CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT

87.     Paragraph 87 reasserts and incorporates the allegations contained in the previous paragraphs, and therefore no further response is required.

88.     The Nation admits and/or avers that prior to 2003, the San Lucy District (or an entity controlled by the San Lucy District) evaluated various properties near Buckeye and Tonopah for economic development (which might or might not include gaming); that the Nation did not disclose those activities; and that the Nation had no obligation to make such a disclosure.  The Nation denies the balance of the allegations in paragraph 88.

89.     Denied.

90.     Denied.

91.     The allegations in paragraph 91 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.  Moreover, allegations requesting "reformation of the Compact" have been struck by the Court and require no response.  MTD Countercl. Order 22.

92.     The allegations in paragraph 92 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.  Moreover, allegations involving "declaratory and injunctive relief with respect to casinos other than the West Valley Resort" have been struck by the Court and require no response.  MTD Countercl. Order 22.

93.     The allegation in paragraph 93 is a conclusion of law and therefore requires no response.  To the extent that a response is required, the allegation is denied.

94.     The allegations in paragraph 94 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

95.     The Nation admits that in *Arizona v. Tohono O'odham Nation*, this Court held that the State's claim for fraudulent inducement does not constitute a claim for a violation of the Compact and therefore does not fall within IGRA's limited abrogation of tribal sovereign immunity.  2011 WL 2357833, at *12 (D. Ariz. June 15, 2011), *aff'd*, 2016 WL 1211834, at *9-10 (9th Cir. Mar. 29, 2016).  The remaining allegations in paragraph 94 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

**FOURTH CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION AND OMISSION OF**

**MATERIAL FACTS**

96.     Paragraph 96 reasserts and incorporates the allegations contained in the previous paragraphs, and therefore no further response is required.

97.     Denied.

98.     Denied.

99.     The Nation admits and/or avers that it did not disclose that prior to 2003, the San Lucy District (or an entity controlled by the San Lucy District) evaluated various properties near Buckeye and Tonopah for economic development (which might or might not include gaming).  The Nation also avers that its rights under the Lands Replacement Act are a matter of public record.  The balance of the allegations in Paragraph 99 are denied.

100.    The Nation admits and/or avers that it did not disclose that it had obtained a waiver from the Department of the Interior, but that its rights under the Lands Replacement Act are a matter of public record.  The balance of the allegations in paragraph 100 are denied.

101.    Denied.

102.    Denied.

103.    The allegation in paragraph 103 is a conclusion of law and therefore requires no response.  To the extent that a response is required, the allegation is denied.

104.    The allegations in paragraph 104 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

105.    Allegations involving "declaratory and injunctive relief with respect to casinos other than the West Valley Resort" have been struck by the Court and require no response.  MTD Countercl. Order 22.  The remaining allegations in paragraph 105 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

106.    The allegations in paragraph 106 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

107.    The allegations in paragraph 107 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

108.    The Nation admits that in *Arizona v. Tohono O'odham Nation*, this Court held that the State's claim for material misrepresentation does not constitute a claim for a violation of the Compact and therefore does not fall within IGRA's limited abrogation of tribal sovereign immunity.  2011 WL 2357833, *12 (D. Ariz. June 15, 2011), *aff'd*, 2016 WL 1211834, at *9-10 (9th Cir. Mar. 29, 2016).  The remaining allegations in paragraph 108 are conclusions of law and therefore require no response.  To the extent that a response is required, the allegations are denied.

## RELIEF REQUESTED

The remainder of Defendant Bergin's Counterclaims consists of his prayer for relief.  The Nation denies that Director Bergin is entitled to any of the relief, fees, or costs requested.

## AFFIRMATIVE DEFENSES

By alleging the defenses set forth below, the Nation is not in any way agreeing or conceding that it has the burden of proof or the burden of persuasion on any of these issues.

### First Affirmative Defense

The First Amended Counterclaims should be dismissed because they are barred by the Nation's sovereign immunity.

### Second Affirmative Defense

The First Amended Counterclaims should be dismissed because Director Bergin lacks the capacity to bring them.

### Third Affirmative Defense

The First Amended Counterclaims should be dismissed because they fail to state a claim upon which relief may be granted.

**Fourth Affirmative Defense**

The First Amended Counterclaims should be dismissed because Director Bergin has no standing to bring them.

**Fifth Affirmative Defense**

The First Amended Counterclaims should be dismissed because Director Bergin has not sustained any cognizable injury or damage as a result of any actions taken by the Nation.

**Sixth Affirmative Defense**

The First Amended Counterclaims should be dismissed because Director Bergin's unclean hands and/or bad faith preclude the relief being sought.

**Seventh Affirmative Defense**

The First Amended Counterclaims should be dismissed because they are barred by laches.

**Eighth Affirmative Defense**

The First Amended Counterclaims should be dismissed because they are barred by the statute of frauds.

**Ninth Affirmative Defense**

The First Amended Counterclaims should be dismissed because they are barred by the doctrines of ratification, consent, acquiescence, and/or estoppel.

**Tenth Affirmative Defense**

The First Amended Counterclaims should be dismissed for failure to join one or more indispensable parties.

**Eleventh Affirmative Defense**

The First Amended Counterclaims should be dismissed because they are barred by the statute of limitations.

**Twelfth Affirmative Defense**

The Nation asserts all other affirmative defenses that may be revealed subsequent to this filing.

1     WHEREFORE, the Nation respectfully requests judgment dismissing Defendant

2  Bergin's First Amended Counterclaims, together with all costs and reimbursement for

3  defense of this action and such other relief as the Court deems just and proper.

4

5

6

7  Dated:  April 14, 2016              Respectfully submitted,

8

9                                     /s/     Danielle Spinelli
                                      Laura Berglan,
10                                       Acting Attorney General, SBN 022120
                                      Office of Attorney General
11                                    TOHONO O'ODHAM NATION
12                                    P.O. Box 830
                                      Sells, AZ  85634
13                                    (520) 383-3410
14                                    laura.berglan@tonation-nsn.gov

15                                    Danielle Spinelli (*Pro hac vice*)
16                                    Kelly P. Dunbar (*Pro hac vice*)
                                      Sonya L. Lebsack (*Pro hac vice*)
17                                    Kevin M. Lamb (*Pro hac vice*)
                                      WILMER CUTLER PICKERING
18                                    HALE AND DORR LLP
19                                    1875 Pennsylvania Avenue, N.W.
                                      Washington, D.C.  20006
20                                    (202) 663-6000
21                                    daniellespinelli@wilmerhale.com
                                      kelly.dunbar@wilmerhale.com
22                                    sonya.lebsack@wilmerhale.com
23                                    kevin.lamb@wilmerhale.com

24                                    Paul K. Charlton
                                      Karl M. Tilleman
25                                    Erin N. Bass
                                      STEPTOE & JOHNSON LLP
26                                    201 E. Washington Street
27                                    Suite 1600
                                      Phoenix, AZ  85004
28

(602) 257-5200
pcharlton@steptoe.com
ktilleman@steptoe.com
ebass@steptoe.com

*Counsel for Plaintiff Tohono O'odham Nation*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 14th day of April, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, which will send a notice of filing to all counsel of record.


/s/    Danielle Spinelli
DANIELLE SPINELLI