FENNEMORE CRAIG, P.C.
Patrick Irvine (No. 006534)
Douglas C. Northup (No. 013987)
Carrie Pixler Ryerson (No. 028072)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: pirvine@fclaw.com
Email: dnorthup@fclaw.com
Email: cryerson@fclaw.com

GIBSON, DUNN & CRUTCHER LLP
Matthew D. McGill (admitted pro hac vice)
Matthew A. Hoffman (admitted pro hac vice)
1050 Connecticut Avenue N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Email: mmcgill@gibsondunn.com
Email: mhoffman@gibsondunn.com

*Attorneys for Defendant*
*Director Daniel Bergin, Arizona Department*
*of Gaming*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| The Tohono O'odham Nation,<br><br>        Plaintiff,<br><br>    v.<br><br>Douglas Ducey, Governor of Arizona; Mark Brnovich, Arizona Attorney General; and Daniel Bergin, Director, Arizona Department of Gaming, in their official capacities,<br><br>        Defendants. | No. 2:15-cv-01135-DGC<br><br>**DEFENDANT DANIEL BERGIN'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY** |

1    I.    **INTRODUCTION**

2         Instead of explaining how the documents and subjects of testimony are integral to any

3    particular piece of legislation, or how they bear the "hallmarks" of legislation or legislative

4    activity, the Nation spends the bulk of its opposition assuming that the legislative privilege

5    applies, that it is absolute under the circumstances, and that, even if it is qualified, it cannot

6    be overcome in light of the discovery the State received in *TON I*.[1]  Not so.

7         The Nation cannot establish that privileges apply by generically asserting that material

8    or areas of testimony were generated in "closed sessions," and are somehow related to the

9    Nation's decisions to take the Glendale property into trust and build a casino there nearly six

10   years later.  That is particularly true where most of the documents the Nation seeks to protect

11   do not refer to legislation, and where many do not even have an identifiable author.

12        But even if the privilege does apply, it is not absolute where, as here, important public

13   rights and interests are at stake.  And the privilege may be overcome given that the Nation's

14   intent is—by its own admission and based on the State's experience in *TON I*—discernable

15   largely through events that occurred in closed council sessions.  It should also be overcome in

16   light of the Nation's denial that any existing evidence of its intent is admissible.  As a result,

17   the Court should grant Director Bergin's motion, or at minimum, review the documents *in*

18   *camera* to determine whether the Nation's assertions of privilege are proper.  *See*, *e.g.*,

19   *Favors v. Cuomo*, 285 F.R.D. 187, 220-21 (E.D.N.Y. 2012) (deciding to conduct an *in*

20   *camera* review after weighing the relevant legislative privilege factors).  It should also order

21   that certain areas of testimony (such as when a particular witness learned of a particular fact,

22   regardless of whether that fact was learned in a "closed session") are not subject to the

23   legislative privilege.

24   _____

25   [1]  The Nation has either abandoned its assertion of deliberative process privilege or else
     equated it to the legislative privilege; as a result, Director Bergin will limit his discussion
26   to legislative privilege.  The Nation also belatedly asserts that many of the documents at
     issue could likely be covered under the attorney-client privilege (Opp. at 12 n.4), but since
27   the Nation did not assert that in its privilege log in *TON I*, it should be deemed waived.
     *See, e.g., Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d
28   1142, 1149-50 (9th Cir. 2005) (party waives privilege if it fails to timely assert it).

1

2

II.    **ARGUMENT**

A.    **The Legislative Privilege Does Not Apply to the Material at Issue.**

The Nation devotes much of its opposition to arguing that the legislative privilege is absolute here or, at minimum, is not overcome by the qualified privilege factors.[2]  But the Nation largely ignores the threshold question whether the legislative privilege even applies. It is the Nation's burden to prove that the privilege applies to each document and area of testimony (*Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988)), and that the information sought to be protected is "'an integral part of the deliberative and communicative processes' relating to proposed legislation or other matters placed within the jurisdiction of the legislature" (*Ariz. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 137 (2003) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972))).  The Nation cannot do so.

The Nation quotes this Court's decision in *Arizona v. Arpaio* in support of its view that the privilege applies to "all of a legislator's communications 'that bear on potential legislation' including gathering facts and soliciting advisory or factual input" without connecting any particular document to any particular legislation.  Opp. at 12 (quoting *Arpaio*, 2016 WL 2587991, at \*5).  The Nation reads too much into that decision.  *Arpaio* involved communications in the Arizona Legislature, "all but two" of which "refer[red] to specific legislation in their subject line" (2016 WL 2587991, at \*4)—quite the opposite of the documents and areas of testimony at issue here.  And, contrary to the Nation's suggestion, *Arpaio* does not hold that fact-gathering is broadly entitled to absolute protection under the doctrine of legislative privilege; rather, *Arpaio* suggests that a legislator's motivation in making communications was irrelevant to the privilege analysis as long as those communications had a connection to potential legislation.

That connection to potential legislation is what is missing here.  The Nation mentions two legislative resolutions, No. 03-375 (Aug. 18, 2003) and No. 09-049 (Jan. 27, 2009), to

---

[2]  Director Bergin described these as the *Warner Communications* or *Irvin* factors in his motion, but they are the same as the factors discussed in *Arizona v. Arpaio*, 2016 WL 2587991, at \*6 (D. Ariz. May 5, 2016).

Gibson, Dunn &
Crutcher LLP

2

which the documents and areas of testimony supposedly relate.  But with the possible exception of entry 2, none of the documents at issue mention any kind of pending legislation or proposal, and the Nation does not bother to explain which documents or areas of testimony pertain to which resolution.  Moreover, at least three entries were authored by "unknown" individuals, and several entries consist of "handwritten notes."

The Nation fails to explain how the areas of testimony sought by Director Bergin—including simple factual questions such as *when* plans were made to purchase the Glendale property, *who* was involved in those plans, *why* the Nation purchased the land in the way that it did, *when* discussions took place regarding plans to build the casino, the Nation's efforts to pass Prop. 202, and the Nation's agenda during negotiations—are tied to any type of legislation, even indirectly.  Instead, it offers conclusory assertions that "[c]onfidential discussions and fact-gathering about such matters by Council members, close advisors, and counsel are plainly covered, at a minimum, by legislative privilege" (Opp. at 12) and contends that the privilege does not apply "only to the enactment of legislation" (*id*. at 13). But the Nation does not have any substance to support this argument; it fails to explain how the "when," "who," and "why" questions described above implicate "confidential discussions" or "fact gathering."  Moreover, the Nation does not show that those topics relate even tangentially to legislation, as opposed to a commercial property purchase by the Nation. Nor are such essentially executive decisions uncommon for the Council—a cursory look at the Nation's legislative website shows that the Council is routinely tasked with resolving administrative issues or giving policy guidance to an agent rather than enacting legislation.[3]

In sum, absent from the Nation's defense of the documents and the areas of testimony at issue is any indicia that these topics or documents are quintessentially "legislative" in nature, meaning that they "bear the 'hallmarks of traditional legislation' by reflecting a

---

[3]   *See*, *e.g.*, http://www.tolc-nsn.org/res.htm (listing resolutions including "approving enrollment or adoption applications"; "correct[ing] names of enrollment applicants"; "approving radio use agreement between the Nation and Drexel Heights Fire District"; and "revocation of membership of Christina Lopez from the Tohono O'odham Nation").

Gibson, Dunn &
Crutcher LLP

3

discretionary, policymaking decision that may have prospective implications." *Fields*, 206 Ariz. at 138 (quoting *Bryan v. City of Madison*, 213 F.3d 267, 273 (5th Cir. 2000)).  At minimum, the Nation's vague and generic descriptions call for *in camera* review of the documents, and the Nation has not provided any authority to support the notion that it can shield discovery of facts merely because a witness learned that fact in a "closed session."

Similarly, the Nation fails to establish that the privilege should extend to documents prepared or presented by VDI, or to communications with VDI, a non-legislator. "[L]egislative immunity has been held to apply to non-legislators whose acts are both: (1) substantively legislative, i.e., acts that involve policy making; and (2) procedurally legislative, i.e., passed by means of established legislative procedures." *Favors*, 285 F.R.D. at 209.  But the Nation offers no details about VDI's relationship to the Nation or its role in any legislative process.  Critically, the Nation concedes VDI was not necessarily "performing a legislative function." Opp. at 14.

Information provided by VDI to the Nation's legislators and others is not categorically protected simply because it was provided in a closed session, and the Nation fails to show that VDI was engaged in any type of activity "integral" to any proposed legislation or legislative act. *See* Mot. at 10.  Where legislators are simply communicating with third-party consultants like VDI who are not engaged in a legislative capacity, a court should treat those communications as "conversations between legislators and knowledgeable outsiders" and deem them not privileged. *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elecs.*, 2011 WL 4837508, at *10 (N.D. Ill. Oct. 12, 2011); *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 661-64 (E.D. Va. 2014) (undertaking detailed analysis of legislative consultant's role, relationship, and responsibilities before concluding that he could not assert the legislative privilege over certain documents connected to redistricting decisions).

B.      **The Legislative Privilege Is Not Absolute In This Case.**

Even if some form of legislative privilege might apply to the documents and testimony at issue, that privilege is at most qualified.  The Nation, citing *Bethune-Hill v. Virginia State Board of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015), *United States v. Gillock*, 445 U.S.

Gibson, Dunn &
Crutcher LLP

4

360 (1980), and this Court's decision in *Arpaio*, argues the legislative privilege is qualified *only* if there are important federal interests at stake.  Opp. at 3-6.  The Nation is wrong.

As an initial matter, the Nation starts from a fundamentally mistaken premise. Broadly speaking, non-federal legislators "do not have an absolute right to refuse deposition or discovery requests in connection with their legislative acts" (*Harris v. Ariz. Indep. Redist. Comm'n*, 993 F. Supp. 2d 1042, 1069 (D. Ariz. 2014)), and the default rule is that the privilege is typically qualified, except in some limited cases where it is absolute (*see Kay v. City of Rancho Palos Verdes*, 2003 WL 25294710, at *11-15 (C.D. Cal. Oct. 10, 2003) (concluding that while some courts have held that the legislative privilege is absolute, "the better view is that [the legislative privilege] is qualified")).

To be sure, "important federal interests" may be *one* set of circumstances in which a state legislative privilege is qualified.  But *Bethune-Hill*, *Arpaio*, and *Gillock* did not hold that important federal interests are the *only* types of interests sufficient to render the legislative privilege qualified rather than absolute.  In fact, all three cases involved conflicts between state legislatures and federal interests and therefore did not have to consider whether the legislative privilege might still be qualified under other circumstances.

What *Bethune-Hill* does recognize, at least, is that the question whether the privilege is qualified or absolute "depends on the nature of the claim and the defendant" (114 F. Supp. 3d at 335), and the "nature of the claim" often seems to turn on whether the claimant seeks to vindicate public or private rights.  *See id*. (noting that it is "clear that the absolute privilege will normally still apply in civil suits brought by private plaintiffs to vindicate *private rights*"); *Marylanders for Fair Representation v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992) (Murnaghan, J. and Motz, J., concurring) (the doctrine of legislative immunity "does not necessarily prohibit judicial inquiry into legislative motive where the challenged legislative action is alleged to have violated *an overriding, free-standing public policy*"); *Fair & Balanced Map*, 2011 WL 4837508, at *6 ("Voting rights cases, although brought by private parties, seek to vindicate *public rights*") (all emphases added).  To the extent that the legislative privilege applies at all, it should be deemed qualified in light of the important

Gibson, Dunn &
Crutcher LLP

5

1

2   public rights at stake—specifically, the State's and the voters' rights to be free from fraud in

3   compact negotiations and ballot initiatives.

            C.      **The Qualified Privilege Factors Support Disclosure.**

4           The Nation does not seriously dispute the relevance of the documents and areas of

5   testimony at issue, arguing instead that disclosure is not warranted simply because Director

6   Bergin has a "preference for different evidence" than the evidence the State received in *TON*

7   *I*.  Opp. at 10.  But that is not the standard, and Director Bergin's need for this evidence is not

8   simply a matter of preference.

9           In *Favors*, the court ruled that the "availability" factor weighed in favor of disclosure

10  where the "substantial material" produced by the defendant told "only part of the story."  The

11  court continued:  "[t]o the extent that the information sought … relate[d] to *non-public,*

12  *confidential deliberations*," such information "likely cannot be obtained by other means."

13  285 F.R.D. at 219 (citing *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 102 (S.D.N.Y. 2003)).

14          That is the situation Director Bergin finds himself in here.  Director Bergin has

15  reviewed "substantial material" indicating that the Nation misrepresented to the State and

16  other tribes its intention to take land into trust and build a casino in West Phoenix.  But the

17  Nation's representatives have claimed that information about the actual decision to construct

18  a casino took place *only* in closed sessions (Mot. at 13 (citing Ramon Dep. 66:25-68:3)), and

19  the evidence the State did manage to obtain in *TON I* seemed to come largely from closed

20  sessions.  Thus, the primary evidence of the Nation's intent with respect to the casino—and

21  implicitly, the land on which the casino was built—must involve those sessions and cannot be

22  gleaned through "traditional sources of legislative history."  Opp. at 9.

23          These circumstances are fundamentally different from those in *Arpaio*, in which the

24  information sought was duplicative of publicly available information that "show[ed] an intent

25  on the part of Arizona legislators to prevent unauthorized aliens from remaining in the state."

26  2016 WL 2587991, at *6.  Here, in contrast, the evidence from *TON I* suggesting such an

27  intent was challenged by the Nation as inadmissible and was not directly considered or ruled

28  upon by the Court.  Remarkably, the Nation nonetheless continues to insist that this discovery

Gibson, Dunn &
Crutcher LLP

1    satisfies the "availability" prong of the qualified privilege test while at the same time

2    claiming that none of that discovery is admissible to prove Director Bergin's case.

3         The Nation's other "availability" arguments are largely red herrings.  The extent to

4    which the Nation asserted the privileges in *TON I* is not relevant to the question whether its

5    assertion of the privilege was proper—what matters is the nature of the information the

6    Nation refused to provide and continues to refuse to provide to Director Bergin.  Opp. at 9.

7    Equally irrelevant is Director Bergin's contention that the Nation committed fraud:  whether

8    Director Bergin believed he had enough evidence to withhold certifications under state law

9    based on the Nation's omissions and misrepresentations does not address the question of

10   whether evidence of the Nation's fraudulent intent is available from some other source.

11        The Nation's remaining arguments in opposition to Director Bergin's discussion of the

12   qualified privilege factors also lack merit.  As discussed above, the "seriousness" factor is not

13   limited to the vindication of *federal* rights, as opposed to important public rights more

14   generally.  And the Nation's response to the "government's role" factor makes no sense—the

15   fact that the Nation is a plaintiff and counter-defendant in a suit directly involving its officials

16   weighs in favor of disclosure, not against it.  *See Favors*, 285 F.R.D. at 219 (finding this

17   factor weighed in favor of disclosure where "the state government's role in the instant

18   litigation is direct, and the motives and considerations behind [certain legislation, to a large

19   degree '[are] the case'") (quoting *Fair & Balanced Map*, 2011 WL 4837508, at *8).

20        Finally, the Nation's appeals to the theoretical possibility of a "chilling effect" ring

21   hollow.  Director Bergin is not seeking to open an inquiry into the reasons *why* the Nation

22   passed two resolutions (six years apart) relating to the Glendale property, nor is he asking for

23   a ruling that would apply to "virtually all business conducted in closed session" as the Nation

24   broadly asserts.  Opp. at 11.  Instead, he seeks to compel deposition testimony about, and

25   disclosure of a handful of documents containing, factual information relating to a specific

26   land purchase and a specific decision of what to build on that land.

27        As discussed above, those topics are not "legislative" in nature as that term is defined

28   in *Fields* and *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003).  But even

Gibson, Dunn &
Crutcher LLP

7

1

2

if they were, the Nation should not be permitted to use the legislative privilege to shield the type of government misconduct that Director Bergin believes occurred here.

3

4

   D.   **The "Ancillary Issues" Should Be Resolved In Director Bergin's Favor.**

   The Nation does not appear to deny that it has the ability to compel the production of documents from the San Lucy District and concedes that it has previously "coordinated the production of documents" from the District.  Opp. at 14-15.  Accordingly, there is no dispute that the San Lucy District documents may be disclosed should the Court agree that no privilege applies or that any applicable privilege has been overcome.

5

6

7

8

9

   As for entry 3, if the Nation contends that it provided legal advice during the session at issue, Director Bergin will not challenge that assertion of attorney-client privilege.  But the Nation did not make that assertion in its privilege log, and did not defend its assertion of the privilege in its opposition or describe the underlying circumstances in any further detail.  Accordingly, this should not serve as a basis to withhold entry 3.

10

11

12

13

14

   Finally, the Nation apparently concedes that the *TON I* discovery order is not binding here, but contends that it should nevertheless bar production of entry 8 because Director Bergin has supposedly "offered no basis to question this Court's decision about the scope of discovery in [*TON I*]."  Opp. at 15.  The Nation misunderstands Director Bergin's challenge, which is not whether the scope of discovery was proper in *TON I*, but whether those same limitations should be applied in *TON II*.  In any event, even under the Nation's own standard, entry 8 is plainly relevant, as it is dated July 13, 2003 (before the first of the Nation's two legislative proposals) and appears to concern matters germane to the litigation (though, again, it is difficult to tell from the Nation's description of the document and its failure to elaborate in its opposition).  Thus, the *TON I* discovery order should pose no bar to its disclosure.

15

16

17

18

19

20

21

22

23

24

III.   **CONCLUSION**

   The Court should order the disclosure of the documents at issue here (with or without *in camera* review) and require the Nation's witnesses to provide testimony on the areas identified by Director Bergin in his motion to compel.

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

2    DATED this 8th day of June, 2016.          GIBSON, DUNN & CRUTCHER LLP

3                                                By    /s/ Matthew A. Hoffman
                                                       Matthew D. McGill
4                                                      Matthew A. Hoffman

5                                                      -and-

6                                                      Patrick Irvine
                                                       Douglas C. Northup
7                                                      Carrie Pixler Ryerson

8                                                      FENNEMORE CRAIG, P.C.

9                                                *Attorneys for Defendant Director Daniel Bergin,
                                                 Arizona Department of Gaming*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP                                           9

1

**CERTIFICATE OF SERVICE**

2

3

I hereby certify that on June 8, 2016, I caused the foregoing document to be served upon the following persons via email to the addresses noted below:

4

Seth P. Waxman
Danielle Spinelli

5

Kelly P. Dunbar
Sonya L. Lebsack

6

Wilmer Cutler Pickering Hale & Dorr LLP
1875 Pennsylvania Ave. NW

7

Washington, DC  2006
Email:  seth.waxman@wilmerhale.com

8

Email:  danielle.spinelli@wilmerhale.com
Email:  kelly.dunbar@wilmerhale.com

9

Email:  sonya.lebsack@wilmerhale.com
*Attorneys for Plaintiff*

10

*The Tohono O'odham Nation*

Jonathan Landis Jantzen
Laura Lynn Berglan
Tohono O'odham Nation
Office of the Attorney General
P. O. Box 830 Sells, AZ  85634
Email:  jonathan.jantzen@tonation-nsn.gov
Email:  laura.berglan@tonation-nsn.gov
*Attorneys for Plaintiff*
*The Tohono O'odham Nation*

11

Paul K. Charlton

12

Karl M. Tilleman
Erin N. Bass

13

Steptoe & Johnson LLP
201 E. Washington Street Suite 1600

14

Phoenix, AZ  84004
Email:  pcharlton@steptoe.com

15

Email:  ktilleman@steptoe.com
Email:  ebass@steptoe.com

16

*Attorneys for Plaintiff*
*The Tohono O'odham Nation*

17

/s/ Andrew G. Pappas

18

An employee of Gibson, Dunn & Crutcher LLP

19

20

21

102129912.7.DOC

22

23

24

25

26

27

28

Gibson, Dunn &

Crutcher LLP