Heidi McNeil Staudenmaier (#010387)
Brett W. Johnson (#021527)
Sara J. Agne (#026950)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: hstaudenmaier@swlaw.com
bwjohnson@swlaw.com
sagne@swlaw.com
Attorneys for Defendant Douglas Ducey, Governor
    of Arizona

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Tohono O'odham Nation,<br><br>    Plaintiff,<br><br>v.<br><br>Douglas Ducey, Governor of Arizona;<br>Mark Brnovich, Arizona Attorney General;<br>and Daniel Bergin, Director, Arizona<br>Department of Gaming, in their official<br>capacities,<br><br>    Defendants. | No. 2:15-cv-01135-DGC<br><br>**NON-PARTY GOVERNOR DUCEY'S MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER**<br><br>**[EXPEDITED TELEPHONIC HEARING REQUESTED]** |

Pursuant to Federal Rules of Civil Procedure 26 and 45, Dismissed Defendant Douglas Ducey, Governor of Arizona (the "Governor"), moves to quash the untimely, burdensome, and prejudicial Subpoena by Plaintiff, the Tohono O'odham Nation ("the Nation"), for a deposition under Fed. R. Civ. P. 30(b)(6) ("Subpoena"), and seeks a protective order, as the information sought in the Subpoena inappropriately requests legal conclusions, and is protected from disclosure by the attorney-client and executive privileges, as well as the work-product protection. A proposed form of protective order is attached. The Governor requests that the deposition, currently set for June 22, 2016, be stayed pending consideration of this Motion. The Governor also seeks an award of fees associated with the Subpoena.

Although not required of non-parties, undersigned counsel certifies that counsel for the Governor has conferred in good faith with Plaintiffs' counsel to resolve this dispute without judicial intervention, but have been unable to come to an agreeable resolution. *See* Fed. R. Civ. P. 26(c)(1); LRCiv. 7.2(j). The Governor has designated two 30(b)(6) representatives on seven of the 15 Subpoena topics, and provided a detailed explanation regarding his objections to the remaining topics, in a compromise to address the Nation's requests. Although the Nation confirmed its acceptance of these designations, counsel for the Nation stated that it does not agree with the Governor's decision not to designate 30(b)(6) representatives for the remaining topics. Copies of these communications are attached as **Exhibit A.**

## MEMORANDUM AND POINTS OF AUTHORITIES

### I. BACKGROUND

On June 22, 2015, the Nation filed a Complaint with this Court, seeking injunctive and declaratory relief against the Governor, the Director of the Arizona Department of Gaming, and the Attorney General (collectively, the "State") to prevent the State from obstructing the formation of the Nation's West Valley casino. (Doc. 1, at 2-3.) The Governor and the Attorney General filed a Joint Motion to Dismiss for lack of jurisdiction and failure to state a claim on July 30, 2015 (Doc. 49), which was granted by this Court on September 17, 2015. (Doc. 82.)

On June 2, 2016, the Nation served a Rule 30(b)(6) deposition Subpoena, attached as **Exhibit B**, on counsel for the Governor. Attachment A of the Subpoena delineates 15 separate topics[1] requiring testimony from designated representative(s) of the Governor's Office for the State's knowledge or understanding of a variety of gaming-related issues spanning more than 20 years and multiple gubernatorial administrations. The Subpoena sets the deposition for June 22, 2016—just **two days** before the discovery deadline in this

---

[1] Although the Subpoena only contains a numbered list up to #13, the Subpoena mis-numbers the list, repeating numbers "11" and "12" twice.

- 2 -

matter. (Doc. 97, at 11.) This short timeframe and extensive array of potential deposition topics have created an unduly burdensome situation for the Governor.

## II. LEGAL STANDARD

Federal courts enjoy broad discretion in overseeing discovery under Fed. R. Civ. P. 26. A court must limit the extent of discovery if it determines that the discovery sought is unreasonably cumulative or can be obtained from another source that is more convenient or less burdensome, or when the party seeking discovery has had ample opportunity to obtain the information by prior discovery in the case. *See* Fed. R. Civ. P. 26(b)(2)(C). In general, a court should balance the need of the party seeking discovery against the burden on the party responding in determining the propriety of a subpoena. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).

These discovery controls are even more important when the discovery is requested from non-parties. *See Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery . . . require a stronger showing of relevance than for simple party discovery.") Although discovery is a valuable right, the Ninth Circuit has held that discovery restrictions can be broader when a nonparty is the target of discovery. *See Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980). Therefore, a court may forbid certain discovery or limit its scope to protect a nonparty from "undue burden or expense." Fed. R. Civ. P. 26(c).

These controls on discovery also apply to subpoenas to nonparties. Under Fed. R. Civ. P. 45(d)(3), a subpoena *must* be quashed if it does not allow reasonable time to comply, requires disclosure of protected or privileged matters, or subjects a person to undue burden. *See also Mattel, Inc. v. Walking Mountain Prod*, 353 F.3d 792, 814 (9th Cir. 2003) (finding that the district court did not abuse its discretion when applying Fed. R. Civ. P. 45 to quash a Rule 30(b)(6) subpoena when the subpoena was overly burdensome and served an improper purpose).

## III. THE SUBPOENA IS SUBJECT TO A MANDATORY MOTION TO QUASH UNDER RULE 45(d)(3).

The Nation's Subpoena must be quashed—(1) it fails to allow a reasonable time to comply; (2) it subjects the Governor to an undue burden; and (3) it requires disclosure of privileged information. *See* Fed. R. Civ. P. 45(d)(3)(i)-(iv). Any one of these factors is sufficient to quash the Subpoena under the Federal Rules; the Nation's Subpoena, however, contains all three flaws. The Governor's Office has identified its specific concerns with each Subpoena topic in **Exhibit C.**[2]

### A.   The Subpoena Demands Disclosure of Privileged Communications.

Based on counsel's current understanding of the Subpoena topics, many of these issues will require testimony on communications and documents that are protected by attorney-client privilege and/or the deliberative process privilege. The Subpoena requests the 30(b)(6) representative from the Governor's Office testify regarding any understanding, goals, or knowledge related to the 1993 or 2003 Compact negotiations, including any drafts; the Office's interpretation of state and federal laws; and the Office's current legal interpretation of any State claims or beliefs in this litigation. These issues implicate privileged communications between the Governor's counsel and Office agents and employees, between the Governor's consulting experts and Office staff, and internal Governor's Office determinations and opinions regarding agency policies—all of which are protected by privilege.

Federal courts are obligated to quash a subpoena that seeks privileged testimony. Fed. R. Civ. P. 45(d)(3)(A)(iii). Therefore, the Nation's Subpoena should be quashed, or at a minimum limited in scope to prevent any disclosure of protected information.

#### 1.   The Subpoena Covers Issues Protected by Attorney-Client Privilege.

The information sought by the Nation is protected by attorney-client privilege, because it concerns communications between the Governor's counsel and multiple

---

[2] Exhibit C was provided to Plaintiff's counsel at 9:57 a.m. on June 16, 2016, in an attempt to clarify and resolve the Governor's objections to the Subpoena. These issues were also generally discussed in the June 9, 2016 meet-and-confer letter to Plaintiffs' counsel on June 9, 2016, in a follow-up telephone conference with counsel on June 13, 2016, and via emails on June 15, 2016.

- 4 -

1  executive branch agency heads. Federal courts have repeatedly agreed that an attorney-client privilege exists between government entities and government attorneys. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011) ("[T]he Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys.")

The U.S. District Court of Arizona has interpreted this privilege to mean that if the government is dealing with its attorneys "as would any private party seeking advice to protect personal interests," and needs assurances of confidentiality so it can have frank discussions with its legal advisers, the privilege applies to those communications. *Arizona Rehabilitation Hosp. Inc. v. Shalala*, 185 F.R.D. 263, 269 (D. Ariz. 1998). The privilege applies if the government entity believed these communications were to be kept confidential and the information was protected from general disclosure. *Id.*

Arizona courts have further broadened the scope of the government attorney-client privilege. A.R.S. § 12-2234(B) states that the attorney-client privilege covers "any communication . . . between an attorney for a . . . government entity . . . and an employee, agent or member of the entity." Arizona applies a functional test to determine whether the government employees personify the entity for purposes of the privilege. *See State ex rel. Thomas v. Schneider*, 212 Ariz. 292, 296, 130 P.3d 991, 995 (Ct. App. 2006). Essentially, if the communication concerns the employee's own conduct within the scope of employment, and the conversation occurs so the attorney can assess or respond to the legal consequences of the conduct, then the communication is considered privileged under the entity's attorney-client privilege. *Id.*

Based on A.R.S. § 12-2234 and the language in Arizona Rule of Professional Conduct ER 1.13(g) (which allows a lawyer to represent both the government entity and individual employees within that entity), the Arizona Court of Appeals determined that the privilege applies to both communications between (1) the government entity and the government attorney, and (2) the entity's employees and the government attorney. *Id*. It is irrelevant that the attorney and the government entity might be considered separate

- 5 -

government agencies. *See Arizona Dep't of Economic Sec. v. O'Neil*, 183 Ariz. 196, 198, 901 P.2d 1226, 1228 (App. 1995) (ruling that the fact DES and the Attorney General are both government agencies does not negate the attorney-client relationship or privilege covering certain communications).

Both the General Counsel for the Governor and outside counsel for the Governor communicated with the Attorney General, the ADG Director, and counsel for the ADG regarding the Subpoena topics. These communications, which the Nation is attempting to discover, were made in the scope of these executive branch agents' employment, and with the explicit purpose of determining how to handle potential and/or pending litigation related to tribal casinos throughout the state. These communications, which fall within several of the Subpoena topics, are therefore protected by this privilege, which may not be pierced here and has not been waived. For example, the Nation repeatedly requests information on the Governor's basis of understanding various state and federal laws, and detailed information about the Compacts and related negotiations (which included discussions of pending civil litigation related to the Compacts). By requesting this information, the Nation is reaching for, but may not grasp, privileged information.

### 2. The Subpoena Covers Issues Protected by the Deliberative Process Privilege.

The deliberative process privilege protects government decision makers' opinions, recommendations, or advice about agency policies. *See Arizona Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 141, 75 P.3d 1088, 1099 (2003) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-54 (1975)). This common-law privilege "rests on the fact that officials will not communicate candidly among themselves if each remark could be subject to discovery. The privilege seeks to enhance the quality of government by promoting open and frank exchanges among government decision-makers." *Arizona Dream Act Coal. v. Brewer*, CV-12-02546-PHX-DGC, 2014 WL 171923, at *1 (D. Ariz. Jan. 15, 2014). These communications are privileged when they are pre-decisional, and are deliberative in nature. *Id.*

Here, the Nation is requesting information that is part of the deliberative process of the Governor's Office. For example, the Nation's Subpoena addresses many of the internal communications regarding deliberations about the Compact negotiations, the objectives or goals of the Compacts and Compact negotiations, any discussions regarding whether the State knew of the veracity of statements made by the Nation during the negotiations, the determinations regarding Proposition 202, and the basis for any public statements made by any of the governors regarding gaming facilities in the Phoenix metropolitan area. This information encompasses documents and conversations developed during the pre-decisional phase of the Governor's decision-making process. During this process, there are often opinions and recommendations made by other members of the executive branch about the various topics under deliberation. Therefore this information falls within the deliberative process privilege.

A court can waive this privilege in limited circumstances that do not apply here: when the need for the privileged information and the desire for accurate fact-finding override any such protections. In this analysis, a court typically considers several factors: (1) the relevance of the information, (2) the availability of other evidence, (3) the government's role in the litigation, and (4) "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Arizona Dream Act Coal.,* 2014 WL 171923, at *1.

Applying this test to the communications at issue in this deposition demonstrates that they do not weigh in favor of overriding the privilege. Although this information may be relevant for the litigation, there is a significant amount of other evidence on these same topics which is available—and generally has already been provided—to the Nation, through the depositions of former government employees and agents, and through the ongoing document productions.

In fact, many of the documents covering these Subpoena topics, including internal communications with the Governor's Office, are already public records available for the

1  Nation's review at the State Archives.[3]  The Governor's Office no longer is a party in this
2  litigation, and any relevant information as to the ADG's role in the Nation's claims would
3  come from discovery sought from ADG, not from the Governor.

4  Finally, any disclosure of internal discussions regarding the Subpoena topics would
5  have a chilling effect on future deliberations within the state executive branch. The
6  executive branch—and especially the Governor's Office—frequently have to make
7  difficult decisions that affect State funding, public safety, and relations with the various
8  tribes located within Arizona. As a result, the executive branch must have the ability to
9  openly discuss options and weigh recommendations without fear these internal
10 communications become public for unnecessary scrutiny. These factors all weigh in favor
11 of preserving the deliberative process privilege for any pre-decisional, internal
12 communications covered by the Subpoena. Therefore, the Nation's request for the
13 disclosure of this privileged information in the 30(b)(6) deposition dictates the Subpoena
14 must be quashed.

### B. The Subpoena is Untimely.

16 The Subpoena fails to provide the Governor's Office with a reasonable amount of
17 time to comply. The Nation served the Subpoena on counsel for the Governor on June 2,
18 2016. This is not a sufficient amount of time for the Governor to designate a person or
19 people most knowledgeable and prepare them to testify at a deposition on numerous
20 topics spanning 20 years of government administration.

21 This short timeline is particularly troubling as the majority of topics covered by the
22 Subpoena are issues occurring between 1992 and 2003—several gubernatorial
23 administrations past. Given the frequent change in gubernatorial staff and employees
24 between administrations, there appear to be no individuals in the current Governor's
25 Office who are sufficiently familiar with this information to serve as the designated

---

[3] The Governor's Office has also reviewed these same documents, previously in the control of the Governor's Office and now housed as public records at the State Archives. All responsive documents from this review of the State Archives documents were produced to the Nation on June 15, 2016.

- 8 -

1 representative for purposes of the deposition. And, even once named, the 30(b)(6) representative would be required to evaluate decades of documentation to adequately prepare for the deposition.

The Nation has been aware of the Subpoena topics since it filed its litigation, having referenced many of these same topics in its Amended Complaint. The Nation could have served this Subpoena at any point during the prior year of litigation, yet it did not subpoena the Governor's Office until just three weeks before the final discovery deadline in the matter.

### C. The Subpoena is Unduly Burdensome.

To determine whether a subpoena is unduly burdensome, a court should weigh "the burden to the subpoenaed party against the value of the information to the serving party." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (granting defendant's motion to quash subpoena to nonparty on relevance, overbreadth, and undue burden grounds). Further, discovery should be even more restricted to protect nonparties "from harassment, inconvenience, or disclosure of confidential documents" or information. *Dart Indus. Co.*, 649 F.2d at 649. The Nation's expansive list of Subpoena topics, many of which were already addressed in prior discovery in this same litigation, fits this very definition of an "unduly burdensome" subpoena.

### *1. The Subpoena Topics are Vague.*

The Subpoena covers 15 separate, broad categories, using expansive and vague language. The Nation has not identified topics with reasonable particularity in the Subpoena, as required by Rule 30(b)(6). For example, many of the terms are not defined, such as "State," "Governor," and "understanding," requiring the Governor's Office to guess at the true scope of the deposition topics.

Additionally, the listed topics include generic references to "the Governor," such as "[t]he basis for the Governor's support of Proposition 202," and "the Governor's understanding of the authority conveyed to the Governor under Arizona Revised Statute § 5-601.02(E)." As is the nature of a political entity like the Governor's office, there have

- 9 -

1  been several different Governors over the course of the time these negotiations took place.
2  So, which Governor's "beliefs" or "understandings" is the Nation looking for?

3  The current Governor's Office cannot speak directly to the "knowledge and
4  understanding" that existed in prior administrations, particularly when no specific
5  Governor is identified in any of the topics. These positions may also have evolved from
6  administration to administration, particularly as both Democratic and Republican
7  Governors have served in the office over the past two decades. Should the designated
8  representative be expected to provide *all* the opinions held by each different
9  administration on each of these different topics?  Even for topics where the Governor's
10 Office can identify the likely gubernatorial administration at issue, neither current
11 Governor Ducey, nor his staff, has personal knowledge of the beliefs or understandings of
12 these former governors. The Nation's failure to designate the Subpoena topics with
13 particularity and to cabin them appropriately creates an overly burdensome Subpoena.

*2.     The Subpoena Topics are Overly Expansive.*

15 A review of the Subpoena topics indicates that the Nation is likely addressing
16 issues which primarily occurred between 1992 and 2003—or several gubernatorial
17 administrations ago. Very few individuals who worked in the Governor's Office during
18 that time period remain at the office, and even fewer (if any) are familiar with the issues
19 raised in the Nation's Subpoena. As a result, the potential 30(b)(6) representative(s)
20 sought to be deposed by the Nation must spend an extensive period of time gathering
21 materials and reviewing documents to be able to provide even basic responses to the
22 Nation's likely questions. This would require the Governor's Office to expend substantial
23 resources, which are only heightened by the condensed time period allowed by the
24 Nation's untimely Subpoena.

25 The burden of reviewing years' worth of material from multiple prior gubernatorial
26 administrations and preparing a witness to adequately address questions with that
27 knowledge vastly outweighs the value of the information to the Nation. The Governor was

1 previously dismissed from this litigation, yet the Nation still seeks to burden the Office
2 with unnecessary costs and expenses.

3      *3.  The Subpoena Topics Request Legal Conclusions.*

4   Several Subpoena topics address testimony related to purely legal conclusions. A
5 deposition conducted under Fed. R. Civ. P. 30(b)(6), however, is designed to address
6 factual testimony. It is inappropriate for a deponent in a 30(b)(6) deposition to testify as to
7 legal conclusions. *See, e.g., 3M Co. v. Kanbar*, C06-01225-JW, 2007 WL 1794936, at *2
8 (N.D. Cal. June 19, 2007); *see also, In re Indep. Serv. Organizations Antitrust Litig.*, 168
9 F.R.D. 651, 654 (D. Kan. 1996) (ruling that a party's attempt to discover legal opinions
10 "through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable. It also
11 implicates serious privilege concerns . . . ")

12   Subpoena Topics #5, 10, 13, and 14 request the designated representative provide
13 legal conclusions regarding the State's actions, decisions, or legal determinations. Further,
14 these topics do not request any factual testimony—simply legal conclusions. The Nation
15 is improperly seeking information from a 30(b)(6) deponent that cannot be provided
16 through this discovery method.

17      *4.  The Subpoena Covers Topics Already Addressed in Discovery.*

18   A further ground exists for quashing the Subpoena on the basis that it seeks
19 information that is duplicative of other discovery already provided to the Nation in this
20 case. The Court must limit discovery if "the discovery sought is unreasonably cumulative
21 or duplicative, or can be obtained from some other source that is more convenient, less
22 burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The information the
23 Nation would receive through this deposition is both unreasonably duplicative, as the
24 information has already been learned through prior depositions, and can be obtained from
25 the documents already produced to the Nation or in the State Archives.

26   Many of the Subpoena topics—specifically, Topics #1-4, 6-9, and 11-12—are
27 better addressed by other nonparties who were present during the 1993 and 2003 Compact
28 negotiations, as opposed to a representative from the current Ducey Administration. The

1  Nation has already deposed one such individual, Ian MacPherson, who served as a
2  consultant to the Governor's office through the execution of the initial 1993 compact.
3  The Nation will depose two other individual nonparties with more knowledge of these
4  issues, Paul Michael Bielecki and Stephen Hart, in the coming week. Mr. Bielecki served
5  in several prior Arizona Governors' administrations, while Mr. Hart was the former ADG
6  Director during the 2003 Compact negotiations, and served as the primary Compact
7  negotiator. Many of the deposition topics can be covered through their testimony.

8  Instead, a 30(b)(6) representative from the current Governor's Office would have
9  to review internal documents to gain an understanding of the Subpoena topics. These
10 same documents have already been provided to the Nation—or will shortly be provided—
11 through the Nation's other discovery requests in this litigation.

12 The Governor's Office is working in conjunction with the ADG to provide
13 documents responsive to the Nation's Requests for Production. These documents, most of
14 which are public records and/or were provided to the Nation as part of *Arizona v. The*
15 *Tohono O'odham Nation* (2:11-CV-00296-DGC), contain dramatically more information
16 relevant to the subpoena topics and the Nation's inquiries than any 30(b)(6) representative
17 of the Governor's Office currently knows.

18 Because these documents were created during the Compact negotiations and
19 written by individuals with actual knowledge of the issues, they provide a much clearer
20 picture of the State's knowledge and understanding of the topics. While producing the
21 documents is still a significant great expense for the Governor's Office, it is certainly less
22 expensive, less burdensome, and more convenient for both the Governor and the Nation to
23 transmit the information through document production rather than a designee from the
24 Governor's Office.

25 The Nation is already receiving the information listed in the deposition Subpoena
26 from two sources: former employees of the Governor's Office present during the actual
27 events at issue, and an ongoing document production of all responsive documentation in
28 the Governor's Office or the State Archives, including any documents previously

produced in the prior litigation. The Nation is not entitled to receive this exact same information from a third source via a 30(b)(6) deposition.

### 5. *The Subpoena Requests Testimony on Topics Outside the Authority of the Governor's Office.*

Subpoena Topic #15 requests testimony on the licensing and regulatory certification for the Nation's West Valley Resort facility. This topic is not relevant or applicable to the Governor's Office. The Arizona Department of Gaming has sole authority over licensing and regulatory certifications for the West Valley Casino. The Governor's Office therefore cannot provide testimony on this topic.

## IV. THE GOVERNOR IS ENTITLED TO RECOUP EXPENSES INCURRED IN PROTECTING HIS INFORMATION.

Pursuant to Fed. R. Civ. P., Rules 26, 37, and 45, the Governor is entitled to its attorneys' fees and costs associated with having to seek relief from the Nation's Subpoena. Federal Rule of Civil Procedure 37(a) applies to an award of expenses, including attorney's fees, in seeking a protective order. Fed. R. Civ. P. 26(c)(3). In addition, Federal Rule of Civil Procedure 45(d)(1) permits the imposition of appropriate sanctions, including attorney's fees, on a party that issues a subpoena without taking reasonable steps to avoid imposing an undue burden or expense on a person subject to a subpoena. A logistical burden and the failure to narrowly tailor requests are indicative of an undue burden under Rule 45. *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012). Here, as discussed above, the Subpoena is overbroad, and therefore, is not narrowly tailored.

## V. CONCLUSION

The Governor respectfully requests that the Court quash the Nation's Subpoena and enter a protective order prohibiting discovery pursuant to the Subpoena. The Governor also requests an award of fees associated with bringing this Motion and any proceedings regarding the Subpoena.

DATED June 16, 2016.

>Respectfully submitted,
>
>SNELL & WILMER L.L.P.
>
>By: */s/ Brett W. Johnson*
>Heidi McNeil Staudenmaier
>Brett W. Johnson
>Sara J. Agne
>One Arizona Center
>400 E. Van Buren, Suite 1900
>Phoenix, Arizona 85004-2202
>Attorneys for Defendant Doug Ducey, Governor of Arizona

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing. All participants in the case are registered CM/ECF users and will be served by the CM/ECF System.

*/s/ Tracy Hobbs*

24241688