**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Tohono O'odham Nation,

          Plaintiff,

v.

Douglas A Ducey, et al.,

          Defendants.

No. CV-15-01135-PHX-DGC

**ORDER**

      Daniel Bergin, Director of the Arizona Department of Gaming, moves to compel the Tohono O'odham Nation to produce certain notes, minutes, and agendas from closed sessions of the Tohono O'odham Council ("TON Council") – which is the legislative body of the Nation's government – and the San Lucy District Council ("SLD Council") – which is the legislative body for one of the Nation's political subdivisions. Doc. 153. In addition, Director Bergin seeks to compel the Nation's witnesses to testify about certain issues that may have been discussed at these closed sessions. *Id.* The motion has been fully briefed (Docs. 156, 158) and neither party has requested oral argument. For the reasons that follow, the Court will grant the motion in part and deny it in part.

**I.**     **Background.**

      In August 2003, Vi-ikam Doag Industries, Inc. ("VDI"), an economic development corporation chartered by the Nation, purchased a plot of unincorporated land within the outer boundaries of Glendale, Arizona (the "Glendale Property"). VDI

subsequently transferred the land to the Nation, which had the land taken into trust by the Department of the Interior in 2010.  The Nation announced plans to conduct casino-style gaming on the property, an announcement that resulted in a protracted legal battle with the State of Arizona and other entities.

The Nation has successfully argued before this Court and the Ninth Circuit that the 2003 gaming compact it entered with the State (the "Compact") does not prohibit gaming on the Glendale Property.  *See Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748 (D. Ariz. 2013), *aff'd*, 818 F.3d 549 (9th Cir. 2016).  The Director, who must issue certifications with respect to certain aspects of gaming in Arizona, has refused to certify casino-style gaming on the Nation's property, claiming that the Nation procured the Compact by fraud.  The Nation brought this action to bar the Director from refusing certifications, and the Director asserted counterclaims alleging that the Nation publicly represented that the Compact would prohibit new casinos in the Phoenix metropolitan area, while secretly planning to acquire property in the western part of that area for the purpose of opening just such a casino.

The Director seeks to compel discovery of certain documents related to closed sessions of the TON Council and the SLD Council that occurred around the time the Compact was finalized.  The documents are:

(1)  Typed minutes, authored by the SLD Council Secretary on June 18, 2002, regarding "Closed Session on West Valley Property";

(2)  Handwritten notes, authored by a member of the Nation's Commerce Committee on August 29, 2002, regarding "TON legislative council session addressing the San Lucy District Land Proposal";

(3)  Typed agenda and handwritten notes, authored by the SLD Council Secretary on December 29, 2002, regarding "Closed Council Session on the West Valley Project";

(4)  Typed minutes, authored by the SLD Council Secretary on February 27, 2003, regarding "Closed Council Session VDI Report";

(5)  Handwritten notes, authored by an unknown individual on February 27, 2003, regarding SLD "Closed Council Session on Phoenix Property";

- 2 -

(6)     Typed agenda, minutes, and handwritten notes, authored by the SLD Council Secretary on March 4, 2003, regarding "Closed Council Session – Report from VDI to Council";

(7)     Handwritten notes, authored by an unknown individual on March 13, 2003, regarding "Report from VDI to [SLD] Closed Council Session";

(8)     Handwritten notes, authored by an unknown individual on July 13, 2003, regarding "Special [SLD] Council Meeting re Chairwoman Saunders' Response to District's Position".

Doc. 153 at 4-5.[1]

In addition, the Director seeks an order barring the Nation's witnesses from invoking the legislative privilege to avoid answering certain questions that may implicate discussions held in a closed legislative session. *Id.* at 2. Specifically, the Director seeks to ask the Nation's witnesses about:

- The location(s) where the Nation intended to build a fourth casino before Proposition 202;

- The identities of those involved in the decision to purchase the Glendale property;

- The dates on which witnesses first learned of the plan to purchase the Glendale property;

- The Nation's intentions for the Glendale property before and after it was purchased;

- The dates on which witnesses first learned of the plan to conduct Class III gaming on the Glendale property; and

- The reason the Nation kept its search for and purchase of land secret from the State.

*Id.*

///

_____

[1] The entries on this list are referred to by number throughout the order.  For example, the first entry is referred to as Entry 1.

1    II.    **Legal Standard.**

2         "On a motion to compel, the party seeking to compel discovery has the initial

3    burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)."

4    *Miller v. York Risk Servs. Grp.*, No. 2:13-CV-1419-JWS, 2015 WL 3490031, at *2 (D.

5    Ariz. June 3, 2015).   "The party asserting an evidentiary privilege has the burden to

6    demonstrate that the privilege applies to the information in question."  *Tornay v. United*

7    *States*, 840 F.2d 1424, 1426 (9th Cir. 1988); *see also Blankenship v. Hearst Corp.*, 519

8    F.2d 418, 429 (9th Cir. 1975).  Whether material is privileged is generally determined as

9    a matter of federal common law, with exceptions not applicable here.  Fed. R. Evid. 501.

10   III.   **Analysis.**

11        A.    **Relevance.**

12        The Director's counterclaims and affirmative defenses allege that the Nation

13   engaged in fraud during negotiation of the Compact by representing that it had no plans

14   to engage in casino-style gaming in the Phoenix area even as it was secretly making plans

15   to purchase property on which to conduct such gaming.  Doc. 96 at 15-16, 32-35.  The

16   documents and testimony the Director seeks to discover would shed light on the Nation's

17   plans at the time of the Compact negotiations.  The documents were created during, or

18   shortly after, the negotiations, and appear to relate to the project that culminated in VDI's

19   purchase of the Glendale Property – Entries 1, 2, 3, and 5 refer to the West Valley

20   Property, the San Lucy District Land Proposal, the West Valley Project, and the Phoenix

21   Property respectively, while Entries 4, 6, and 7 refer specifically to VDI.[2]  The testimony

22   the Director seeks would provide insight into why the Nation purchased the Glendale

23   Property and when it developed plans to conduct casino-style gaming there.  The

24   documents and testimony the Director seeks are relevant to his claims and defenses.

---

26        [2] Entry 8 is an exception.  It refers to the "Special Council Meeting re
27   Chairwoman Saunders' Response to District's Position."  The Director argues that this
     entry "appears to refer to the San Lucy District's position on the Phoenix land acquisition
28   and whether to build a casino on that land."  Doc. 153 at 13.  The entry description is
     unclear.  As a result, the Court will require the Nation to provide a copy of this document
     or documents for *in camera* review.

B.      **Legislative Privilege.**

The Nation bears the burden of showing that the requested evidence is privileged. *See Tornay*, 840 F.2d at 1426.  The Nation asserts that the evidence is protected by the legislative privilege because it relates to closed sessions of the TON Council and the SLD Council.  Doc. 156.

1.      **Does the Legislative Privilege Apply to Legislators Representing Indian Tribes or Tribal Subdivisions?**

The Speech and Debate Clause of the United States Constitution provides that "for any Speech or Debate in either House[, members of Congress] shall not be questioned in any other Place."  U.S. Const., art. I, § 6, cl. 1.  The Clause establishes a privilege that protects members of Congress from being compelled to testify or produce evidence regarding their legislative activities.  *See Gravel v. United States*, 408 U.S. 606, 616 (1972); *United States v. Rayburn House Office Bldg., Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007).  From this privilege, courts have derived the doctrine of federal legislative immunity, which shields members of Congress from civil or criminal liability for their legislative acts.  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 507 (1975).  Courts have recognized analogous protections for state legislators under federal common law.  *See Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) (recognizing state legislative immunity); *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (recognizing state legislative privilege against "compulsory evidentiary process").  Thus, state legislators, like members of Congress, enjoy protection from criminal, civil, or evidentiary process that interferes with their "legitimate legislative activity."  *See, e.g., Tenney*, 341 U.S. at 376.

Although there does not appear to be any case law addressing the question, the Court concludes that the legislative privilege also applies to tribal legislative bodies.  As explained, the legislative privilege is a corollary to legislative immunity, and courts have recognized that tribal legislators are protected by such immunity.  *See Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985) ("individual members of the Tribal

Council . . . enjoy absolute legislative immunity . . . for official actions taken when acting in a legislative capacity"); *Grand Canyon Skywalk Dev., LLC v. Hualapai Indian Tribe of Ariz.*, 966 F. Supp. 2d 876, 885-86 (D. Ariz. 2013) ("to the extent the complaint names Tribal Council members for their role in passing the takings ordinance and resolution, they have legislative immunity").   Moreover, the policy concerns animating the legislative privilege – including the need to protect the integrity of the legislative process, to safeguard legislators' independence, and to exercise comity with respect to nonfederal sovereigns (*Eastland*, 421 U.S. at 502) – apply with equal force whether the legislator represents a state or a tribe.  *Cf. Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2041 (2014) (Sotomayor, J., concurring) (respect for tribal sovereignty requires according tribes the same immunities as states).

The Court further concludes that at least some form of the legislative privilege applies to legislators representing tribal subdivisions.  Because tribal subdivisions are not sovereign entities, the rationale for extending the legislative privilege to them is weaker than the rationale for extending it to tribal legislators.  But local governments are not sovereign either, and courts nonetheless have held that "[l]ocal legislators are entitled to a legislative privilege."  *Joseph's House & Shelter, Inc. v. City of Troy, N.Y.*, 641 F. Supp. 2d 154, 158 (N.D.N.Y. 2009); s*ee Orange v. Cty. of Suffolk*, 855 F. Supp. 620, 623 (E.D.N.Y. 1994) (county legislator was entitled to legislative privilege); *cf. Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (local legislators are entitled to absolute immunity). Allowing tribal subdivision legislators to invoke the legislative privilege also serves comity interests by preventing federal courts from inquiring unnecessarily into the legislative activities of governmental units within tribes.  And it protects the integrity of the legislative process and safeguards legislative independence.  Because application of the legislative privilege to tribal subdivisions serves the same purposes as application of the privilege to local non-tribal governments, the Court concludes that the SLD Council may invoke the privilege in this case.

/ / /

1

## 2.      Are the Documents Protected by Legislative Privilege?

The legislative privilege protects a legislator's communications that "bear on potential legislation" – communications undertaken "in connection with or in aid of legislative acts." *Puente Arizona v. Arpaio*, No. CV-14-01356-PHX-DGC, 2016 WL 2587991, at *5 (D. Ariz. May 5, 2016) (citations and internal formatting omitted). But a communication is not protected by the legislative privilege simply because a legislator made or received it. The privilege applies only if the communication pertains to legislation, as opposed to executive or administrative action. *Cf. Gravel*, 408 U.S. at 625 ("Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies . . . but such conduct, though generally done, is not protected legislative activity."); *Kaahumanu v. Cty. of Maui*, 315 F.3d 1215, 1224 (9th Cir. 2003) (for purposes of legislative immunity, "not all governmental acts by a local legislature are necessarily legislative in nature"). To determine whether an action is legislative, the Court considers four factors: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu*, 315 F.3d at 1220 (citations and internal quotation marks omitted).

In addressing these factors, the Court notes that seven of the eight documents at issue arise from proceedings of the SLD Council (Entries 1 and 3-8). Despite this fact, virtually all of the Nation's arguments focus on the TON Council – its purposes, constitutional responsibilities, and legislation. To determine whether the legislative privilege applies to the SLD Council documents, however, the Court must focus on the SLD Council and its proceedings, not those of the TON Council. The Court therefore will address the relevant factors with respect to the two councils separately.

### a.   SLD Council.

*Factor 1: Whether the act involves ad hoc decisionmaking, or the formulation of policy*.  It appears that the relevant closed sessions of the SLD Council concerned ad hoc decision making rather than legislative action.  "Ad hoc" describes actions taken for a particular purpose as opposed to those taken for the general public good.  *See* Black's Law Dictionary at 46 (9th ed.).  The SLD Council sessions focused on the development and approval of a plan, referred to as the "West Valley Project," pursuant to which VDI would purchase unincorporated land west of Phoenix and transfer it to the Nation, the Nation would petition to have the land taken into trust, and the Nation would then build and operate a casino on the land.  The SLD Council sessions concerned a particular real estate and development project.  They were "based on the circumstances of the particular case," "did not effectuate policy or create a binding rule of conduct," and "affected only . . . a single parcel of land."  *Kaahumanu*, 315 F.3d at 1220.  They were ad hoc.

*Factor 2: Whether the act applies to a few individuals, or to the public at large*.  The SLD Council's actions were focused on a single entity – VDI – and its efforts to purchase a single parcel of land for purposes of developing a casino.  The West Valley Project may have been intended to benefit the Nation financially, but the immediate concern of the SLD Council was to direct the conduct of a single private entity.

*Factor 3: Whether the act is formally legislative in character*.  The actions of the SLD Council with respect to the West Valley Project were not legislative in character.  The Nation does not identify a single piece of legislation the SLD Council considered or passed in connection with the project.  The Nation does mention resolutions passed in 2003 and 2009, but these were passed by the TON Council, not the SLD Council.

*Factor 4: Whether the action bears all the hallmarks of traditional legislation*.  The actions of the SLD Council related to these documents bear none of the hallmarks of traditional legislation.  All that is revealed is that the SLD Council discussed VDI and the West Valley Project in closed session.  The Nation identifies no legislation that was passed or considered by the Council, and no other hallmarks of legislative activity.

1    Considering these factors, the Court concludes that the Nation has not shown that

2    the relevant actions of the SLD Council were legislative in nature.   As a result, the

3    legislative privilege does not protect the documents described in Entries 1 or 3-8 above.

4              **b.     TON Council.**

5    Only Entry 2 relates to the TON Council.   It consists of handwritten notes,

6    authored by a member of the Nation's Commerce Committee on August 29, 2002,

7    regarding "TON legislative council session addressing the San Lucy District Land

8    Proposal."   Doc. 153 at 4.   The Nation argues that this legislative session was related to

9    Resolution 375, enacted by the TON Council in 2003 to secure financing for "gaming

10   expansion opportunities," and Resolution 49, enacted by the Council in 2009 to request

11   that the Department of the Interior take the Glendale Property into trust.   *See* Resolution

12   No. 03-375 (Aug. 18, 2003), http://tolc-nsn.org/docs/Actions03/03375.pdf;   Resolution

13   No. 09-049 (Jan. 27, 2009), http://tolc-nsn.org/docs/Actions09/09049.pdf.

14   For the reasons discussed above, the first two *Kaahumanu* factors suggest that

15   Entry 2 is not protected by the legislative privilege because it relates to a project that was

16   more ad hoc than general and focused on a single entity and property.   The other two

17   *Kaahumanu* factors, however, may favor application of the legislative privilege.   The

18   2003 and 2009 resolutions were formally legislative in character and bear hallmarks of

19   traditional legislation, and it may be that Entry 2 bears on these resolutions.   The Court

20   concludes that it must review these notes *in camera* to determine whether they are in fact

21   entitled to protection under the legislative privilege.

22   If the Court determines that Entry 2 is protected by the legislative privilege, it will

23   not be discoverable if the privilege is absolute, but may be discoverable if the privilege is

24   qualified.   The Court concludes that the legislative privilege, as applied to the TON

25   Council, is qualified.   The Nation cites several cases for the proposition that legislative

26   immunity of non-federal legislators is absolute except in cases that seek to vindicate

27   federal law.   Doc. 156 at 9-10.   In fact, the Nation's cases hold only that an interest in

28   vindicating federal law is sufficient to render the legislative privilege qualified, without

passing on whether such an interest is necessary for that purpose.  *See United States v. Gillock*, 445 U.S. 360, 373 (1980) ("although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake . . . comity yields"); *In re Hubbard*, 803 F.3d 1298, 1313 (11th Cir. 2015) ("Because AEA has not presented a cognizable First Amendment claim, there is no important federal interest at stake in this case to justify intruding upon the lawmakers' legislative privileges.") (citations and quotation marks omitted; alterations incorporated).

*Bethune-Hill v. Virginia State Board of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015), the Nation's principal case, is not to the contrary.  The court explained that whether the legislative privilege is absolute or qualified depends on "the nature of the claim and the defendant."  *Id.* at 335.  The court explained that legislators enjoy absolute immunity in civil cases, and that absolute legislative privilege is applied in these cases to effectuate the immunity.  *Id.* at 334.  But where the legislator is not named as a defendant (and thus faces no threat of personal liability), "there is little to no threat to the 'public good' of legislative independence" and "[t]he only interest advanced by the legislative privilege . . . is the legislator's interest in being free from the distraction of compulsory process."  *Id.* at 335.  Legislative immunity is appropriately qualified in these cases, at least where a party seeks evidence that is relevant to the "adjudication of public rights guaranteed by federal statutory law and the Constitution."  *Id.* at 337.  The court had no occasion to consider whether other interests might also render the privilege qualified.

Other cases suggest that the legislative privilege is qualified in cases seeking to vindicate the public interest, whether or not that interest is one specifically protected by federal law.  *See In re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987) ("*Gillock* instructs us that any such privilege must be qualified, not absolute, and must therefore depend on a balancing of the legitimate interests on both sides."); *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011) ("Under the federal common law, legislative privilege is qualified, not absolute, and may be overcome by a showing of need."); *Marylanders for Fair*

1    *Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992) (Murnaghan &

2    Motz, JJ., concurring) (legislative privilege does not "prohibit judicial inquiry into

3    legislative motive where the challenged legislative action is alleged to have violated an

4    overriding, free-standing public policy"); *Kay v. City of Rancho Palos Verdes*, No. CV

5    02-03922 MMM RZ, 2003 WL 25294710, at *14 (C.D. Cal. Oct. 10, 2003) ("cases

6    applying a qualified privilege represent the better, and controlling, legal rule").

7         The Court finds these cases persuasive.  The legislative privilege as applied to

8    states and tribes is a common law creation founded upon the need to protect the integrity

9    of the legislative process, safeguard legislators' independence, and exercise comity with

10   respect to nonfederal sovereigns.  *Eastland*, 421 U.S. at 502.  It is not a Constitutional

11   imperative like federal legislative immunity, and courts generally have found that it

12   should surrender when opposed by significant countervailing interests.  Thus, if the Court

13   concludes that Entry 2 is subject to the legislative privilege, it will also consider whether

14   the Entry 2 documents should be produced under the qualified-privilege factors set forth

15   in *Arizona v. Arpaio*, No. CV-14-01356-PHX-DGC, 2016 WL 2587991, at *5 (D. Ariz.

16   May 5, 2016) (the relevance of the evidence sought to be protected, the availability of

17   other evidence, the seriousness of the litigation and the issues involved, the role of

18   government in the litigation, and the purposes of the privilege).

19                    **3.    Is the Contested Testimony Protected by Legislative Privilege?**

20        The Director argues that the Nation's witnesses should not be allowed to invoke

21   the legislative privilege to avoid answering certain questions about the West Valley

22   Project.  By and large, the Director intends to ask simple factual questions: when plans

23   were made to purchase the Glendale property, who was involved in the plans, why the

24   Nation sought to keep its purchase secret, and when plans were made to conduct casino-

25   style gaming on the Glendale property.  The fact that the Director's proposed questions

26   focus primarily on factual matters does not resolve the issue.  *See Kay*, 2003 WL

27   25294710, at *11 ("Requiring testimony about communications that reflect objective

28   facts related to legislation subjects legislators to the same burden and inconvenience as

- 11 -

requiring them to testify about subjective motivations.").

Because the Director has shown no legislative privilege attached to closed sessions of the SLD Council, the Court concludes that the legislative privilege cannot be invoked with respect to those sessions.  The issue is not as clear with respect to the TON Council.  As noted above, the Nation has identified resolutions passed by the TON Council in 2003 and 2009 related to the West Valley Project.  Because some of the TON Council's work related to the project appears to have been legislative in nature, the Court cannot conclude that the privilege does not apply to entire categories of questions.  Nor can it conclude as a general matter that the qualified privilege is overcome.  These issues must be addressed on a question-by-question basis, something the parties do not attempt to do in their briefing.

Thus, with respect to deposition questioning, the Court concludes that the Nation has failed to show any legislative privilege applicable to closed sessions of the SLD Council, and concludes that the Nation's lawyers cannot invoke the privilege on questions related to SLD Council sessions.  The Court declines to enter such a ruling with respect to sessions of the TON Council.

### C.    Deliberative Process and Attorney-Client Privileges.

In his motion to dismiss, the Director argues that the deliberative process privilege does not apply because the Nation has failed to establish that any of the communications at issue were pre-decisional and deliberative.  Doc. 153 at 6-7, 9.  The Nation, which has the burden of establishing privileges in this case, does not respond.  The Nation focuses all of its attention on the legislative privilege.  The Nation thus fails to carry its burden of showing that the deliberative process privilege applies, and the Court will not permit withholding of the documents on the basis of this privilege.[3]

_____

[3] The Nation makes two passing references to the deliberative process privilege in its response to Defendant's motion.  The first mentions the privilege in addressing the factors to be considered when deciding whether the legislative privilege, if qualified, has been overcome.  Doc. 156 at 11 n.2.  The second mentions the privilege only in discussing the requirements for the legislative privilege.  *Id.* at 16 & n.4.  Nowhere does the Nation show that the documents and testimony at issue are protected by the deliberative process privilege.

The San Lucy District's privilege log also asserts the attorney-client privilege with respect to one document (Doc. 153-2 at 2), but the Nation makes no attempt to establish this privilege in response to the motion to compel.  The Nation instead asserts that the resolution of that issue will be moot if the Court finds that an absolute legislative privilege applies.  Doc. 153 at 19.  This response is not sufficient.  The Director seeks to compel production of this document, has shown its relevancy, and the Nation bears the burden of showing that the attorney-client privilege applies.  The Nation has not done so.  The Court therefore will not permit the withholding of any of the documents at issue on the basis of the attorney-client privilege.[4]

## D.    Ancillary Issues.

The parties discuss two ancillary issues in their briefs.  The first is whether the Nation can compel the San Lucy District to produce documents in its possession.  The parties agree that this issue is moot in light of the District's decision to cooperate in document production.  *See id.* (this is "a nonissue"); *see* Doc. 158 at 9 (in light of District's decision to cooperate, there  is "no dispute").  The second issue concerns Entry 8.  The Nation notes that the San Lucy District withheld this document as nonresponsive to the Court's December 16, 2011 order in one of the prior cases.  The Nation concedes that this order is not binding here, but argues that the Court should apply the same limit on discovery that it previously applied.   The Court will consider this issue when it examines Entry 8 *in camera*.  *See supra* n.2.

**IT IS ORDERED:**

1.    The motion to compel (Doc. 153) is **granted** with respect to Entries 1 and 3-7, and deposition objections based on a legislative privilege for the SLD Council.  The Nation shall produce the documents in Entries 1 and 3-7 to the Director within five days of this order.

---

[4] The Nation also asserts in passing that many other communications at issue are also protected by the attorney-client privilege, but makes no effort to show why. Doc. 156 at 16 n.4.

1    2.     Within three days of this order, the Nation shall produce to the Court, for *in*
2           *camera* inspection, the documents described in Entries 2 and 8.  Doc. 153
3           at 4.
4    Dated this 21st day of June, 2016.
5
6
7
8    _____
9                        David G. Campbell
                    United States District Judge
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28