Laura Berglan, Acting Attorney General (022120)
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, Arizona 85634
(520) 383-3410
laura.berglan@tonation-nsn.gov

Danielle Spinelli (*Pro hac vice*)
Kelly P. Dunbar (*Pro hac vice*)
Sonya L. Lebsack (*Pro hac vice*)
Kevin M. Lamb (*Pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000
danielle.spinelli@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
kevin.lamb@wilmerhale.com

*Counsel for Plaintiff Tohono O'odham Nation*

COUNSEL CONTINUED ON FOLLOWING PAGE

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| THE TOHONO O'ODHAM NATION,<br><br>      Plaintiff,<br> v.<br><br>DOUGLAS DUCEY, Governor of Arizona; MARK BRNOVICH, Arizona Attorney General; and DANIEL BERGIN, Director, Arizona Department of Gaming, in their official capacities,<br><br>      Defendants. | Case No. 2:15-cv-01135-PHX-DGC<br><br>**THE TOHONO O'ODHAM NATION'S MEMORANDUM REGARDING CONSULTING EXPERTS** |

Paul K. Charlton (012449)
Karl M. Tilleman (013435)
Erin N. Bass (030104)
STEPTOE & JOHNSON LLP
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004
(602) 257-5200
pcharlton@steptoe.com
ktilleman@steptoe.com
ebass@steptoe.com

Jennifer B. Bonneville (*Pro hac vice*)
STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 700
Los Angeles, California 90071
(213) 439-9400
jbonnevi@steptoe.com

*Counsel for Plaintiff Tohono O'odham Nation*

On June 29, 2016, the Court directed the parties to submit memoranda addressing whether the Governor's Office may withhold the identity of a "consulting expert" from its privilege log under a consultant privilege, the attorney-client privilege, or the attorney work product doctrine.  Doc. 198.  For the reasons stated below, there is no legal basis for shielding the identity of the "consulting expert" who appears to have drafted the letters that gave rise to this litigation.

## BACKGROUND

On February 2, 2015, Director Bergin wrote the Nation, expressing ADG's concern that the West Valley Resort was "not authorized" because, among other things, there was a pending appeal of this Court's prior decision granting summary judgment to the Nation on the State's breach-of-Compact claims, and Congress was considering legislation that, if enacted, would bar the project.  Compl. Exh. C (Doc. 1-4).  The Nation, through its counsel Seth Waxman, responded on February 13, 2015, explaining why ADG's concerns were legally meritless and why ADG was required to carry out certifications and approvals for the West Valley Resort.  Compl. Exh. D (Doc. 1-4).

On February 17—four days after receiving Mr. Waxman's letter—Director Bergin emailed Victor Riches, Director Bergin's "supervisor" in the Governor's Office.  Exh. A (Bergin Dep. Tr. 7:2-5; ADG0000284-286).  In that email, Director Bergin explained that, after consulting with an "assigned … representative" from the Attorney General's Office, "we do not disagree with the legal principles set out in the responsive correspondence"—*i.e.*, Mr. Waxman's letter.  *Id.* (ADG0000285).  Director Bergin stated that "ADG would have no choice but to proceed unless the proposed [legislation] passes or the Federal Court issues an injunction (or other court order) enjoining the construction and operation of the casino."  *Id.*

Two days later, on February 19, the Assistant Attorney General assigned to ADG wrote to the Nation that ADG would "proceed in the normal course of its business with the various regulatory requirements imposed by IGRA and the Compact, including those concerning TON's Glendale casino, unless applicable laws change or a court orders otherwise."  Compl. Exh. E (Doc. 1-4).  To that end, ADG asked that the Nation submit a

1    request for a "Compact Section 4(a) letter of compliance" sufficiently before the planned
2    opening of the West Valley Resort so that ADG would have enough time to conduct the
3    required inspections. *Id.*
4        ADG abruptly changed its position with respect to the West Valley Resort two
5    months later. On April 10, 2015, Director Bergin sent the Nation letters from Governor
6    Ducey and from the Attorney General's Office in support of ADG's new position that it
7    would refuse to issue certifications or approvals in connection with the West Valley Resort.
8    Compl. Ex. F (Doc. 1-5). Director Bergin explained that, "[b]ased upon" the Governor's
9    letter and advice from the Attorney General, "ADG lacks [the] statutory authority to approve
10   TON's Glendale casino." The Governor's letter, dated April 8, 2015, stated that it is "the
11   State of Arizona's position … that Tohono O'odham's pursuit" of a casino "is the product of
12   fraud, fraudulent concealment, and misrepresentation." Compl. Exh. F (Doc. 1-5).
13       Obviously, something prompted this about-face in ADG's position between
14   February 19 and April 10. The privilege log produced by the Governor's Office (Exh. E)
15   suggests that this shift was driven by outside, and perhaps improper, influences. Entries 1
16   and 4 on the log suggest that, in early April, an unidentified "consulting expert" "provid[ed]
17   draft letters from the Governor to ADG, and from ADG to Chairman Ned Norris, regarding
18   the Tohono O'odham Glendale Casino":

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | TON_GOVDAD000001-3 | Undated | Unlabeled | Unlabeled | Work product and consulting expert advice to the Governor's Office regarding draft letters from the Gaming Director to Chairman Ned Norris, and from Governor to Chairman Norris, regarding the Tohono O'odham Glendale Casino | Attorney-Client Privilege; Attorney Work Product; Communications with Consulting Expert [Fed. R. Civ. P. 26(b)(3)(A), 26(b)(4)] |
| 4 | TON_GOVDAD000033-42 | 4/4/2015 | Consulting Expert | Michael Liburdi [General Counsel, Arizona Governor's Office] | Email chain to Michael Liburdi from a Consulting Expert to the Governor's Office providing draft letters from the Governor to ADG, and from ADG to Chairman Ned Norris, regarding the Tohono O'odham Glendale Casino; and also attaching TON_GOVDAD000044-50 | Attorney-Client Privilege; Attorney Work Product; Communications with Consulting Expert [Fed. R. Civ. P. 26(b)(3)(A), 26(b)(4)] |

2

Moreover, similarities in the formatting of the draft letters produced by the Governor's Office during discovery suggest that the unidentified consulting expert may have also drafted the letter from the Attorney General's Office to ADG.  *See* Exh. B.

The Nation asked the Governor's Office to identify the consulting expert so that, among other things, the Nation could assess the assertions of privilege, but the Governor's Office refused to disclose the expert's identity, insisting that the Nation has not shown "exceptional circumstances" under Rule 26(b)(4).  Exh. C.

**ARGUMENT**

**I.    THE NATION IS ENTITLED TO LEARN THE IDENTITY OF THE EXPERT**

The Governor's Office should be required to disclose the identity of the expert for three reasons.  *First*, the Governor's Office must identify the expert so that the Nation may properly "assess the claim[s]" of consultant and/or attorney-client privilege and attorney work product protection.  Fed. R. Civ. P. 26(b)(5)(A)(ii); *see, e.g.*, *Mitchell v. City of Flagstaff*, 2012 WL 4052482, at *2 (D. Ariz. Sept. 14, 2012) ("Without at least knowing who sent and who received each e-mail, we cannot meaningfully address the question of whether e-mails 'regarding the subject incident' were made in anticipation of litigation."); *Estate of Elkins v. California Highway Patrol*, 2015 WL 6707597, at *3 (E.D. Cal. Nov. 3, 2015) (privilege log should include, among other things, "the identity … of the author and the identity … of all … recipients").

*Second*, the expert's identity is also relevant because, in response to an interrogatory, Director Bergin stated that "he and his attorney, Roger Banan, drafted" his April 10 letter to the Nation.  Exh. D (Bergin's Supp'l Resp. & Obj. to the Nation's Non-Uniform Interrog. 24 (June 16, 2016)).  The privilege log calls that statement into question.

*Third*, the expert's identity may be of substantial relevance to the Nation's claim that Director Bergin has acted in bad faith and with unclean hands regarding the West Valley Resort—if, for example, disclosure demonstrates that Director Bergin took official regulatory action in response to political pressure or at the behest of tribes with competing gaming interests.  TON Answer, 6th Aff. Defense (Doc. 130).  That ADG was, at the time,

3

communicating with the Nation's tribal competitors under a "common interest" agreement adds to the Nation's concerns.

## II.   THERE IS NO VALID BASIS TO SHIELD THE IDENTITY OF THE EXPERT

Governor Ducey seeks to shield the identity of the "consulting expert" from disclosure on several grounds.  None is persuasive.

### A.   Rule 26(b)(4) Does Not Protect The Expert's Identity

Federal Rule of Civil Procedure 26(b)(4)(D) provides that, "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  That rule does not shield the identity of the consulting expert here for at least two reasons.

*First*, the Governor's Office has not established that the purported consulting expert was consulted "in anticipation of litigation or to prepare for trial."  The communications at issue occurred in April 2015, not only well before this case began, but also after ADG had informed the Nation that it would carry out its duties under the Compact.  *See* Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2029 (3d ed.) ("[E]xperts who were actors or viewers of the occurrences that gave rise to suit … [are] not included within Rule 26(b)(4) at all and facts and opinions they have may be freely discoverable as with any ordinary witness[.]").

*Second*, Rule 26(b)(4)(D) applies only to "facts known or opinions held by an expert." By its terms, it does not apply to the identity of a consulting expert.  Although some courts have read Rule 26(b)(4)(D) more broadly, the Ninth Circuit has held that the rule means what it says.[1]  In *Ibrahim v. DHS*, 669 F.3d 983 (9th Cir. 2012), the plaintiff "argue[d]," as the Governor's Office does here, that "the identity of non-testifying experts is not

---

[1] *Ager v. Stormont*, 622 F.2d 496 (10th Cir. 1980), is the lead case for the contrary view that Rule 26(b) protects the identity of non-testifying consulting experts, barring exceptional circumstances.  One court, comprehensively reviewing the case law, found that a majority of courts have rejected the *Ager* rule, though it acknowledged a deep divide.  *In re Welding Fume Products Liab. Litig.*, 534 F. Supp. 2d 761, 768 n.8 (N.D. Ohio 2008).  As explained here, the Ninth Circuit declined to follow *Ager* in *Ibrahim*.

4

discoverable." Specifically, plaintiff argued that requiring non-testifying experts to submit to a background check to obtain access to certain sensitive information would reveal the identity of the expert in violation of Rule 26. Citing the Tenth Circuit's decision in *Ager*, plaintiff argued that "[t]he identity of non-testifying experts is not discoverable absent exceptional circumstances or as provided in Rule 35(b)." Appellant's Br., *Ibrahim v. DHS*, 2010 WL 5079238, at *51 (9th Cir.). Plaintiff insisted that "[d]ecisions about 'which people to use in confidence for which purposes in preparing a case for trial [are] as central to lawyering strategy as one can get.'" *Id.* at *52.

The Ninth Circuit rejected that line of argument for "three reasons":

> First, Rule 26 shields only against disclosure through interrogatories and depositions; it does not shield against disclosure when information is required pursuant to a background check mandated by statute. Second, [plaintiff] has not shown how a background check will reveal "facts known or opinions held" by her experts. Finally, the rule does not prevent disclosure of the identity of a nontestifying expert, but only "facts known or opinions held" by such an expert.

669 F.3d at 999. The third rationale—that "the rule does not prevent disclosure of the identity of a nontestifying expert"—is dispositive here. Courts have read *Ibrahim* to stand for that proposition. *See Wreal LLC v. Amazon.com, Inc.*, 2014 WL 7273852, at *4 (S.D. Fla. Dec. 19, 2014) (citing *Ibrahim* for the view that "Rule 26(b)(3)(B) does not prevent disclosure of the *identity* of a non-testifying expert—it prohibits only the disclosure of 'mental impressions, conclusions, opinions, or legal theories'").[2]

B.     Any Exception For "Informal" Consultation Is Inapplicable

At the telephonic hearing, counsel for the Governor's Office was not able to make "a representation" whether the expert was "retained or specially employed" within the meaning of Rule 26(b). June 29, 2016 Tr. 20:5-14. If the Governor's Office takes the position for the

---

[2] The other two rationales in *Ibrahim* are also applicable. The Nation does not seek the identity of the expert "through interrogatories and depositions," but rather as a basic requirement of a privilege log. And the Governor's Office has not shown that disclosing the identity of the expert will reveal "facts known or opinions held" by the expert.

5

first time in its memorandum that the consulting expert was not "retained or specially employed," but only informally consulted, that position should be rejected for three reasons.

*First*, the Governor's Office has waived this argument. The log lists Rule 26(b)(4) and identifies discussions with a "consulting expert." It makes no mention of "informal consultation." *Ager*, 622 F.2d at 502 ("The determination of the status of the expert rests, in the first instance, with the party resisting discovery. Should the expert be considered informally consulted, that categorization should be provided in response [to discovery]."). And in meeting and conferring, the Governor's Office argued that the expert was a "consulting expert" and that the Nation had not shown "exceptional circumstances," a standard relevant under Rule 26(b)(4). Exh. C. The Governor's Office should not now be able to change the facts and argue that the expert was an informal consultant.

*Second*, based on the log and the timing of the communications, there does not appear to be any basis for classifying the expert as an "informal consultant." The expert appears to have drafted, or been instrumental in drafting, the Governor's and ADG's letters—and perhaps the letter from the Attorney General's Office as well. *See supra* p. 2-3. That suggests the expert played a substantial and substantive role and, at a minimum, the expert's advice was actually relied upon—involvement that cannot be characterized as brief, ad hoc, or informal. *See Eisai Co. v. Teva Pharm. USA, Inc.*, 247 F.R.D. 440, 442 (D.N.J. 2007) (where the party "acknowledges that the expert's opinion was used to draft its Notice Letter … the 'informally consulted' exception to Rule 26(b)(4)(B) does not apply"); *cf. Todd v. Tempur-Sealy Int'l, Inc.*, 2015 WL 1022886, at *2 (N.D. Cal. Mar. 6, 2015) (consultation was informal where the party "did not receive any documents from" or "compensat[e]" the individual "and the informal consultation was brief in nature and duration").

*Third*, as explained above, the Governor's Office has not demonstrated, and it almost certainly could not, that the communications in April 2015 related to "preparation for trial," given that the communications occurred months before litigation began. Fed. R. Civ. P. 26, advisory committee notes – 1970 amendment (explaining that the 1970 amendments may bar discovery "against experts who were informally consulted in preparation for trial"). Indeed,

1   rather than consulting about then-existing legal claims, the expert appears to have been
2   directly involved in the regulatory decisions that led to this litigation.
3       At the least, if the Governor's Office now argues that the consulting expert was only
4   "informally consulted," and not "retained or specially employed," and the Court finds that
5   the Governor's Office has not waived that argument, the Nation asks that the Court review
6   the identity of the expert and the communications *in camera* to determine whether or not that
7   classification is proper here.  *See Ager*, 622 F.2d at 502.

8       **C.    Attorney-Client Privilege Does Not Protect The Expert's Identity**

9       Even assuming that the attorney-client privilege applies to the substance of the April
10  communications with the expert here (though the client does not appear to have been
11  involved in the communications), the expert's *identity* is not privileged.  Any such
12  conclusion would be in substantial tension with *Ibrahim*, where the Ninth Circuit required
13  the disclosure of an expert's identity despite the plaintiff's objection that the identity of an
14  expert with whom an attorney consults is central to trial preparation strategy.

15      **D.    Attorney Work Product Doctrine Does Not Apply**

16      Finally, the Nation is aware of no authority holding that the attorney work product
17  doctrine protects the identity of an expert, apart from protections provided by Rule 26(b)(4)
18  itself.  At the telephonic hearing, counsel for the Governor's Office vaguely suggested that,
19  if the expert's identity were disclosed, one could "put that piece together with other pieces
20  together with other pieces together, you get going down the road of revealing the substance
21  of the communications."  June 29, 2016 Tr. 16:24-17:2.  But that is true of all privilege logs:
22  given the requirement to identify the date of privileged communications, the topics
23  discussed, and the identity of the speakers, it is frequently possible to draw inferences about
24  what was discussed, but that is no basis for withholding the speakers' identities.

25                                  **CONCLUSION**

26      The Court should order disclosure of the identity of the consulting expert and
27  allow the Nation to assess the validity of the privileges asserted by the Governor's Office.
28

7

| | | |
|---|---|---|
| 1 | Dated: July 13, 2016 | Respectfully submitted, |
| 2 | | |
| | | Danielle Spinelli |
| 3 | | Danielle Spinelli (*Pro hac vice*) |
| | | Kelly P. Dunbar (*Pro hac vice*) |
| 4 | | Sonya L. Lebsack (*Pro hac vice*) |
| 5 | | Kevin M. Lamb (*Pro hac vice*) |
| | | WILMER CUTLER PICKERING |
| 6 | |    HALE AND DORR LLP |
| | | 1875 Pennsylvania Avenue, N.W. |
| 7 | | Washington, D.C.  20006 |
| 8 | | (202) 663-6000 |
| | | danielle.spinelli@wilmerhale.com |
| 9 | | kelly.dunbar@wilmerhale.com |
| | | sonya.lebsack@wilmerhale.com |
| 10 | | kevin.lamb@wilmerhale.com |
| 11 | | |
| | | Paul K. Charlton (012449) |
| 12 | | Karl M. Tilleman (013435) |
| 13 | | Erin N. Bass (030104) |
| | | STEPTOE & JOHNSON LLC |
| 14 | | 201 East Washington Street, Suite 1600 |
| | | Phoenix, Arizona  85004 |
| 15 | | (602) 257-5200 |
| 16 | | pcharlton@steptoe.com |
| | | ktilleman@steptoe.com |
| 17 | | ebass@steptoe.com |
| 18 | | |
| | | Jennifer B. Bonneville (*Pro hac vice*) |
| 19 | | STEPTOE & JOHNSON LLP |
| 20 | | 633 West Fifth Street, Suite 700 |
| | | Los Angeles, California  90071 |
| 21 | | (213) 439-9400 |
| | | jbonnevi@steptoe.com |
| 22 | | |
| 23 | | Laura Berglan, Acting Attorney General (022120) |
| | | Office of Attorney General |
| 24 | | TOHONO O'ODHAM NATION |
| | | P.O. Box 830 |
| 25 | | Sells, Arizona  85634 |
| 26 | | (520) 383-3410 |
| | | laura.berglan@tonation-nsn.gov |
| 27 | | |
| 28 | | *Counsel for Plaintiff Tohono O'odham Nation* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of July, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, which will send a notice of filing to all counsel of record.

Danielle Spinelli

DANIELLE SPINELLI
