Heidi McNeil Staudenmaier (#010387)
Brett W. Johnson (#021527)
Sara J. Agne (#026950)
Robert F. Kethcart (#023939)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
E-Mail: hstaudenmaier@swlaw.com
       bwjohnson@swlaw.com
       sagne@swlaw.com
       rkethcart@swlaw.com
Attorneys for Defendant Douglas Ducey,
    Governor of Arizona

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Tohono O'odham Nation,<br><br>    Plaintiff,<br><br>v.<br><br>Douglas Ducey, Governor of Arizona, *et al.*,<br><br>    Defendants. | No. 2:15-cv-01135-DGC<br><br>**THE GOVERNOR'S BRIEF ON THE DISCOVERABILITY OF THE IDENTITY OF A PERSON INFORMALLY CONSULTED BY THE GOVERNOR'S OFFICE'S GENERAL COUNSEL** |

Non-party Douglas Ducey, Governor of Arizona, is not obligated to disclose the identity of a person with whom his General Counsel for the Governor's Office, Michael Liburdi, informally consulted in connection with counsel's obtaining information, analyzing legal issues, forming legal opinions, providing legal advice to the Governor and to those who report directly to the Governor, and developing legal theories and strategies for existing and anticipated litigation. The Tohono O'odham Nation's demand into an irrelevant issue is meant to sidetrack this Court and reopen discovery as to the Governor's involvement in this matter, which the Court has already addressed and dismissed. The demand that the Governor disclose this person's identity must be denied.

**1.   The Governor is not obligated to disclose the identity under the Federal Rules.**

There is no mechanism under the Federal Rules of Civil Procedure that requires the Governor to disclose the identity of this person. The Governor is not a party to this case.

The information is not being sought by deposition or an interrogatory. Rule 34 does not require the Governor to provide an identity of a person. And the Governor is not obligated to provide the identity under Rule 45.

The closest the Nation can get to arguing a mechanism to require disclosure of the identity of this person is Rule 26(b)(5). However, nothing in Rule 26(b)(5) *requires* the disclosure of the identity of the person with whom counsel conferred. Rule 26(b)(5) is a practical rule that is deliberately imprecise on how much detail is required for privilege descriptions. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1147–48 (9th Cir. 2005) (noting that the requirements of Rule 26(b)(5) are "explicitly left indeterminate"). The Advisory Committee notes to the 1993 Amendments to Rule 26(b) state: "*The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection.*"

In *Burlington*, the Ninth Circuit noted that a privilege log can be *sufficient* to assert or preserve a privilege, but it is not *necessary*. *Burlington*, 408 F.3d at 1148. So too, it can be *sufficient* to specifically identify the recipient of a communication to assert a privilege or protection, but it is not *necessary* so long as sufficient information is provided to evaluate the claim of privilege or protection. The Governor did that here. (*See* Exhibit 1, which is a copy of the Governor's privilege log that provides information about the documents withheld from production in response to the Nation's First RFPs to Director Bergin, and Exhibit 2, which is a Declaration by Mr. Liburdi.) The claimed privilege and protection for Document #4 on the Governor's privilege log is set forth on the privilege log and can be evaluated the same using a pseudonym ("Consulting Expert") as it can with using the person's given name. Thus, the identity of the person that counsel informally consulted is not discoverable and need not be disclosed.

Because the Governor has no obligation under the Federal Rules to disclose the identity of the person, there is no need to go further and decide whether the identity of the person is privileged or protected by the work-product doctrine. However, even if we engage in that analysis, the person's identity is protected.

- 2 -

## 2. **The person's identity is protected under the work-product doctrine.**

The work-product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495 (1947). It is broader than the attorney-client privilege. It is also broader than Rule 26. *See, e.g.*, *Republic of Ecuador v. Mackay*, 742 F.3d 860, 868 n.2 (9th Cir. 2014) ("Although Rule 26(b)(3) is focused on documents and tangible things, *Hickman* protects intangible things independent of the rule.").

Under *Hickman*, an attorney's research, mental impressions, opinions, conclusions, legal theories, and strategies are given a high degree of protection. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Noble*, 422 U.S. 225, 238 (1975); *see also Hickman*, 329 U.S. at 510–11 ("Proper preparation of a client's case demands that [a lawyer] assemble information, sift what he considered to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."). *Cf.* Fed. R. Civ. P. 26(b)(3)(B) (stating that if a court orders discovery of any work-product materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation").

Courts have held that the work-product doctrine protects against disclosures of materials selected by the attorney: "When an attorney selects certain documents to respond to an inquiry, that selection may reveal the attorney's thought processes and the identity of the documents may be privileged under the work product doctrine." *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 208, 210-11 (N.D. Cal. 1992). *See also, e.g.*, *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1328–29 (8th Cir. 1986).

Courts also hold that the work-product doctrine protects an attorney's research done in anticipation of litigation. *See Anchodo v. Anderson, Crenshaw, & Assocs., L.L.C.*, 256 F.R.D. 661, 673 (D.N.M. 2009); *S. Scrap Material Co. v. Fleming*, No. Civ.A. 01-2554, 2003 WL 21474516, at *7 (E.D. La. June 18, 2003) ("[O]pposing counsel may rarely, if ever use discovery mechanisms to obtain the research, analysis of legal theories,

mental impressions, and notes of an attorney acting on behalf of his client in anticipation of litigation.").

During early Spring 2015, the Governor had been in office for only a few months. As the Governor's new General Counsel, Mr. Liburdi's responsibilities involved "getting up to speed" on the ongoing and potential future legal disputes and litigation involving the Nation's proposed West Valley casino, developing legal recommendations and strategies for dealing with the casino and the associated litigation, and advising the Governor and those that reported directly to the Governor in connection with those issues. (Exhibit 2 ¶¶ 2–3.) Given the circumstances at the time, which are outlined in Exhibit 2, continuing and additional litigation with the Nation was anticipated. (*Id.* ¶ 4.) To obtain information and for the purpose of developing legal strategies, and to be able to provide informed and candid advice, Mr. Liburdi informally consulted with a person that he believed had knowledge about the relevant history and the many complex issues involved. (*Id.* ¶ 5.)

Mr. Liburdi's research and his choice of who to confer with is core work product. Revealing the person that the Governor's Office's general counsel selected to confer with, and the research that he did, will reveal counsel's thought processes and mental impressions. (*Id.* ¶ 11.) This information is protected under the work-product doctrine.

**3.    The person's identity is protected under the "consultant privilege."**

The identity of the person with whom the Governor's general counsel consulted is not discoverable and is protected under the consultant privilege.

Rule 26(b)(4)(D) and *Ibrahim v. Dep't of Homeland Security*, 669 F.3d 983 (9th Cir. 2012), deal with experts "retained or specially employed" by a party in anticipation of litigation or to prepare for trial and who are not expected to be called at trial. The *Ibrahim* case must also be read in context. There, the plaintiff's own actions in litigation (her request to share Sensitive Security Information with her non-testifying consulting experts) required her to disclose the identities of her experts pursuant to a Federal statute (not under the Fed. R. Civ. P.) for national security reasons. In this context, the Ninth Circuit's decision makes sense, as "substantial need" or "exceptional circumstances" were present.

Here, in contrast, the Governor's own actions in litigation do not require the disclosure of the person's identity. There is no statute, nor any national security concerns, mandating disclosure of the person's identity. And the identity of the person whom Mr. Liburdi consulted is not relevant. The Nation is simply fishing, trying to get discovery from a non-party that the Court has already dismissed. The Arizona Department of Gaming, which still is a party to this case, is not privy to Mr. Liburdi's attorney-client files and, thus, such documents are irrelevant. There is no need, nor any substantial need or exceptional circumstances, warranting the loss of the work-product protection.

More importantly, however, even if Rule 26(b)(4)(D) does not prevent discovery of the identities of retained or specially employed experts, Rule 26(b)(4)(D) *does* protect against the required disclosure of a person that an attorney *informally* consults in anticipation of litigation. The 1970 Advisory Committee Notes state: "subdivision 26(b)(4)(B) is only concerned with experts actually retained in relation to trial preparation, and that on proper showing, a party may require the other party to name retained or specially employed experts, *but not those informally consulted.*"

Courts, including one in this District, have consistently held that a party may not discover the identity of experts who were informally consulted by an attorney in anticipation of litigation. *See In re Snyder*, 115 F.R.D. 211, 214 n.2 (D. Ariz. 1987) ("Rule 26(b)(4) prohibits discovery of the names of experts consulted but not retained . . ."); *Spearman Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001) (citing three U.S. Circuit Court of Appeals cases).

The person that the Governor's general counsel consulted was not retained or specially employed by the Governor. (Exhibit 2 ¶ 6.) The person was only informally consulted, without an agreement or payment. (*Id*.) The person provided insight and suggestions that helped counsel evaluate options, analyze issues, develop legal recommendations, strategize regarding anticipated litigation, and provide legal advice to the Governor and those that report directly to the Governor. (*Id.* ¶ 7.) Because the individual was only informally consulted in anticipation of litigation, and was not a

- 5 -

1  "retained or specially employed" expert, the person's identity is protected from disclosure
2  under the Federal Rules.[1]

### 4. The person's identity is protected by the executive privilege.

Although there is no need to reach this issue, the informal consultant's identity is protected by the Governor's executive privilege that derives from the doctrine of separation of powers. The executive privilege serves the public interest by ensuring the Governor has "access to candid advice in order to explore policy alternatives and reach appropriate decisions." *Freedom Foundation v. Gregoire*, 310 P.3d 1252, 1258 ¶ 17 (Wash. 2013); *see also, e.g.*, *United States v. Nixon*, 418 U.S. 683, 705 (1974) (discussing the self-evident importance of confidentiality in this context).

The privilege applies to communications with the Governor and with his senior advisors that foster informed deliberations, policy-making, and decision-making. *Freedom Foundation*, 310 P.3d at 1262 ¶¶ 32–33. The privilege also applies to the identities of persons that consult with the Governor or his senior advisors. Courts and the U.S. Congress have recognized there are important reasons to keep confidential the identity of persons who consult with executive branch officials. For example, the New Jersey Supreme court held that the public does not have an unqualified right to itemized telephone billing records of a public body that would disclose the identity of the persons who called or called in; rather, these records would be available only "after a showing that the public need for the identity of the parties called outweighs the governmental policies of confidentiality in telephone communications and of executive privilege." *North Jersey Newspapers Co. v. Passaic County Bd. of Chosen Freeholders*, 601 A.2d 693, 694 (N.J. 1992). In reaching this decision, the court noted several reasons this information should be

---

[1] If the person somehow were determined to have been retained or specially employed, then communications with this person could be protected under the attorney-client privilege, which extends "to communications with third parties who have been engaged to assist the attorney in providing legal advice." *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011); *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 325 (S.D.N.Y. 2003) (citing *U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961)). So too for the person's identity, because revealing the person's identity could reveal the substance of the communications and advice sought.

kept confidential, including:

> [T]here may be times—and they may be the most critical times—when a government official will have to make a telephone call that has an arguable claim to confidentiality—times when, for example, a mayor might need to call a city council member from an opposing political party on a most highly sensitive community issue to enlist that person's support; or times when a mayor might need to call a community activist to calm troubled waters, without causing disruption that might result from appearing to negotiate with a dissident who may, at the moment, be perceived as a lawbreaker.

*Id.*

The D.C. Circuit Court of Appeals has similarly recognized that documents like the appointment calendars of the President and his close advisors are not subject to disclosure under FOIA. *Judicial Watch, Inc. v. U.S. Secret Service*, 726 F.3d 208, 211 (D.C. Cir. 2013). This is at least in part because "the Executive has a "constitutional prerogative" to "maintain[] the autonomy of its office and safeguard[] the confidentiality of its communications," and "Congress crafted FOIA to avoid intruding on the confidentiality of presidential communications." *Id.* at 224. Thus, the court construed FOIA as not reaching White House logs of visitors to the Office of the President. A contrary construction "could substantially affect the President's ability to meet confidentially with foreign leaders, agency officials, or members of the public[,] [a]nd that could render FOIA a potentially serious congressional intrusion into the conduct of the President's daily operations." *Id.* at 226.

Exhibit 2 confirms that Document #4 on the Governor's privilege log falls within the privilege because it is a communication to Mr. Liburdi for the purpose of fostering informed gubernatorial deliberations and decision-making, and producing the document would interfere with that function, as would disclosure of the person's identity. (Exhibit 2, ¶¶ 10–12.) The document and the identity of the sender are presumptively privileged. Absent some particularized need for the document and identity that outweighs the public and constitutional interests in maintaining the privilege, the document and the sender's identity are protected by the executive privilege. *See Nixon*, 418 U.S. at 713.

DATED July 13, 2016.

Respectfully submitted,

SNELL & WILMER L.L.P.

By: s/ Robert F. Kethcart
Heidi McNeil Staudenmaier
Brett W. Johnson
Sara J. Agne
Robert F. Kethcart
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Defendant
Douglas Ducey, Governor of Arizona

**CERTIFICATE OF SERVICE**

I certify that on July 13, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing. All participants in the case are registered CM/ECF users and will be served by the CM/ECF System.

s/ Robert F. Kethcart

24423180

- 8 -