FENNEMORE CRAIG, P.C.
Patrick Irvine (No. 006534)
Douglas C. Northup (No. 013987)
Carrie Pixler Ryerson (No. 028072)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: pirvine@fclaw.com
Email: dnorthup@fclaw.com
Email: cryerson@fclaw.com

GIBSON, DUNN & CRUTCHER LLP
Matthew D. McGill (admitted pro hac vice)
Matthew A. Hoffman (admitted pro hac vice)
1050 Connecticut Avenue N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Email: mmcgill@gibsondunn.com
Email: mhoffman@gibsondunn.com

*Attorneys for Defendant*
*Director Daniel Bergin, Arizona Department*
*of Gaming*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| The Tohono O'odham Nation,<br><br>Plaintiff,<br><br>v.<br><br>Douglas Ducey, Governor of Arizona; Mark Brnovich, Arizona Attorney General; and Daniel Bergin, Director, Arizona Department of Gaming, in their official capacities,<br><br>Defendants. | No. 2:15-cv-01135-DGC<br><br>**DEFENDANT DANIEL BERGIN'S BRIEF REGARDING THE COMMON-INTEREST PRIVILEGE** |

Gibson, Dunn & Crutcher LLP

Director Daniel Bergin respectfully submits this memorandum regarding the scope and applicability of the common-interest privilege pursuant to the Court's July 15, 2016 Order. ECF 221. That privilege squarely applies here to prevent the disclosure of entry 102—an email between lawyers for Director Bergin and the Gila River Indian Community sent pursuant to their written common-interest agreement.

"The Ninth Circuit has long recognized that the joint defense privilege," "also referred to as the 'common interest' privilege or doctrine," "is 'an extension of the attorney-client privilege.'" *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (quoting *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000)). That joint-defense or common-interest privilege "protects not only the confidentiality of communications passing from a party to his or her attorney but also 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)).

The common-interest privilege "has *not* been limited to criminal defense situations or even situations in which litigation has commenced." *Gonzalez*, 669 F.3d at 978 (emphasis added). Rather, it is sufficient that "clients … potentially may be codefendants or have common interests in litigation" for the common-interest privilege to apply, "as parties in separate actions might nonetheless have reasons to work together toward a common objective, and there is no requirement that actual litigation even be in progress." *Id.* at 979–80 (citing *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964) (attorney-client privilege applied to memoranda exchanged in confidence between attorneys for employees of different companies who had been summoned to testify before Grand Jury); *see also Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965) ("[W]here two or more persons who are subject to *possible indictment* in connection with the same transaction make confidential statements to their attorneys, these statements, even though they are exchanged between the attorneys, should be privileged to the extent that they concern common issues and are intended to facilitate representation in *possible subsequent proceedings*" (emphases added));

*In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390–91 (Fed. Cir. 1996) ("It is well established that the attorney-client privilege is not limited to actions taken and advice obtained in the shadow of litigation.").

The Restatement takes the same approach: "If two or more clients with a common interest in a litigated *or nonlitigated* matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged … that relates to the matter is privileged as against third persons." Restatement (Third) of the Law Governing Lawyers § 76(1) (2000) (emphasis added); *see also id.*, Reporter's Note, comment e ("The fact that information is exchanged about parallel lawsuits, rather than about the same litigation, does not remove the privilege …. Interests may converge on nonlitigated issues as well.").

Here, the common-interest privilege applies to entry 102, a May 27, 2015 email from Roger Banan (Director Bergin's lawyer) to Donald Pongrace (a lawyer at Akin Gump, the firm that represented Gila River in *TON I*). Mr. Banan sent that email pursuant to a written common-interest agreement, executed on May 13, 2015, between the Department of Gaming, the Governor's Office, the Salt River Pima-Maricopa Indian Community, and Gila River.

That this lawsuit was not yet pending in May 2015 is irrelevant. As explained above, "there is no requirement that actual litigation even be in progress" for the doctrine to apply. *Gonzalez*, 669 F.3d at 980. In any event, *TON I* was still pending before the Ninth Circuit in May 2015; Gila River was a party to *TON I*; and the Nation had repeatedly asserted, in correspondence to Director Bergin, that this Court's decision in *TON I* was binding on ADG "[u]nless and until [the Ninth Circuit] issue[d] a contrary ruling." ECF 1-4 at 4, 6; ECF 1-5 at 10. The Nation also had repeatedly threatened "to exercise all available remedies to compel ADG's compliance with the law," presumably including litigation. ECF 1-5 at 12; *see also id.* at 21. ADG and Gila River thus clearly shared a common interest in *TON I* and in any potential follow-on litigation the Nation might bring (including the current lawsuit). And under those circumstances, the May 2015 email from Director Bergin's lawyer to Gila

River's lawyer, sent pursuant to ADG and Gila River's written common-interest agreement, falls well within the common-interest privilege.

The fact that "some courts appear to have suggested that the privilege can extend to the regulatory setting," as the Court correctly noted, only underscores that conclusion. ECF 221 (citing *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 220 (W.D. Ky. 2006)). Importantly, this is not a case like *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003), in which the common-interest privilege did not prevent disclosure of communications between a company and the SEC because their interests were adverse and their confidentiality agreement "was not unconditional." *Id.* at 496–97 & n.10. Nor is this a case like *In re Lidoderm Antitrust Litigation*, No. 14-md-02521-WHO, 2016 WL 861019 (N.D. Cal. Mar. 7, 2016), in which adversaries could not assert the common-interest privilege over communications based on their shared *commercial* interests in regulatory action. *Id.* at *4–*5. Instead, like in *Broessel*, this is a case in which ADG, Gila River, and the other common interest group members had (and have) a "'common legal interest' … that extends to legislative and regulatory matters, as well as in matters in litigation or which could lead to litigation." 238 F.R.D. at 220. Among other thigs, ADG, Gila River, and the other members of the common-interest group had and have a common legal interest in rooting out the fraud the Nation perpetrated during Compact negotiations and the Proposition 202 campaign. That interest is more like the one shared among contracting parties working together to uncover another contracting party's fraud than it is like a regulator aligning itself with a regulated party's interests, as the Nation tries to frame it. ADG and Gila River's common interest extends to related legal, regulatory, and legislative challenges, and the parties to the common-interest agreement are all obligated to maintain the confidentiality of the shared information.

The common-interest privilege applies to entry 102. Nothing "about the setting in this case … would cause the communication to fall outside the privilege." ECF 221. The privilege is not "limited to litigation-related work." *Id.* But even if it were, entry 102 is an email between counsel reflecting common legal interests in pending and potential litigation, as well as in legal, regulatory, and legislative challenges relating to the Nation's fraud.

| | | |
|---|---|---|
| 1 | DATED this 20th day of July, 2016. | GIBSON, DUNN & CRUTCHER LLP |

By:  /s/ Matthew A. Hoffman
Matthew D. McGill
Matthew A. Hoffman

-and-

Patrick Irvine
Douglas C. Northup
Carrie Pixler Ryerson

FENNEMORE CRAIG, P.C.

*Attorneys for Defendant Director Daniel Bergin, Arizona Department of Gaming*

# CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2016, I caused the foregoing document to be served upon the following persons via email to the addresses noted below:

Seth P. Waxman
Danielle Spinelli
Kelly P. Dunbar
Sonya L. Lebsack
Wilmer Cutler Pickering Hale & Dorr LLP
1875 Pennsylvania Ave. NW
Washington, DC  2006
Email:  seth.waxman@wilmerhale.com
Email:  danielle.spinelli@wilmerhale.com
Email:  kelly.dunbar@wilmerhale.com
Email:  sonya.lebsack@wilmerhale.com
*Attorneys for Plaintiff*
*The Tohono O'odham Nation*

Jonathan Landis Jantzen
Laura Lynn Berglan
Tohono O'odham Nation
Office of the Attorney General
P. O. Box 830 Sells, AZ  85634
Email:  jonathan.jantzen@tonation-nsn.gov
Email:  laura.berglan@tonation-nsn.gov
*Attorneys for Plaintiff*
*The Tohono O'odham Nation*

Paul K. Charlton
Karl M. Tilleman
Erin N. Bass
Steptoe & Johnson LLP
201 E. Washington Street Suite 1600
Phoenix, AZ  84004
Email:  pcharlton@steptoe.com
Email:  ktilleman@steptoe.com
Email:  ebass@steptoe.com
*Attorneys for Plaintiff*
*The Tohono O'odham Nation*

/s/ Andrew G. Pappas
An employee of Gibson, Dunn & Crutcher LLP

102151432.5.DOC