Paul K. Charlton (012449)
Karl M. Tilleman (013435)
Erin N. Bass (030104)
STEPTOE & JOHNSON LLP
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile: (602) 257-5299
pcharlton@steptoe.com
ktilleman@steptoe.com
ebass@steptoe.com

Jennifer B. Bonneville (*Pro hac vice*)
STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 700
Los Angeles, California 90071
jbonnevi@steptoe.com

*Counsel for Plaintiff Tohono O'odham Nation*
(Additional attorneys for
Plaintiff listed on next page)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The Tohono O'odham Nation,<br><br>          Plaintiff,<br><br>  v.<br><br>Douglas Ducey, Governor of Arizona; Mark Brnovich, Arizona Attorney General; and Daniel Bergin, Director, Arizona Department of Gaming, in their official capacities,<br><br>          Defendants. | Case No. 2:15-cv-01135-DGC<br><br>**REPLY IN SUPPORT OF THE NATION'S MOTION FOR SPOLIATION SANCTIONS**<br><br>**(ORAL ARGUMENT REQUESTED)** |

9615323

Additional Attorneys:

Danielle Spinelli (*Pro hac vice*)
Kelly P. Dunbar (*Pro hac vice*)
Sonya L. Lebsack (*Pro hac vice*)
Kevin M. Lamb (*Pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone: (202) 663-6000
danielle.spinelli@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
kevin.lamb@wilmerhale.com

Laura Berglan, Acting Attorney General
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, AZ  85634
Telephone: (520) 383-3410
laura.berglan@tonation-nsn.gov

9615323

Director Bergin's response to the Tohono O'odham Nation's Motion for Spoliation Sanctions ("Motion") only underscores that the Court should sanction Director Bergin for the intentional destruction of relevant and critical evidence. In 2015, Assistant Attorney General Roger Banan attended three secret meetings with two of the Nation's competitors – meetings that Director Bergin testified never occurred (Bergin Dep. Tr. 105:6-11; 106:12-17; 137:1-10) and also called "inappropriate" (Banan Dep. Tr. 35:25-36:5). Banan then intentionally destroyed notes he had created during these meetings in which the parties discussed various ways to cripple the Nation's West Valley Resort ("WVR"). These meetings occurred during precisely the same period in 2015 when Bergin took a series of unprecedented regulatory actions aimed at blocking the WVR.

The depositions of Banan and Donald Pongrace, a lobbyist for one of the Nation's competitors, highlight why sanctions are warranted. Banan wrote to Pongrace shortly after one of the secret meetings, acknowledging their discussion about the potential for a claim of tortious interference and asking Pongrace about the research he had done on the topic. Pongrace testified under oath, however, that he had no idea what Banan was talking about, that the parties never discussed tortious interference, and that Pongrace had not done any such research. The utterly inconsistent testimony of Banan and Pongrace regarding the basic details of the secret meetings – even the number of meetings – and the meaning and accuracy of a short email only raises more troubling questions.

The circumstances strongly indicate that Banan intentionally destroyed evidence of a joint scheme between the State of Arizona and two of the Nation's competitors to unlawfully block the WVR. The Director's response essentially is: "An Assistant Attorney General destroyed evidence. What is the big deal? You didn't need that evidence anyway, because you can trust what we say."[1]

---

[1] The inability of Banan and Pongrace to agree on almost anything relating to the secret meetings, which occurred *15 months ago*, is particularly disturbing in light of the Director's request that the Court rely on oral statements purportedly made *15 years ago* to unravel an unambiguous and comprehensive agreement, negotiated by sophisticated counsel over the course of several years, which declares all prior oral agreements invalid.

- 1 -

All of Director Bergin's attempts to justify Banan's destruction of his notes, and avoid sanctions, lack merit. Banan should have known that his notes discussing potential tactics against the Nation's WVR would be highly relevant to future litigation, including the potential litigation he raised at the meetings. In addition, courts do not allow litigants to destroy documents based on their purportedly privileged nature, since the claim of privilege could never be adequately tested once the documents have been destroyed. Nor does any Arizona ethics opinion – indicating that an attorney does not need to put "duplicative and unnecessary" materials in a client's file – remotely authorize an attorney to willfully destroy potentially relevant evidence. The Director's response also leaves no doubt that Banan's notes should have been preserved under Arizona's Public Record laws.

## ARGUMENT

### I. Banan Had A Duty To Preserve His Notes.

This Court has previously held, and the parties agree, that "[a] duty to preserve information arises when a party knows or should know that information is relevant to pending or future litigation." *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1105 (D. Ariz. 2014), quoting *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011); *see* Bergin Opp. at 8. Bergin does not dispute that litigation was reasonably foreseeable when Banan destroyed his notes – the meeting participants, after all, were discussing the potential for future litigation. *See* Opp. at 9. Bergin also does not argue that the meetings themselves or the discussions that occurred therein are irrelevant to the Nation's unclean hands and bad faith defenses. In fact, the Court has already determined that the meetings could be relevant to the Nation's equitable defenses. Motion, Ex. F. at 13:14-23.

As such, Bergin disputes only whether Banan should have known that his notes "*may* be relevant" to the anticipated litigation. Opp. at 9 (emphasis added); *see also United States v. Kitsap Physicians Svs.*, 314 F.3d 995, 1001 (9th Cir. 2002) (spoliating party only required to have "'some notice that the documents were *potentially* relevant' to the litigation before they were destroyed") (emphasis added). Bergin relies on Banan's

1  subsequent declaration that the notes referred only to the suggestions to cut off water,
2  electricity, and trash to the WVR. Opp. at 9, citing Banan Decl. ¶ 6. Director Bergin then
3  argues that the notes were irrelevant because ADG dismissed those suggestions. Opp. at 9.[2]

4      The Director expects the Court and the Nation to "take Banan at his word" and trust
5  his memory concerning the contents of the notes and the discussions at the secret meetings.
6  However, the party destroying evidence cannot force its adversary to rely on the testimony
7  of the spoliating party's witnesses as a remedy. "The Court and Plaintiff can take no
8  comfort in Defendants' assertion that defense witnesses, who will favor the defense
9  position, can testify about these events at trial." *Pettit*, 45 F. Supp. 3d at 1111.

10     Moreover, Banan's memory is admittedly fuzzy on many details (*e.g.*, who was at
11 the meetings, "anything about [the third] meeting"). Banan Dep. Tr. 49:14-16. As to other
12 details, Banan's memory is directly contradicted by Pongrace's testimony. For example,
13 Banan and Pongrace provided conflicting and often diametrically opposed testimony about
14 a number of key facts, including:

- *How many meetings occurred.* Pongrace said there were only two meetings, and Banan was only at one of them. Pongrace Dep. Tr. 12:4-22, 40:13-41:5 ("Mr. Banan was, in fact, someone I had never met before and, frankly, I've never seen since."); 55:8-57:12, 94:9-15, 110:16-111:7. *See* Ex. A attached hereto. Banan said he attended three meetings and Pongrace attended all of them. Banan Dep. Tr. 49:14-50:1; 62:15-63:2.

- *Who initiated the meetings.* Banan said that all of the meetings were initiated by the Governor's office, the Gila River Indian Community, or the Salt River Pima Maricopa Indian Community. Banan Dep. Tr. 86:13-16. Pongrace said he doesn't know who called the meetings, but he knows it was not Gila River. Pongrace Dep. Tr. 14:21-15:22.

- *Who led the meetings.* Pongrace said there was no real leader of the meetings, and he was not the predominant speaker. Pongrace Dep. Tr. 18:20-19:11, 38:9-39:4, 88:10-89:1. Banan said "It was largely Mr.

---

[2] Banan now claims that this discussion was the only one he recorded in his notes. *See* Bergin Opp. at 9. However, Banan testified in his deposition that he had a "habit" of taking notes of anything "important." Banan Dep. Tr. 68:21-69:3. If Banan dismissed these suggestions out of hand, why, of all the items discussed at the meetings, were they the only suggestions he so carefully wrote in his notes to brief Bergin?

- 3 -

Pongrace who was doing the -- doing the talking." Banan Dep. Tr.25:5-14, 38:14-20, 41:24-42:7, 49:14-50:1, 91:13-23.

- *What was said about the vendor letters.* Banan said he discussed the vendor letters with the two tribes and "they indicated [that] . . . they would like the department to send those letters." Banan Dep. Tr. 43:5-20. Pongrace testified that he doesn't recall saying anything about them. Pongrace Dep. Tr. 26:1-27:10, 52:16-53:3.

- *What was said about the employee letters.* Banan said that the employee letters were Pongrace's idea and that Pongrace urged ADG to send them. Banan Dep. Tr. 30:15-31:3. Pongrace testified that he has no recollection of any discussion of the employee letters. Pongrace Dep. Tr. 55:6-7.

- *What was said about a tortious interference suit against the Department of Gaming.* Banan says Pongrace told him, "Oh, don't worry about that. We've already done research on that issue, and that claim will -- will never work." Banan Dep. Tr. 44:3-14, 46:9-47:16, 72:1-12. Pongrace denies discussing tortious interference law. Pongrace Dep. Tr. 23:19-24:14, 25:22-27:10, 57:13-22, 61:2-62:11, 65:1-66:2, 74:19-75:16, 102:21-103:16, 107:13-108:19.

- *Who supported cutting off water, electricity, and utility services.* Banan claimed that Pongrace suggested cutting off these services to the WVR and "urged" the State to take these steps. Banan Dep. Tr. 29:11-31:3. Pongrace says he never suggested those as options, but merely informed the group that those were things "other groups" had done to thwart unwanted casinos. Pongrace Dep. Tr. 27:19-22, 31:17-36:8, 53:10-22.

Such conflicting testimony makes credibility a serious issue, and spoliation sanctions are warranted without the Court or the Nation having to reconcile the troubling differences in this testimony. Rather, "when the evidence in the case as a whole would allow a reasonable fact finder to conclude that the missing evidence would have helped the requesting party support its claims or defenses, that may be a sufficient showing of both relevance and prejudice to make an adverse inference instruction appropriate." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 616-17 (S.D. Tex. 2010); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010) (same). Significant evidence allows the Court to conclude that ADG took regulatory actions because Gila River and Salt River urged ADG to do so.

- 4 -

1       For example, Bergin now claims that ADG decided to send vendor letters before the meetings with the tribes, so the meetings could not have influenced his decision. But Banan testified that ADG had only "contemplated" sending the vendor letters at the time of the meetings and that ADG had not yet drafted them. Banan Dep. Tr. 43:9-12, 45:15-17. Banan's testimony makes sense. Otherwise, if ADG had already sent the letters, why discuss the letters or ask for Pongrace's thoughts on the viability of a tortious interference claim arising from them? Significantly, ADG sent the vendor letters on May 26, 2015 – just two weeks after the May 13, 2015 meeting. Banan Dep. Tr. 21:22-25, 43:9-12; Ex. J to Spoliation Motion. The timing is powerful circumstantial evidence that something in the secret meetings prompted ADG to send those letters. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (causation "may be inferred from circumstantial evidence, such as . . . proximity in time"); *Levine v. Terros, Inc.*, 2010 WL 864498, at *8 (D. Ariz.) (two weeks' time was close enough to "infer causation based on temporal proximity").

      Second, Bergin claims that ADG considered sending employee letters before the meetings but "ultimately decided not to send them." Not true. ADG admitted in its Answer that it issued warning notices to employees. Answer ¶¶ 8, 88, 90. ADG similarly told the Congressional Budget Office ("CBO") that it sent those notices to certified gaming employees. Ex. M to Spoliation Motion. In addition, Banan testified that it was Pongrace who generated the idea to send employee letters. Banan Dep. Tr. 30:21-31:2. And, like the vendor notices, the employee notices went out just two weeks after the May 13, 2015 meeting. Banan Dep. Tr. 21:22-25; Ex. J to Spoliation Motion.

      Third, Bergin claims that Banan and Pongrace testified that they did not discuss ADG's letter to the Arizona Department of Liquor Licenses and Control ("ADLLC"). However, Banan testified that he did not remember discussing the letter – not that there were no discussions. Banan Dep. Tr. 30:15-21, 31:9-13. In addition, in an unprecedented action he had never taken before, Bergin wrote ADLLC just five days after the May 13 meeting at which "the tribe[s] urg[ed] the State to take action quickly to help them out."

- 5 -

1  Banan Dep. Tr. 60:9-12; Ex. K to Spoliation Motion; *see also* Banan Dep. Tr. 29:12-15,
2  63:5-10.  Banan's destroyed notes could have confirmed why Bergin took this
3  unprecedented action at precisely that time.

4  Fourth, Bergin claims that neither Banan nor Pongrace "recalled discussing the
5  CBO." Opp. at 16.  That is highly implausible.  Pongrace was the lead lobbyist for Gila
6  River and was responsible for pushing the Keep the Promise Act ("KPA") through
7  Congress.  Banan Dep. Tr. 49:21-51:7, 94:15-95:10.  Banan admits that Pongrace spoke at
8  length about "stratagems" and "parliamentary procedures, various committees and readings
9  and that sort of thing."  Banan Dep. Tr. 50:4-17, 95:12-18.  Then just one month later,
10 Director Bergin wrote a letter – not to an obvious recipient like the bill's sponsor or an
11 Arizona congressman, but to the CBO.  Exs. L, M to Spoliation Motion.  The cost estimate
12 of a federal bill has nothing to do with "fair regulation" of tribal gaming in Arizona, but is
13 entirely consistent with a suggestion a congressional lobbyist would make.

14 Finally, Bergin claims (Opp. at 2) that Banan and Pongrace "made clear" that ADG
15 and Gila River did not coordinate to delay the opening of the WVR so that Pongrace could
16 continue to lobby to get the KPA passed.  But Banan attended at least two meetings with
17 Gila River at which they extensively discussed the KPA in conjunction with Gila River's
18 and Salt River's "urging the State to take action quickly to help them out."  Banan Dep. Tr.
19 60:9-12; *see also id.* at 29:12-15, 63:5-10.  ADG, through its subsequent actions, did seek
20 both to delay the opening of the WVR and its opening as a Class III facility.

21 Banan's notes were highly relevant documentary evidence, and appear to have been
22 a critical link in a carefully orchestrated and executed (and very improper) joint scheme by
23 ADG and two of the Nation's competitors to block the WVR.  But the notes no longer
24 exist; Banan destroyed them.  Such conduct warrants sanctions.

25 **II.   Banan Intentionally – And Thus Culpably – Destroyed Relevant Evidence.**

26 Rather than contest that Banan intentionally destroyed the notes, Bergin argues that
27 Banan did not act with a culpable state of mind because he consistently destroyed his notes
28

- 6 -

after he briefed the Director. Banan's routine practice of destroying what appear to be public records does not equal a lack of culpability. "When a party on notice intentionally destroys, rather than accidentally loses, that evidence, it is a 'willful' spoliator even if it did not intend to deprive an opposing party of relevant evidence." *Food Servs. of Am., Inc. v. Carrington*, 2013 WL 4507593, at *21 (D. Ariz. 2013) (citing *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)); *see also Pettit*, 45 F. Supp. 3d at 1114-15 (intentionally destroying evidence that the party "had reason to believe . . . was relevant to likely litigation" is "at least grossly negligent" and "not inadvertent or merely negligent"); *In re Black Diamond Min. Co.*, 514 B.R. 230, 240 (E.D. Ky. 2014) (a regular practice of discarding notes will not excuse their destruction when they are relevant to litigation).

Bergin does not cite a single case to support his position on culpability. All he cites is State Bar Ethics Opinion 15-02, which relates only to the lawyer's duty to "maintain[] client files," as its title states – not to the lawyer's duty to preserve potentially relevant evidence.[3] Attorneys have a clear ethical duty not to destroy potentially relevant evidence. *See* Arizona Rule of Professional Conduct 3.4(a) ("A lawyer shall not . . . unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.").

Banan's destruction of his notes is especially culpable because they were public records required to be maintained under the Arizona Public Records Law. Director Bergin argues that Banan's notes were not public records because they were not "reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities which are supported by monies from this state or any political subdivision of this state." Opp. at 10, quoting A.R.S. § 39-121.01(B). This argument lacks merit because: (a) the depositions of two meeting participants provide diametrically opposite accounts of critical facts (making the only known contemporaneous notes essential for an "accurate" account of what occurred); (b) there is no other written record of

---

[3] Further, this opinion concludes only that "unnecessary and duplicative materials can be discarded." As Banan's notes are the only known contemporaneous records of highly suspicious secret meetings, they are neither unnecessary nor duplicative.

- 7 -

the meetings; and (c) these notes were used to brief Director Bergin as to what happened at the meetings. The public had every right to know that the secret meetings occurred and what was discussed therein. With Banan having destroyed the only contemporaneous notes of the meetings, any public records request asking for disclosure of ADG's activities with respect to the WVR would have revealed nothing about these secret meetings.[4] ADG's desire to keep these meetings secret does not make them "unofficial" agency activities. These documents should have been preserved, as the Attorney General's agency handbook makes clear. *See* Arizona Attorney General's Agency Handbook §6.7.5 9.[5]

### III. The Destruction of the Notes Prejudiced the Nation.

The response leaves no doubt that Banan's destruction of his notes was highly prejudicial. To satisfy the prejudice prong of the spoliation standard, a party need only "'come forward with plausible, concrete suggestions' about what the spoliated evidence 'might have been.'" *Stedeford v. Wal-Mart Stores, Inc.*, 2016 WL 3462132, at *8 (D. Nev. June 24, 2016) (*quoting Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011)). As explained in Section I above, the Nation has met this standard and more.

Bergin argues that the Nation is not prejudiced for two reasons. First, he argues (Opp. at 12) that Banan's and Pongrace's depositions create an "ample record." However, the testimony of a spoliating party and its ally does not remove the prejudice caused by the intentional destruction of documents. *Pettit*, 45 F. Supp. 3d at 1111; *accord Slep-Tone Entm't Corp. v. Granito*, 2014 WL 65297, at *7-8 (D. Ariz.). Moreover, forcing a litigant

---

[4] Likewise, if the Nation had not challenged Bergin's assertion of privilege as to Banan's email to Pongrace (See Ex. B), the Nation never would have learned of the secret meetings either – given the Director testified at his deposition that the Department had spoken to no lobbyists – including Pongrace about the WVR. Bergin Dep. Tr. 136:14-137:16.

[5] The existence of just one document (the Banan-Pongrace email) relating to a series of meetings among four busy and sophisticated parties plus their counsel (approximately a dozen people) suggests coordinated action to avoid creating any record of the meetings. There is not even an electronic calendar invitation or email confirming meeting times and locations. Banan's destruction of his notes in such a vacuum is all the more culpable.

- 8 -

1   to accept diametrically opposed and inconsistent deposition testimony from two adverse
2   witnesses is no remedy for the intentional destruction of contemporaneously created
3   written records that would have revealed who was telling the truth.[6]

4   Second, Bergin claims a lack of prejudice because the notes were purportedly
5   privileged. Bergin Opp. at 11. This rationale also lacks merit. "The duty to preserve
6   applies even where the evidence is marked as privileged." *Patel v. Havana Bar, Rest. &*
7   *Catering*, 2011 WL 6029983, at *5 (E.D. Pa.). There is no authority supporting the
8   suggestion that a party can dispose of potentially relevant information because it is
9   privileged. *See Zimmerman v. Poly Prep Country Day Sch.*, 2011 WL 1429221, at *20
10  (E.D.N.Y.). Courts have rejected this argument in part because a "meaningful privilege
11  review could never take place for documents that are destroyed based on a party's own
12  decision about whether they are protected by a privilege." *Buonauro v. City of Berwyn*,
13  2011 WL 3754820, at *8 (N.D. Ill.). Bergin's approach invites parties wrongfully to
14  destroy documents and then argue – when no meaningful privilege review could occur –
15  that the spoliation did not cause prejudice because the documents were privileged.

16  In any event, the notes were not privileged. Banan did not attend the meeting as an
17  attorney, but rather in the place of the Director. "[W]hen the tribes asked for the meetings,
18  Director Bergin believed that it would be inappropriate [for him to attend] and asked me to
19  attend in his stead." Banan Dep. Tr. 36:2-5. Thus, Banan's "purpose [in] going to the
20  meeting was to brief [the Director] on what took place at the meeting." *Id.* at 41:18-19. As
21  such, the attorney-client privilege does not apply because the notes reflect statements made
22  by third parties, rather than communications from a client to the attorney.[7]

---

[6] The case cited by Bergin (at 13), *Medical Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806 (9th Cir. 2002), is inapposite. There, the loss was inadvertent and digital versions of the lost slides were available. *Id*. at 825. Here, the destruction was intentional and no secondary documents are available.

[7] Bergin quotes part of A.R.S. § 12-2234, Opp. at 12, but fails to mention that the statute covers "any communication made *by the client* to [the attorney], or his advice given

- 9 -

The work product privilege also does not protect the notes, which did not record witness interviews, but rather statements made at secret meetings held between a regulator and two regulated entities. In fact, this Court ordered disclosure of the May 27, 2015 email between Banan and Pongrace, notwithstanding a claim of work product privilege. Exhibit A; July 25, 2016 Order (Doc. 251-1). Further, even if some portion of Banan's notes had been privileged, Bergin waived the privilege by not placing the notes on any privilege log. *In re App. of Chevron Corp.*, 2013 WL 11241413, at *5 (D.D.C.) (failure to include documents on a privilege log waived privilege).

## IV.    The Court Should Impose Sanctions.

This is not a case where a document was inadvertently destroyed or accidentally lost because of an insufficient retention policy. Rather, Banan intentionally destroyed the only contemporaneous notes of secret meetings between ADG and two of the Nation's competitors in which they discussed a variety of ways to block the WVR. As this Court has made clear, intentionally destroying relevant evidence is "at least grossly negligent" and "not inadvertent or merely negligent." *Petti*, 45 F. Supp. 3d at 1114. In such circumstances, a firm sanction that will have a real impact is appropriate, such as: (1) drawing an adverse evidentiary inference on key elements in the case, *id.* (granting sanction of adverse inference jury instruction); *Food Servs. of Am., Inc. v. Carrington*, 2013 WL 4507593, at *21-22 (same); or (2) ordering production of documents withheld on the grounds of privilege that might bear on the issue. *Baker v. Cmty. Health Sys., Inc.*, 2012 WL 12294413, at *17-18 (D.N.M. Aug. 31, 2012).

One possible sanction warranted by the circumstances of this case would be to find the adverse evidentiary inferences suggested in the Nation's Motion, which relate directly to the Nation's equitable defenses, such as Bergin's bad faith and unclean hands. In a matter of weeks in 2015, ADG dramatically changed its regulatory position on the WVR and took a number of extraordinary and highly suspicious actions aimed at blocking it.

---

thereon in the course of professional employment." A.R.S. § 12-2234(A) (emphasis added). Neither the privilege nor the statute protects communications from third parties.

- 10 -

Bergin attempts to justify all this as "fair regulation" of Indian gaming in Arizona. *See* A.R.S. § 5-602(c). But the evidence strongly suggests that Bergin engaged in this unprecedented conduct at the behest of two of the Nation's competitors, and that he attempted to keep these "inappropriate" interactions secret and "off the public records" so as to maintain he was simply fulfilling his statutory mandate. Banan destroyed critical evidence that could prove just how improper ADG's actions were. The Nation submits that the Court may, and should, find each of the adverse evidentiary inferences set forth in the Nation's Motion, or issue any other sanctions the Court may find warranted.[8]

Finally, citing *Marceau v. IIBEW, Local 1269*, 618 F. Supp. 2d 1127 (D. Ariz. 2009), Bergin recommends at least an evidentiary hearing. But in *Marceau*, "the nature of the destroyed documents" was at issue, *i.e.*, whether the documents were originals or copies, and whether they were sales records, contracts, or customer claims. *Id.* at 1176-77. Here, there is no dispute over the nature of the destroyed notes. In essence, Bergin recommends an evidentiary hearing to test Banan's credibility on whether he intended to prejudice the Nation. But that is not the standard for willful spoliation. Moreover, a sanction is warranted precisely because the Nation cannot effectively cross-examine Banan about the content of his notes when they no longer exist. No evidentiary hearing is necessary to find willful spoliation and issue an appropriate sanction.

---

[8] Bergin argues that striking his unclean hands defense would be inappropriate because the spoliation was unrelated to the fraud allegations that form the basis for his unclean hands defense. *See* Opp. 14. This argument misses the mark. The Nation's unclean hands defense is that ADG has engaged in bad faith and unfounded legal efforts to block the WVR at all costs. In fact, the spoliation relates directly to the allegations of unfair treatment detailed in the complaint. Thus, at the very least, the Nation is entitled to have Bergin's unclean hands defense stricken. "The doctrine of unclean hands also can bar a defendant from asserting an equitable defense." *Seller Agency v. Kennedy Center for Real Estate*, 621 F.3d 981, 986 (9th Cir. 2010). Indeed, it is Bergin's own reliance on conduct that supposedly occurred fifteen years ago as a defense to the Nation's preemption claim that fails the relatedness standard in the authority he cites, not the Nation's efforts to show that ADG's legal positions are the product of bad faith and improper influences.

1  DATED this 14th day of October, 2016.

                               STEPTOE & JOHNSON LLP

                               /s/    Karl M. Tilleman
                                  Paul K. Charlton
                                  Karl M. Tilleman
                                  Erin N. Bass
                                  201 E. Washington Street
                                  Suite 1600
                                  Phoenix, AZ  85004
                                  (602) 257-5200


                               STEPTOE & JOHNSON LLP
                               Jennifer B. Bonneville
                               633 West Fifth Street, Suite 700
                               Los Angeles, CA 90071
                               (Admitted Pro Hac Vice)



                               WILMER CUTLER PICKERING
                               HALE AND DORR LLP
                               Danielle Spinelli
                               Kelly P. Dunbar
                               Sonya L. Lebsack
                               Kevin M. Lamb
                               1875 Pennsylvania Avenue, N.W.
                               Washington, D.C. 20006
                               (Admitted Pro Hac Vice)


                               TOHONO O'ODHAM NATION
                               Laura Berglan
                               P.O. Box 830
                               Sells, AZ  85634

                               *Counsel for Plaintiff Tohono O'odham Nation*

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2016, I caused the foregoing document to be served via email upon the following persons to the addresses noted below:

Patrick Irvine
Douglas C. Northup
Carrie Pixler Ryerson
Fennemore Craig, P.C.
2394 E. Camelback Road, Suite 600
Phoenix, AZ  85016-3429

Matthew D. McGill
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue N.W.
Washington, DC  20036-5306

Matthew A. Hoffman
Timothy W. Loose
Andrew G. Pappas
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

*Attorneys for Defendant*
*Director Daniel Bergin*
*Arizona Department of Gaming*

/s/   Beth Hardin

9615323