Laura Berglan, Acting Attorney General (022120)
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, Arizona 85634
(520) 383-3410
laura.berglan@tonation-nsn.gov

Seth P. Waxman (*Pro hac vice*)
Danielle Spinelli (*Pro hac vice*)
Kelly P. Dunbar (*Pro hac vice*)
Sonya L. Lebsack (*Pro hac vice*)
Kevin M. Lamb (*Pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000
seth.waxman@wilmerhale.com
danielle.spinelli@wilmerhale.com
kelly.dunbar@wilmerhale.com
sonya.lebsack@wilmerhale.com
kevin.lamb@wilmerhale.com

*Counsel for Plaintiff Tohono O'odham Nation*

COUNSEL CONTINUED ON FOLLOWING PAGE

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The Tohono O'odham Nation,<br><br>                    Plaintiff,<br>     v.<br><br>Douglas Ducey, Governor of Arizona; Mark Brnovich, Arizona Attorney General; and Daniel Bergin, Director, Arizona Department of Gaming, in their official capacities,<br><br>                    Defendants. | Case No. 2:15-cv-01135-PHX-DGC<br><br>**THE TOHONO O'ODHAM NATION'S MOTION FOR RECONSIDERATION**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Paul K. Charlton (012449)
Karl M. Tilleman (013435)
Erin N. Bass (030104)
STEPTOE & JOHNSON LLP
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004
(602) 257-5200
pcharlton@steptoe.com
ktilleman@steptoe.com
ebass@steptoe.com

Jennifer B. Bonneville (*Pro hac vice*)
STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 700
Los Angeles, California 90071
(213) 439-9400
jbonnevi@steptoe.com

*Counsel for Plaintiff Tohono O'odham Nation*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT ............................................................................................................................ 2

I.     THE STATE KNEW OF THE RELEVANT "MISREPRESENTATION" IN JANUARY 2009 ................................................................................................. 3

II.     BERGIN'S "SECRET PLAN" ALLEGATIONS DO NOT ALTER THIS ANALYSIS ................................................................................................................ 8

CONCLUSION ....................................................................................................................... 12

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Arizona v. Files*,
   2013 WL 3379363 (D. Ariz. July 8, 2013) .......................................................................... 3

*Arizona v. Tohono O'odham Nation*,
   944 F. Supp. 2d 748 (D. Ariz. 2013) .................................................................................. 4

*Banque Arabe et Internationale Investissement v. Maryland National Bank*,
   850 F. Supp. 1199 (S.D.N.Y. 1994) ................................................................................. 12

*Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*,
   597 F.3d 1374 (Fed. Cir. 2010) .......................................................................................... 3

*Gabelli v. SEC*,
   133 S. Ct. 1216 (2013) ....................................................................................................... 7

*Gladden v. Guyer*,
   426 P.2d 953 (Colo. 1967) ................................................................................................. 9

*Gotham Partners L.P. v. Hallwood Realty Partners, L.P.*,
   817 A.2d 160 (Del. 2002) ................................................................................................ 12

*Grymes v. Sanders*,
   93 U.S. 55 (1876) ............................................................................................................... 3

*Heidtman Steel Products v. Compuware Corp.*,
   178 F. Supp. 2d 862 (N.D. Ohio 2001) ............................................................................ 11

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946) ....................................................................................................... 3, 6

*In re Schick*,
   232 B.R. 589 (Bankr. S.D.N.Y. 1999) ............................................................................. 12

*Johns Hopkins University v. Hutton*,
   488 F.2d 912 (4th Cir. 1973) ............................................................................................ 12

*Kona Enterprises, Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) ............................................................................................ 11

*Loza v. American Heritage Life Insurance Co.*,
   2012 WL 1019033 (D. Ariz. Mar. 26, 2012) ................................................................... 12

*Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*,
   841 F.2d 918 (9th Cir. 1988) ............................................................................................ 11

*Richardson v. Lowe*,
    149 F. 625 (8th Cir. 1906) .......................................................................................... 9

*School District No. 1J, Multnomah County v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ........................................................................................ 2

*Shappirio v. Goldberg*,
    192 U.S. 232 (1904) ................................................................................................... 3

*Smith v. Barrow Neurological Institute*,
    2013 WL 221507 (D. Ariz. Jan. 18, 2013) ................................................................ 2

*Smith v. Clark County School District*,
    727 F.3d 950 (9th Cir. 2013) ..................................................................................... 2

*Swenson v. Raumin*,
    583 N.W.2d 102 (N.D. 1998) .................................................................................. 12

*U.S. Plywood Corp v. Hudson Lumber Co*,
    139 F. Supp. 19 (S.D.N.Y. 1955) .............................................................................. 9

*Wolin v. Zenith Homes, Inc.*,
    146 A.2d 197 (Md. 1959) .......................................................................................... 9

*Wood v. Carpenter*,
    101 U.S. 135 (1879) ......................................................................................... 3, 7, 12

**DOCKETED CASES**

*Gila River Indian Community v. United States*,
    No. 10-cv-1993 (D. Ariz.) ....................................................................................... 10

**RULES**

Federal Rule of Civil Procedure 54 ..................................................................................... 1, 2

Local Rule 7.2 .................................................................................................................... 1, 11

**OTHER AUTHORITIES**

2 *Black on Rescission & Cancellation* §591 (1916) ............................................................... 9

2009 BIA FOIA Log, Entry No. 9275, *available at* https://www.bia.gov/
    cs/groups/xasia/ documents/text/idc-022712.pdf ................................................... 11

7 *Corbin on Contracts* §28.23 (2016) ..................................................................................... 6

Kornman, Sheryl, *Tohono O'odham Plan Glendale-Area Casino-Resort*, Tucson Citizen, Jan. 30, 2009, *available at* http://tucsoncitizen.com/morgue/2009/01/30/108962-tohono-o-odham-plan-glendale-area-casino-resort ................................................................................................................................. 10

*Restatement (Second) of Contracts* (1981)
  §7 ............................................................................................................................ 7, 8
  §85 ............................................................................................................................... 7
  §93 ............................................................................................................................... 7
  §159 ............................................................................................................. 1, 3, 4, 5, 6
  §380 .................................................................................................. 1, 3, 4, 6, 7, 8, 10, 11
  §381 ................................................................................................................. 4, 6, 11, 12

Watters, Carrie, *Tribe reveals plans to use county island for casino*, Arizona Republic, Jan. 31, 2009 ................................................................................................... 10

Pursuant to Federal Rule of Civil Procedure 54(b) and Local Rule 7.2(g), the Tohono O'odham Nation (the "Nation") moves for reconsideration of a single, but potentially dispositive, issue addressed by this Court in its Order (Doc. 291) denying the Nation's motion for summary judgment. Although reconsideration is granted sparingly, the Nation respectfully submits that it is appropriate here. The Nation does not seek reconsideration to reargue issues already briefed, but to correct errors regarding an issue first raised by the Court in its Order without the benefit of adversarial presentation by the parties.

Specifically, the Court denied summary judgment to the Nation on its ratification defense, reasoning that "the Nation has not established … when the State learned of the Nation's fraud." Order 4. As the Court noted, this is an issue Bergin did "not address" in his opposition, and he "ma[de] no argument on this point." *Id.* at 5. The Court's *sua sponte* resolution of the issue rests on legal and factual errors that warrant reconsideration.

The *Restatement (Second) of Contracts* provides that once a party knows that a representation on which it relied in entering into a contract is "not in accord with the facts"—that is, that the party relied on a "misrepresentation"—its subsequent ratification of the contract terminates any right of rescission. *Rest. (2d) Contracts* §§159, 380(2) (1981). To be put to its choice to affirm or disaffirm a contract, the party is required to know only that the representation that motivated it to enter the contract was false. The party need not know all the facts necessary to prove a claim of fraud. Here, the essence of the State's fraudulent inducement claim has always been that it entered into the Compact because it believed, due to the Nation's alleged misrepresentations or omissions, that the Nation would not game in the Phoenix area. And there is no dispute that, as of January 2009, the State actually knew that any representation, or inference the State drew from any representation or omission, that the Nation would not game in the Phoenix area was false. Under the *Restatement*, that was sufficient to trigger "the State's duty to act" (Order 4). And the State's subsequent decision to perform its regulatory obligations and to accept millions of dollars in revenue under the Compact ratified the Compact and bars the State from now seeking rescission.

The Court reasoned that "[t]he Nation's disclosure in 2009 of plans to open the WVR" did not trigger the State's duty to act because it did not demonstrate that the Nation had a "secret plan" to game in the Phoenix area during the Compact negotiations in 2001 and 2002.  Order 5.  That is incorrect for two independent reasons.  *First*, as a legal matter, proof of the alleged "secret plan" was not necessary to put the State to its choice.  As soon as the State knew that the "basic assumption" allegedly drawn from the Nation's representations or omissions—that the Nation would not game in Phoenix—was incorrect, the State had a sufficient basis to bring a rescission action.  Its subsequent ratification of the Compact foreclosed that option.

*Second*, as a factual matter, the State's "secret plan" allegation rests on the Nation's acquisition of the WVR property in August 2003 through a wholly owned company, Rainier Resources, Inc., and the Nation's failure to reveal its ownership of the property for several years afterward.  But the Nation disclosed those facts to the State in January 2009 when it met with the State, publicly announced plans for the WVR, and applied to have the WVR property taken into trust.  Indeed, the Nation's fee-to-trust application, which contained all the details of the acquisition, was available to the public by request under the Freedom of Information Act, and counsel for ADG not only requested a copy but also obtained one directly from the Nation.  Had Bergin disputed the sufficiency of the State's knowledge in opposing summary judgment, the Nation would have made these points in reply.  Bergin did not raise any such argument because there is no genuine dispute of material fact that, by early 2009, the State knew everything it needed to know to seek rescission of the Compact.

## ARGUMENT

Under Rule 54(b), this Court may reconsider any order short of a final judgment.  *See Smith v. Barrow Neurological Inst.*, 2013 WL 221507, at *1 n.1 (D. Ariz. Jan. 18, 2013).  "It is common for … courts to reconsider and change positions when they conclude that they made a mistake.  This is routine in judging, and there is nothing odd or improper about it." *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).  "Reconsideration is appropriate if the district court … committed clear error."  *School Dist. No. 1J, Multnomah*

2

1  *Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Arizona v. Files*, 2013 WL 3379363,
2  at *1 (D. Ariz. July 8, 2013).  Reconsideration may also be warranted in "other, highly
3  unusual, circumstances," *ACandS*, 5 F.3d at 1263, such as "where the 'Court … has made a
4  decision outside of the adversarial issues presented to the Court by the parties, or has made
5  an error not of reasoning, but of apprehension,'" *Delaware Valley Floral Grp., Inc. v. Shaw
6  Rose Nets, LLC*, 597 F.3d 1374, 1384 (Fed. Cir. 2010).  Those standards are met here.

## I. THE STATE KNEW OF THE RELEVANT "MISREPRESENTATION" IN JANUARY 2009

Under §380(2) of the *Restatement*, a party loses the right to rescind a contract on the ground of material or fraudulent misrepresentation if, after the party "knows of the misrepresentation" that allegedly induced it to enter the contract, it acts "in a manner inconsistent with disaffirmance."  *Rest. (2d) Contracts* §380(2).  A "misrepresentation" is "an assertion that is not in accord with the facts," *id*. §159—whether the assertion is express or inferred from other statements, omissions, or conduct, *id*. §159 cmt. a.  Once a party has knowledge of "the facts" inconsistent with the express or implied representation that allegedly led it to enter the contract, the party "knows of the misrepresentation."  *Id*. §380(2).[1]

---

[1] The Court noted that, under §380, the "[a]ctual knowledge … required for fraudulent misrepresentation" differs from the "constructive knowledge" that "is sufficient … for non-fraudulent misrepresentation."  Order 4.  That difference simply reflects a centuries-old equitable principle that, while a party who fails to make a reasonable investigation of the facts generally bears the risk of its inaction, a party whose ignorance is procured by fraud is relieved of the consequences of inaction until the facts concealed by the fraud become known to the party.  *Compare Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (recognizing "old chancery rule" that fraud claim does not accrue "until the fraud is discovered"), *and Wood v. Carpenter*, 101 U.S. 135, 141 (1879) (fraud that "arrest[s] the running of the statute [of limitations] must be one that is secret and concealed"), *with Shappirio v. Goldberg*, 192 U.S. 232, 241-243 (1904) (party must choose to affirm or disaffirm "upon the discovery of the fraud," once "the means of knowledge are open and at hand, or furnished to [the party] or his agent"), *and Grymes v. Sanders*, 93 U.S. 55, 61-62 (1876) (duty to act arises "upon the discovery of the facts").  The difference is irrelevant here, however.  Whether or not a party alleges that a misrepresentation was fraudulent, the party's duty to affirm or disaffirm is triggered by knowledge of "the misrepresentation," or "the facts" "not in accord with" the express or implied "assertion" that led the party to enter

3

|   |   |
|---|---|
| 1 | Here, the State had actual, not merely constructive, knowledge of the relevant |
| 2 | "misrepresentation" in January 2009.  Although Bergin and the State have characterized their |
| 3 | fraudulent misrepresentation claim in various ways—as based on "assurances" about the |
| 4 | location of an unbuilt gaming facility (DSOF ¶¶16, 33 (Doc. 274)); expressions of "then- |
| 5 | present intentions" (*id.* ¶12); omissions (*id*. ¶8; Am. Countercl. ¶¶31, 33, 99, 101-102 (Doc. |
| 6 | 96)); or failures to "correct" (Am. Countercl. ¶33; DSOF ¶¶16, 31-32)—the gravamen of |
| 7 | each of those theories is the same:  "[T]he Nation … necessarily represent[ed] … it would |
| 8 | not conduct Class III gaming … in the Phoenix metropolitan area."  Am. Countercl. ¶7. |
| 9 | Indeed, the one constant throughout this litigation and *TON I* has been the State's |
| 10 | unwavering claim that "no new … casinos … in [Phoenix]" was a "basic assumption" of the |
| 11 | Compact (Am. Countercl. ¶32; *TON I*, Am. Compl. ¶33 (No. 11-cv-296-DGC, Doc. 26)); |
| 12 | that "the location of gaming facilities [was] an 'essential, key deal point'" (SUMF/COSF ¶25 |
| 13 | (Docs. 254, 274)); that the issue "was so important that the Governor considered it 'nuclear'" |
| 14 | (*Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 765 (D. Ariz. 2013)); and that the |
| 15 | State would not have entered into the Compact had it known that this "basic assumption" |
| 16 | was false (*e.g.*, Am. Countercl. ¶¶32, 48, 50, 90, 102; *TON I*, Am. Compl. ¶¶7-8, 33, 45, 47, |
| 17 | 115).[2] |
| 18 | It is beyond dispute that, as of January 2009, when the Nation announced its intent to |
| 19 | conduct Class III gaming at the WVR and met with the State to discuss the WVR project |

---

the contract.  *Rest. (2d) Contracts* §159, 380(2), 381(2).  And here, in January 2009, after the Nation announced its plans for the WVR, the State possessed *actual* knowledge of "the facts" "not in accord with" the "basic assumption" the State claims was embodied in the Nation's representations or omissions and induced the State to enter the Compact.

[2] The Court noted that "assertion[s]" about what "the State … understood" to be the case under the Compact "could be nothing more than an allegation that the Nation was breaching the Compact" (Order 6).  But such assertions have always been the basis for the State's fraud allegations as well.  The substantial overlap between the State's theories regarding what the Compact prohibited and its theories regarding the Nation's alleged fraud merely highlights that the State learned the factual basis for both its Compact interpretation and its fraud claims at the same time.  *See infra* p.9-10.

4

(SUMF/COSF ¶¶3-5), the State knew that any alleged representation that the Nation would not game in Phoenix—or any inference the State drew to that effect based on the Nation's alleged misrepresentations or omissions—was "not in accord with the facts," *Rest. (2d) Contracts* §159. In other words, the State knew that its supposed "'basic assumption' about where the Nation's fourth gaming facility would go" (SJ Opp. 17 (Doc. 273)), which the State claims led it to enter the Compact, was wrong. Indeed, Bergin has affirmatively alleged that the Nation's 2009 announcement upset the "compact-based" tribal-state relationships precisely because it upended this "basic assumption of the State" during the negotiations. Am. Countercl. ¶¶11, 32.

Bergin's failure to dispute the sufficiency of the State's knowledge in 2009 in his opposition was not a careless oversight. To the contrary, his opposition confirms that the State knew of the basis for its fraud claims, and could have sought to rescind the Compact, in January 2009. In attempting to justify the State's ratification of the Compact, Bergin argued that "[t]he State did not know that the Nation owned the [WVR property] until the Nation announced that fact in January 2009," and rather than "take the drastic step of unilaterally voiding the Compact in its entirety *as soon as the Nation revealed what it had been concealing*," the State "took responsible steps" "*[a]fter the Nation revealed its fraud to the State*." SJ Opp. 10 (citing CSOF ¶3), 11 (emphasis added). Bergin thus agrees that the State knew of the relevant "misrepresentation"—and, indeed, knew of the supposed "fraud"— in January 2009.

Bergin's position that the Nation "revealed its fraud to the State" in January 2009 (SJ Opp. 11) is not surprising because that is the State's and his own testimony in this case. For example, one of the State's lead negotiators testified that, when "[the Nation] announced [the WVR] project," he thought, "'[S]omebody lied to us.'" Bielecki Tr. 155:7-156:21 (Lebsack Suppl. Ex. 1). Testifying in a 30(b)(6) capacity, Bergin himself stated that he became "aware of the conduct of the Nation" that he contends is the "basis for not honoring" the Compact "shortly after [he] started at [ADG] in 2009," ADG 30(b)(6) Tr. 22:15-21, and that this allegedly fraudulent "conduct" included "concealment of the fact [the Nation] used a

5

1   shell corporation to acquire the property … in 2003," *id*. 24:12-22 (Lebsack Suppl. Ex. 2);
2   *see also id*. 23:4-6, 25:14-19 ("I've been aware of a variety of different issues … [since] I
3   first heard that they were going to take this land into trust … to conduct gaming in the
4   Phoenix metropolitan area contrary to the exact things they had promised[.]").

5          In short, there is no genuine dispute of fact that the State was aware in January 2009
6   of the relevant "misrepresentation."  The Court's contrary conclusion appears to have been
7   based on the view that §380 requires evidence that the State "actually knew of the Nation's
8   *fraud*."  Order 4 (emphasis added).  That misreads the *Restatement*.  Under §380(2), the only
9   knowledge required to put a party to its choice to ratify or rescind is "know[ledge] of the
10  *misrepresentation*."  *Rest. (2d) Contracts* §380(2) (emphasis added); 7 *Corbin on Contracts*
11  § 28.23 (2016) ("ratification … may occur by actions inconsistent with disaffirmance after
12  acquisition of facts that give notice that a misrepresentation has been made" (citing §§380,
13  381)).  A "misrepresentation" is not the same thing as "fraud," as evidenced by the fact that
14  there are both fraudulent and *non*-fraudulent misrepresentations.  Here, the State was plainly
15  aware of the alleged "misrepresentation" underlying its fraud claim as of January 2009:  By
16  that time, the State actually knew that any statement the Nation would not game in Phoenix,
17  or any such inference the State drew from the Nation's alleged representations or omissions,
18  was not in "accord with the facts," *Rest. (2d) Contracts* §159, and that the "'basic
19  assumption'" (SJ Opp. 17) the State claims induced it to enter the Compact was wrong.  That
20  was sufficient to trigger the State's obligation to affirm or rescind the Compact.

21         A different standard—one that requires actual knowledge not merely of a
22  "misrepresentation," but of all the facts necessary to prove a "fraud"—cannot be reconciled
23  with the text of §380(2).  Nor is it consistent with Supreme Court precedent as to when
24  "fraud" is deemed discovered for purposes of the accrual of a party's claim.  In general,
25  under the so-called "discovery rule," the limitations period on a fraud action is tolled so long
26  as the party "injured by fraud … 'remains in ignorance of [the fraud] without any fault or
27  want of diligence or care on his part.'"  *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).
28  This "centuries-old" rule of equity exists "to preserve the claims of victims who do not know

they are injured and who reasonably do not inquire as to any injury." *Gabelli v. SEC*, 133 S. Ct. 1216, 1221, 1222 (2013).  Once "the injury is or reasonably could have been discovered," however, the excuse for delay expires, and the clock begins to run. *Id*. at 1222.  Thus, where there is "'notice enough to excite attention and put the party on his guard and call for inquiry,'" and where "he ha[s] the means of discovery in his power," there is a "'presumption … [of] actual knowledge'" of any fraud. *Wood v. Carpenter*, 101 U.S. 135, 141 (1879).  Under that rule, Bergin's claim for rescission on account of alleged fraudulent misrepresentation inarguably accrued in January 2009.

The *Restatement* does not dictate a different result for ratification.  Rather, as common sense would suggest, once a party's claim for rescission accrues, the party can forfeit that claim through ratification.  As the *Restatement* makes clear, ratification is in the nature of "a promise to perform" an otherwise voidable contract, *Rest. (2d) Contracts*. §380 cmt. a, and such a promise is "binding" if the party making it "knew or had reason to know the essential facts," *id.* §93—here, the fact that the Nation intended to game in Phoenix, contrary to the State's purported "basic assumption."  No knowledge beyond that was required for the State's undisputed acceptance of millions of dollars in gaming revenue since January 2009 to constitute a "binding" and "enforceable" ratification.  *Id*. §§7 & cmt.e, 85 & cmt. a, 93 illus. 1, 380(2) & cmt. a; *see* SUMF/COSF ¶¶6-9.

A rule requiring "actual knowledge of fraud" (Order 4), as opposed to the relevant "misrepresentation," would lead to inequitable and illogical results.  Under that rule, a party like the State who for years has known facts sufficient to permit it to bring a rescission action—and to start the running of the statute of limitations on a fraudulent inducement claim—could reap a contract's benefits, yet reserve the right to rescind, if it does not yet have proof of the purported fraud.  That is precisely what the ratification doctrine is designed to prevent.  Meanwhile, a party like the Nation who disputes that any fraud occurred would be unable to invoke a ratification defense prior to trial, since the State may be deemed even then to lack "actual knowledge" of the alleged fraud.  That would render the ratification defense largely meaningless: Ratification exists "to extinguish" even meritorious allegations

7

of fraud, *Rest. (2d) Contracts* §7, and the defense is superfluous if there is no finding of fraud. That is why, in the case of fraudulent misrepresentations, the *Restatement* ties the duty to affirm or disaffirm to actual knowledge of the "misrepresentation," a standard that is plainly satisfied here.[3]

## II.   BERGIN'S "SECRET PLAN" ALLEGATIONS DO NOT ALTER THIS ANALYSIS

The ratification analysis set out above is not affected by the Court's conclusion that there is no evidence the State knew in 2009 that "the Nation … was planning in 2001 and 2002 to open a casino in the Phoenix area." Order 5. That is so for two independent reasons.

*First*, the State's "secret plan" allegations have never been a stand-alone basis for a fraud claim. Rather, the "secret plan" is part and parcel of the State's longstanding theory that, through various statements and omissions, "the Nation was necessarily representing that it would not conduct Class III gaming on any lands in the Phoenix metropolitan area." Am. Countercl. ¶7. That is the relevant "misrepresentation" for purposes of *Restatement* §380. The State and a number of its witnesses have long claimed that the Nation made promises, assurances, or commitments not to game in Phoenix—and that the State understood the Nation's alleged representations or omissions to mean that the Nation would not game in Phoenix. *See, e.g.*, *id*. ¶¶6-9 (due to its alleged misrepresentations or omissions "[t]he Nation has an obligation not to open any new Class III gaming facilities in the Phoenix

---

[3] A rule requiring actual knowledge of fraud rather than the alleged misrepresentation would also lead to cases in which ratification operates differently on the same facts depending on whether a known misrepresentation is alleged to be fraudulent. For example, a party that continues to accept contractual benefits years after acquiring actual knowledge of facts that contradict a prior representation it relied on in entering into the contract would have ratified the contract for purposes of material or non-fraudulent misrepresentation. But the party would not have ratified the contract for purposes of *fraudulent* misrepresentation so long as "actual knowledge of fraud" (Order 4) is lacking—even though the facts known are sufficient to give rise to the fraud claim itself and any suit for rescission. Indeed, this anomalous consequence of the Court's reasoning applies fully here, where Bergin has brought both types of claims. *See* Am. Countercl. ¶¶87-108. Thus, even if the Court were to hew to a rule requiring actual knowledge of fraud for fraudulent inducement claims, the Nation should be entitled, at a minimum, to summary judgment on Bergin's non-fraudulent material misrepresentation and omission theories.

metropolitan area"); DSOF ¶¶16-19, 33-34 (same); *TON I* State SUMF ¶¶126-127 (same) (Bass Ex. 29); Bielecki Decl. ¶6 ("The Governor believed, based on the Nation's conduct and representations … that the Nation was not going to build a new gaming facility in the Phoenix metropolitan area") (Ryerson Ex. 21).  The State's knowledge in January 2009 that any such representation or inference was false triggered the State's duty to act.  And the State's ratification of the Compact upon learning of that misrepresentation extended to all "circumstances connected with the same false and fraudulent misrepresentations." *Wolin v. Zenith Homes, Inc.*, 146 A.2d 197, 202-203 (Md. 1959) (where a party ratifies in the face of "discovery of false and fraudulent misrepresentations," ratification is complete, and the party "could not thereafter repudiate the transaction even though [it] should afterwards discover other circumstances connected with the same false and fraudulent misrepresentations"); *see also Richardson v. Lowe*, 149 F. 625, 631 (8th Cir. 1906) ("It is not requisite that the defrauded party shall be acquainted with all the evidence constituting the fraud before the duty to act by way of rescission arises."); *U.S. Plywood Corp. v. Hudson Lumber Co.*, 139 F. Supp. 19, 21 (S.D.N.Y. 1955); *Gladden v. Guyer*, 426 P.2d 953, 955 (Colo. 1967); 2 *Black on Rescission & Cancellation* §591, at 1377-1378 (1916).

*Second*, the State has long known the facts on which its "secret plan" allegations are based.  In its original complaint in *TON I*—seeking to enforce the Compact, before any claim for rescission had been raised—the State alleged that the Nation had a "secret plan" during the Compact negotiations to game in the Phoenix area.  It based that claim on the facts that (1) "[w]ithin months of the passage of Proposition 202," the Nation used a wholly owned entity, Rainier Resources, Inc., to acquire the WVR property—allegedly, "to conceal [the Nation's] ownership" from the State—and (2) that the Nation then "kept its ownership … secret for more than five years" and only caused Rainier Resources to convey the property to the Nation itself shortly before the January 2009 announcement.  *TON I*, Compl. ¶¶37-41 (No. 11-cv-296-DGC, Doc. 1).  Those were the same material facts the State relied upon when it amended its complaint to include a rescission claim.  *TON I*, Am. Compl. ¶¶48, 54-57.  And the "secret plan" allegations in Bergin's counterclaims in this suit rest on precisely

9

1  the same facts. *See* Am. Countercl. ¶¶61-64; *see also* ADG 30(b)(6) Tr. 24:12-22
2  (identifying as disqualifying conduct that the Nation "used a shell corporation to acquire the
3  property" in 2003 and then "continued [to] conceal[]" the acquisition).

4        The problem for Bergin, and presumably the reason that Bergin did not dispute the
5  sufficiency of the State's knowledge under §380, is that the State knew *all* of those facts in
6  or around January 2009 because the Nation—consistent with its view that it acquired the
7  property using a standard commercial practice (*see* SUMF ¶54)—forthrightly disclosed
8  them. The Nation's January 2009 Council Resolution, for example, stated that the WVR
9  property was acquired in 2003, *see* SUMF ¶¶3-4; TON LCR No. 09-049 (Jan. 27, 2009)
10 (Bass Ex. 4), and the date of the acquisition was widely reported in the media.[4] Moreover,
11 the Nation's contemporaneous fee-to-trust application, which the Nation also discussed with
12 the State, *see* SUMF ¶3; Quigley Decl. ¶29 (Doc. 265); Norris Decl. ¶4 (Doc. 270), revealed
13 *all* the details of the WVR acquisition, including that the property was "purchased on August
14 31, 2003" and that its purchase was effected "through Ra[i]nier Resources, Incorporated …,
15 a Delaware corporation formed on March 12, 2003 with the Nation as its original and sole
16 shareholder." AR4366 (Lebsack Suppl. Ex. 3).[5] The application also made clear that the
17 WVR property was "conveyed … to the Nation" on January 28, 2009, just days before the
18 Nation's announcement. *Id.* Supporting exhibits to the application included the land
19 conveyance documents and relevant Council resolutions. *See* AR4429-4445.

---

[4] *See, e.g.*, Sheryl Kornman, *Tohono O'odham Plan Glendale-Area Casino-Resort*, Tucson Citizen, Jan. 30, 2009, at 1A ("The Nation purchased the 135-acre Maricopa County parcel in 2003."), *available at* http://tucsoncitizen.com/morgue/2009/01/30/108962-tohono-o-odham-plan-glendale-area-casino-resort; Carrie Watters, *Tribe Reveals Plan To Use County Island for Casino*, Arizona Republic, Jan. 31, 2009, at 8 ("The tribe, which purchased the land in 2003, just filed its [trust] application with the federal government.") (Lebsack Suppl. Ex. 6).

[5] All citations to the Nation's trust application refer to page numbers of the administrative record submitted to this Court by the government in *Gila River Indian Cmty. v. United States*, No. 10-cv-1993 (filed Nov. 17, 2010). For the convenience of the Court, the relevant pages are attached to this filing through a supporting declaration.

10

The Nation's trust application was available to the public by request under the Freedom of Information Act, and several interested parties—including the Arizona Department of Gaming, through its counsel Jim Stipe—obtained a copy shortly after the Nation's announcement.  *See* 2009 BIA FOIA Log, Entry No. 9275, *available at* https://www.bia.gov/cs/groups/xasia/ documents/text/idc-022712.pdf; 3/4/09 Letter from BIA (Lebsack Suppl. Ex. 4).  In addition, the Nation mailed an electronic copy to Mr. Stipe in February 2009.  *See* 2/23/09 Letter from Mr. Daughety (Lebsack Suppl. Ex. 5).  Thus, the facts supporting Bergin's "secret plan" allegations were disclosed to the State in or around January 2009.  At that point, the State had actual knowledge of everything it needed to know to bring its fraud claim—which is presumably why Bergin never disputed the State's knowledge.

Accordingly, reconsideration of this issue is warranted.  The Nation could not "reasonably have … raised [the issue] earlier in the litigation," *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); L.R. Civ. 7.2(g)(1); *cf. Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-926 (9th Cir. 1988), for at least three reasons: (1) Bergin did not dispute the facts establishing the State's knowledge in his opposition; (2) he conceded that, in the State's view, the Nation "revealed its fraud to the State" in January 2009 (SJ Opp. 10-11); and (3) he never argued that the State did not know the facts relevant to its "secret plan" allegations in 2009.[6]  Had Bergin made any such argument in his

---

[6] The Court's decision to raise *sua sponte* the issue of "when the State knew of the alleged fraud" was also based on the Nation's "initial responsibility" as the movant to "demonstrate the absence of a genuine issue of material fact."  Order 5.  But the State's knowledge is not only part of the Nation's ratification defense; it is also an essential element of Bergin's rescission claim on which *he* bears the burden of proof.  *See* SJ Reply 2-3 & n.3 (Doc. 283) ("the State's rescission claim in *TON I* came too late," and "'[p]romptness is an element of a *prima facie* rescission action,' on which the State 'bears the burden of proof'").  The law on this point is well-settled.  The knowledge required for ratification is the same knowledge that triggers the duty to act without delay.  *See Rest. (2d) Contracts* §§380(2), 381(2).  Under federal common law, as in "[a]lmost all other jurisdictions," *Heidtman Steel Prod. v. Compuware Corp.*, 178 F. Supp. 2d 862, 864-865 (N.D. Ohio 2001) (collecting authority), promptness "is an element of [Bergin's] case, and the burden is upon [him] to

11

1  opposition, the Nation would have made these points and identified this supporting evidence
2  in its reply.  Basic principles of fairness and efficiency dictate that this evidence should be
3  considered now, before the Nation, Bergin, and the Court face the heavy burdens of a trial.
4  That is particularly true given that "[t]he Court might [otherwise] agree" "that the State
5  ratified the Compact by accepting benefits and performing obligations under the Compact for
6  some 27 months after it learned of the Nation's alleged fraud, and thereby lost its right to
7  rescind."  Order 4.

## CONCLUSION

The Court should grant the Nation's motion for reconsideration and, upon reconsideration, should grant the Nation's motion for summary judgment.

---

show that he acted promptly in seeking rescission." *Johns Hopkins Univ. v. Hutton,* 488 F.2d 912, 916 n.12 (4th Cir. 1973); *see also Banque Arabe et Internationale Investissement v. Maryland Nat'l Bank,* 850 F. Supp. 1199, 1211 (S.D.N.Y. 1994); *In re Schick*, 232 B.R. 589, 596 (Bankr. S.D.N.Y. 1999); *Swenson v. Raumin*, 583 N.W.2d 102, 107 (N.D. 1998); *Gotham Partners L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 174 (Del. 2002) ("'[i]t is the plaintiff's burden to prove promptness, not the defendant's to prove delay'"). To establish the element of promptness, Bergin must necessarily show when the State "kn[e]w of the misrepresentation," *Rest. (2d) Contracts* §381(2); otherwise, there is no benchmark from which to measure the State's "promptness."  Indeed, delayed discovery of facts supporting a fraud claim must generally be pleaded. *Wood*, 101 U.S. at 140-141.  Yet the only relevant discovery date evident on the face of Bergin's pleadings is the Nation's January 2009 announcement.  *See* Am. Countercl. ¶¶11, 53, 65-67.  In these circumstances—where Bergin (1) pleaded and argued that the State discovered the relevant misrepresentation on the same date the Nation identified, (2) bears the burden on this same fact as part of his prima facie case, and (3) did not genuinely dispute the Nation's showing—the State's knowledge as of early 2009 should be deemed admitted for summary judgment purposes. SUMF/COSF ¶¶3, 5; *see Loza v. Am. Heritage Life Ins. Co.*, 2012 WL 1019033, at *7 n.2 (D. Ariz. Mar. 26, 2012) ("[T]he Court will treat … failure to dispute th[e] fact as an admission.").

12

| | |
|---|---|
| Dated: January 3, 2017 | Respectfully submitted, |
| | /s/ Danielle Spinelli |
| Paul K. Charlton (012449) | Laura Berglan, Acting Attorney General (022120) |
| Karl M. Tilleman (013435) | Office of Attorney General |
| Erin N. Bass (030104) | TOHONO O'ODHAM NATION |
| STEPTOE & JOHNSON LLC | P.O. Box 830 |
| 201 E. Washington Street, Suite 1600 | Sells, Arizona 85634 |
| Phoenix, Arizona 85004 | (520) 383-3410 |
| (602) 257-5200 | laura.berglan@tonation-nsn.gov |
| pcharlton@steptoe.com | |
| ktilleman@steptoe.com | Seth P. Waxman (*Pro hac vice*) |
| ebass@steptoe.com | Danielle Spinelli (*Pro hac vice*) |
| | Kelly P. Dunbar (*Pro hac vice*) |
| Jennifer B. Bonneville (*Pro hac vice*) | Sonya L. Lebsack (*Pro hac vice*) |
| STEPTOE & JOHNSON LLP | Kevin M. Lamb (*Pro hac vice*) |
| 633 West Fifth Street, Suite 700 | WILMER CUTLER PICKERING |
| Los Angeles, California 90071 |    HALE AND DORR LLP |
| (213) 439-9400 | 1875 Pennsylvania Avenue, N.W. |
| jbonnevi@steptoe.com | Washington, D.C. 20006 |
| | (202) 663-6000 |
| | seth.waxman@wilmerhale.com |
| | danielle.spinelli@wilmerhale.com |
| | kelly.dunbar@wilmerhale.com |
| | sonya.lebsack@wilmerhale.com |
| | kevin.lamb@wilmerhale.com |
| | |
| | *Counsel for Plaintiff Tohono O'odham Nation* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of January, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, which will send a notice of filing to all counsel of record.

/s/ Danielle Spinelli

DANIELLE SPINELLI