# EXHIBIT 2

30(b)(6) of Arizona Department of Gaming - May 19, 2016
Director Daniel H. Bergin

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| THE TOHONO O'ODHAM NATION,  )  <br>                              )  <br>     Plaintiff,              )  <br>                              )  <br> v.                           ) Case No. 2:15-cv-01135-DGC  <br>                              )  <br> DOUGLAS DUCEY, Governor of   )  <br> Arizona; MARK BRNOVICH,      )  <br> Arizona Attorney General;    )  <br> and DANIEL BERGIN,           )  <br> Director, Arizona            )  <br> Department of Gaming, in     )  <br> their official capacities,   )  <br>                              )  <br>     Defendants.              )  <br> _____) | |

RULE 30(b)(6) DEPOSITION OF THE ARIZONA DEPARTMENT OF
GAMING, BY AND THROUGH DIRECTOR DANIEL H. BERGIN

Phoenix, Arizona

May 19, 2016

Prepared by:
Meri Coash, RMR, CRR
Certified Reporter
Certification No. 50327

**Coash & Coash, Inc.**
602-258-1440          www.coashandcoash.com

Case 2:15-cv-01135-DGC   Document 296-2   Filed 01/03/17   Page 3 of 5

The Tohono O'Odam Nation vs. Ducey
2:15-CV-01135-DGC
Director Daniel H. Bergin
30(b)(6) of Arizona Department of Gaming
May 19, 2016

09:23:31-09:24:56                                                Page 22

 1   limited exceptions is regulated gambling.  Regulated
 2   gambling, the very first part of the definition means
 3   "Gambling conducted in accordance with tribal-state gaming
 4   compact or otherwise in accordance with the requirements
 5   of the Indian gaming regulatory act," et cetera.  Without
 6   going through a whole bunch of other analysis, that means
 7   that if -- the implication is if gambling is being
 8   conducted outside of a regularly -- or, I'm sorry, a
 9   validly entered-into compact, then it would not fall
10   within the exceptions under Title 13 of regulated
11   gambling, which would suggest that if I were somehow even
12   able to verify compliance and thereby authorize gambling
13   at that site, I would be authorizing illegal gambling
14   under Arizona law.
15   Q.  Director Bergin, when did you become aware of the
16   conduct of the Nation that you contend -- the Department
17   contends -- let me finish my question -- the Department
18   contends is -- is the basis for not honoring the 2003
19   compact?
20   A.  Gosh, probably shortly after I started at the
21   Department of Gaming in 2009.
22   Q.  And have you learned anything since 2009 that --
23   Let me strike that.
24       What was it in 2009 that you -- you, as the
25   Department, had identified that requires under state law

09:25:18-09:27:08                                                Page 23

 1   that you not honor the 2003 compact?
 2       MR. NORTHUP: Object to form.
 3       THE WITNESS: I don't remember when all
 4   this --  I was also agency counsel.  So ever since the
 5   announcement was made that the Tribe took that land into
 6   trust, I've been aware of a variety of different issues.
 7       BY MR. TILLEMAN:
 8   Q.  Could you tell me what --  I want to know
 9   specifically what those issues are, what action or
10   nonaction the Nation has taken upon which you're relying
11   to refuse to -- refuse to abide by the compact.
12   A.  Well, there are a lot of instances, and I would
13   have to --  When did I first learn?  I don't remember
14   exactly when I first learned about all the details here.
15   There were a whole variety of things that I had learned
16   about over time, including overt statements made to state
17   negotiators and other tribal negotiators during the
18   negotiation; statements to the voters during the -- 2002;
19   newspaper articles, media reports, all saying that -- in
20   the run-up to Prop 202; testimony to the legislature in
21   connection with a bill prior to Prop 202.  Goodness
22   gracious, I probably have forgotten some of these, but off
23   the cuff, those are the ones that come to mind.
24   Q.  I am going to ask for a detailed list of conduct
25   that you're relying upon to not take action under the 2003

09:27:19-09:28:26                                                Page 24

 1   compact.  I do want a detailed --  You don't have to do it
 2   now.
 3   A.  Okay.
 4   Q.  As the deposition goes on, I'm going to come back
 5   to that and ask you to supplement it with anything you can
 6   think of --
 7   A.  Okay.  Okay.  I'll try to remember --
 8       MR. NORTHUP: Hang on.  You've got to let
 9   him finish his question.
10       THE WITNESS: Sure.  I thought . . .
11       BY MR. TILLEMAN:
12   Q.  Okay.  Is there any conduct that the Nation
13   allegedly -- I'll say that allegedly took --
14   A.  Uh-huh --
15   Q.  -- that provides the basis for your decision that
16   occurred after 2003?
17   A.  I think concealment of the fact that they used a
18   shell corporation to acquire the property -- I can't
19   remember when they bought the property.  If that was in
20   2003, that was also a part of it -- and the continued
21   concealment of what they had actually done while
22   representing a different thing.
23   Q.  Okay.  And then the Nation eventually went to the
24   Department of the Interior and asked the Department of
25   Interior to take this land into trust --

09:28:36-09:29:47                                                Page 25

 1   A.  Yes.
 2   Q.  -- and -- with the intention of possibly
 3   gaming -- Class III gaming occurring on the property.
 4   A.  Right.
 5   Q.  Do you know when that occurred?  An approximation
 6   will be fine.
 7   A.  I'm going to guess they actually did that in 2008
 8   or 2009.
 9   Q.  So you became aware at that point that in --
10   whenever that -- the Nation announced that publicly, that
11   in your view, the statements that the Nation had made in
12   negotiations with state negotiators and also to other
13   third parties were not accurate, were false?
14   A.  I hadn't done any actual analysis.  It was a
15   suspicion in 2009 when I first heard that they were going
16   to take this land into trust, which is one thing, but that
17   they were going to conduct gaming in the Phoenix
18   metropolitan area contrary to the exact things they had
19   promised otherwise.
20   Q.  And so were you aware of this conduct that you're
21   saying forms the basis for the --
22   A.  Right.
23   Q.  -- Department's position --
24   A.  Right.
25   Q.  -- here in 2013?

Case 2:15-cv-01135-DGC   Document 296-2   Filed 01/03/17   Page 4 of 5

| The Tohono O'Odam Nation vs. Ducey | Director Daniel H. Bergin | 30(b)(6) of Arizona Department of Gaming |
| --- | --- | --- |
| 2:15-CV-01135-DGC | | May 19, 2016 |

---

**09:30:01-09:30:56**  Page 26

1  A.  Some of it.  Not all of it.
2  Q.  And can you tell me what you were aware of in
3   2013?
4  A.  In 2000 -- I have to --  In 2013, I was the
5   deputy director for the agency.  I was aware of some of
6   the conduct and I cannot recall exactly which conduct --
7   it all conflates over time.  I cannot recall what I didn't
8   know at that time is what I should say.
9  Q.  If you were aware that there was conduct that
10   made the compact potentially invalid, in your view --  Is
11   that a proper statement?  It's not a valid --
12  A.  Not validly entered into.
13  Q.  Why did you renew it in 2013?
14  A.  Well, we didn't renew anything.  It was an
15   automatic renewal unless we did something.
16  Q.  Did you have the opportunity to take that action
17   to make sure it didn't renew?
18  A.  We could have, yes.  It would have caused the
19   notice of arbitration.
20  Q.  Why didn't you, if --
21  A.  Because we didn't know all the facts.
22  Q.  What didn't you know in 2013?
23  A.  I can't give you a clean answer on that.  I don't
24   remember.  I just told you I can't recall.
25  Q.  Okay.  So you were -- you became aware -- Let's

---

**09:31:11-09:32:15**  Page 27

1   just walk back on this.
2  A.  Okay.
3  Q.  You became aware when the Nation applied to have
4   the Department of the Interior take the land into trust?
5  A.  Correct.
6  Q.  At that point, whenever that happened, you were
7   aware of all of the alleged misstatements, truths,
8   omissions that the State had made in 2000 -- you say to
9   the negotiators and to third parties up and through 2002?
10      MR. NORTHUP: Object to form and foundation.
11      BY MR. TILLEMAN:
12  Q.  Correct?
13  A.  No.  I don't know exactly when I gained all this
14   information.  I knew some of it.  It was a suspicion, at
15   best, for me.
16  Q.  And when did you become aware that whatever the
17   suspicion was, was --
18  A.  When --
19  Q.  Hold on just a second.  I'm not done.
20      When did you become aware that your
21   suspicion was such that you needed to officially decline
22   to take action with respect to the West Valley Resort?
23  A.  When there were newspaper articles in late 2014
24   announcing that they were going to start constructing a
25   building in Glendale.

---

**09:33:54-09:35:33**  Page 28

1      MR. TILLEMAN: We're just grabbing an
2   exhibit, Director.
3      THE WITNESS: Sure.
4      MR. TILLEMAN: Number 6.
5      (Deposition Exhibit 6 was marked for
6   identification.)
7      THE WITNESS: What is this?  What's the date
8   of this?  Okay.
9      (Deposition Exhibit 7 was marked for
10   identification.)
11      BY MR. TILLEMAN:
12  Q.  Director Bergin, the reason that I have handed
13   you Exhibits 6 and 7 together --
14  A.  Okay.
15  Q.  -- is because, from what I can tell, Exhibit 7 is
16   your reaction to Exhibit 6.  So you can go ahead and take
17   a look at them in any order you want, but I would like you
18   to become familiar with both Mr. Waxman's letter to you on
19   February the 13th and your reaction to that letter, which
20   I think is contained in Exhibit 7, the email chain in
21   Exhibit 7 that you authored.
22  A.  Okay.
23  Q.  Have you also reviewed Mr. Waxman's letter to you
24   of February 13th?
25  A.  I've looked at it.

---

**09:37:04-09:38:19**  Page 29

1  Q.  Go ahead and familiarize yourself with it.
2  A.  Okay.  We'll be here awhile.
3  Q.  That's okay.  Take your time.
4  A.  Okay.  I've looked at the letter.
5  Q.  Okay.  Mr. Bergin, did you author the email in
6   Exhibit Number 7 that begins on the first page, Tuesday,
7   February 17, 2015, at 3:12, and continues on and takes up
8   the entire second page?
9  A.  Yes.
10  Q.  Are you referring in your email to the
11   correspondence Mr. Waxman wrote that's Exhibit 6?
12  A.  I think so.
13  Q.  Do you have any questions about that?
14  A.  What's the date of that?  No, I don't.
15  Q.  Okay.  If you can just turn to the second full
16   paragraph on page -- on the second page, which is
17   ADG 285 --
18  A.  Yeah.
19  Q.  -- there's a sentence after the web link that
20   says, and I think this is your language, quote -- quote, I
21   would surmise that TON -- let me just pause there.  Is
22   that The Tohono O'Odham Nation?
23  A.  Yes.
24  Q.  "I would surmise that TON intends to proceed with
25   its construction without regard to the status of the

---

Case 2:15-cv-01135-DGC   Document 296-2   Filed 01/03/17   Page 5 of 5

The Tohono O'Odam Nation vs. Ducey                    Director Daniel H. Bergin         30(b)(6) of Arizona Department of Gaming
2:15-CV-01135-DGC                                                                                                  May 19, 2016

14:31:30                                                                            Page 150

 1            MR. NORTHUP:  And you're not expecting us
 2   back tomorrow, right?
 3            MR. TILLEMAN:  No.
 4            MR. NORTHUP:  All right.  We'll read and
 5   sign.
 6            (The deposition was concluded at 2:31 p.m.)
 7
                   _____
 8                      DIRECTOR DANIEL H. BERGIN
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                                                                                    Page 151
 1   STATE OF ARIZONA      )
 2   COUNTY OF MARICOPA    )
 3            BE IT KNOWN the foregoing deposition was
 4   taken by me pursuant to stipulation of counsel; that I was
 5   then and there a Certified Reporter of the State of
 6   Arizona, and by virtue thereof authorized to administer an
 7   oath; that the witness before testifying was duly sworn by
 8   me to testify to the whole truth; notice was provided that
 9   the transcript was available for signature by the
10   deponent; that the questions propounded by counsel and the
11   answers of the witness thereto were taken down by me in
12   shorthand and thereafter transcribed into typewriting
13   under my direction; that the foregoing pages are a full,
14   true, and accurate transcript of all proceedings and
15   testimony had and adduced upon the taking of said
16   deposition, all to the best of my skill and ability.
17        I FURTHER CERTIFY that I am in no way related to
18   nor employed by any parties hereto nor am I in any way
19   interested in the outcome hereof.
20        DATED at Phoenix, Arizona, this 26th day of
21   May, 2016.
22
23        _____
              Meri Coash, RMR, CRR
24            Certified Reporter #50327
25