FENNEMORE CRAIG, P.C.
Patrick Irvine (No. 006534)
Douglas C. Northup (No. 013987)
Carrie Pixler Ryerson (No. 028072)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: PIrvine@fclaw.com
Email: DNorthup@fclaw.com
Email: CRyerson@fclaw.com

GIBSON, DUNN & CRUTCHER LLP
Matthew D. McGill (admitted *pro hac vice*)
1050 Connecticut Avenue N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Email: MMcGill@gibsondunn.com

Matthew A. Hoffman (admitted *pro hac vice*)
Andrew G. Pappas (admitted *pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Email: MHoffman@gibsondunn.com
Email: APappas@gibsondunn.com

*Attorneys for Defendant/Counterclaimant*
*Director Daniel Bergin, Arizona Department of Gaming*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| The Tohono O'odham Nation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Douglas Ducey, Governor of Arizona; Mark Brnovich, Arizona Attorney General; and Daniel Bergin, Director, Arizona Department of Gaming, in their official capacities,<br><br>　　　　　Defendants. | No. 2:15-cv-01135-DGC<br><br>**DEFENDANT DANIEL BERGIN'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| Daniel Bergin, Director, Arizona Department of Gaming, in his official capacity,<br><br>　　　　　Counterclaimant,<br><br>　　v.<br><br>The Tohono O'odham Nation,<br><br>　　　　　Counterdefendant. | |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 1

    A. The Nation's Motion Should Be Denied as Procedurally Improper. ............. 1

    B. In the Alternative, the Motion Should Be Denied Because the Nation Misstates the Governing Law and Distorts the Record. ................................. 4

    C. Summary Judgment Remains Inappropriate for Other Reasons. ................. 10

III. CONCLUSION .................................................................................................. 11

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Adams*,
   89 P.3d 743 (Alaska 2004)................................................................................................ 6

*AFL Telecomms LLC v. Fiberoptic Hardware, LLC*,
   2011 WL 5828185 (D. Ariz. Nov. 18, 2011)................................................................... 1

*Black Gold Marine, Inc. v. Jackson Marine Co. Inc.*,
   759 F.2d 466 (5th Cir. 1985) ........................................................................................... 6

*Blakeley v. Bradley*,
   281 S.W.2d 835 (Mo. 1955) ............................................................................................ 7

*Bowmer v. HC Lewis, Inc.*,
   243 Cal. App. 2d 501 (1966) ........................................................................................... 6

*Estrada v. Bashas' Inc.*,
   2014 WL 1319189 (D. Ariz. Apr. 1, 2014) ..................................................................... 1

*Gladden v. Guyer*,
   426 P.2d 953 (Colo. 1967)............................................................................................... 7

*Home Owners' Loan Corp. v. Bank of Ariz.*,
   94 P.2d 437 (Ariz. 1939).................................................................................................. 6

*Humbert v. Larson*,
   68 N.W. 703 (Iowa 1896) ................................................................................................ 7

*Hutson v. ME Capital LLC*,
   2016 WL 7187928 (D. Ariz. Dec. 12, 2016) .................................................................. 1

*Kona Enters., Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) ........................................................................................... 1

*Porto Rico Mining Co. v. Conklin*,
   271 F. 570 (8th Cir. 1921) ............................................................................................... 6

*Richardson v. Lowe*,
   149 F. 625 (8th Cir. 1906) ............................................................................................... 6

*Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*,
   68 A.3d 665 (Del. 2013) .................................................................................................. 6

*Shore Builders, Inc. v. Dogwood, Inc.*,
   616 F. Supp. 1004 (D. Del. 1985).................................................................................. 10

# TABLE OF AUTHORITIES (Continued)

Page(s)

*U.S. Plywood Corp. v. Hudson Lumber Co.*,
    139 F. Supp. 19 (S.D.N.Y. 1955) ................................................................................ 6

*Wolin v. Zenith Homes, Inc.*,
    146 A.2d 197 (Md. 1959) ............................................................................................ 6

*Wood v. Carpenter*,
    101 U.S. 135 (1879) .................................................................................................... 6

**Rules**

L.R. Civ. 7.2(g)(1) .............................................................................................................. 1, 2

**Other Authorities**

Black's Law Dictionary 622 (9th ed. 2009) .......................................................................... 1

Rest. (2d) Contracts § 380 .................................................................................................... 6

## I. INTRODUCTION

The Nation's motion amounts to a procedurally improper attempt to relitigate issues that the Court squarely considered and resolved against it. To the extent the Nation presents any argument or evidence that could possibly be characterized as new, none should alter the Court's carefully considered order. Restatement Section 380 requires the Nation, as the moving party, to establish that the State had actual knowledge that the Nation's statements and omissions during Compact negotiations were false *when made*. As the Court already found, the Nation's disclosure of its plans to take land into trust for gaming purposes in 2009 does not itself constitute a disclosure that the Nation's statements during Compact negotiations were false and is not sufficient to establish the State's actual knowledge of a misrepresentation as a matter of law. And the Nation points to no other evidence establishing that the State knew prior to April 2011 that the Nation had misled it in 2001-2002. The Court should deny the Nation's motion.

## II. ARGUMENT

### A. The Nation's Motion Should Be Denied as Procedurally Improper.

Motions for reconsideration are to be used "sparingly" (*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)) and should be denied absent a showing of "manifest error" or "new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." L.R. Civ. 7.2(g)(1). They are "not the place for parties to make new arguments not raised in their original briefs" (*Hutson v. ME Capital LLC*, 2016 WL 7187928, at *1 (D. Ariz. Dec. 12, 2016)), or "to ask the Court to rethink what it has already thought" (*AFL Telecomms. LLC v. Fiberoptic Hardware, LLC*, 2011 WL 5828185, at *1 (D. Ariz. Nov. 18, 2011)).

The Nation's motion does not satisfy this exacting standard. At no point does it argue that the Court committed "manifest error"—that is, error that is "'plain and indisputable'" and that "amounts to a complete disregard of the controlling law or the credible evidence in the record." *Estrada v. Bashas' Inc.*, 2014 WL 1319189, at *1 (D. Ariz. Apr. 1, 2014) (quoting Black's Law Dictionary 622 (9th ed. 2009)). Nor does it

identify any new, previously unavailable legal authority. Most of the evidence it relies upon was included in its separate statement of facts (*see, e.g.*, Doc. 295 at 4, 5, 7–9) or else was available before the Court's summary judgment order (Docs. 296-1 through 296-6).

The Nation contends its motion is proper because: "(1) Bergin did not dispute the facts establishing the State's knowledge in his opposition; (2) he conceded that, in the State's view, the Nation 'revealed its fraud to the State' in January 2009, and (3) he never argued that the State did not know the facts relevant to its 'secret plan' allegations in 2009." Doc. 295 at 11. None withstands even minimal scrutiny. As the Court noted, Director Bergin *did* contest the State's knowledge (*see* Doc. 291 at 5 (citing Doc. 274 ¶ 5)), and the Nation responded—without citing the Director's supposed "concession" that the Nation "revealed its fraud"—by stating, "[w]hile Bergin does not simply admit the State's knowledge, he does not deny the facts demonstrating its knowledge and he cites no controverting evidence." Doc. 283 at 1 n.2 (citing SUMF/COSF ¶¶ 3, 5; *Loza v. Am. Heritage Life Ins. Co.*, 2012 WL 1019033, at *7 n.2 (D. Ariz. Mar. 26, 2012)). That the Nation chose to ignore statements it now argues are dispositive and write off the issue in a footnote is not a reason to reconsider the Court's order.

Moreover, although Local Rule 7.2(g)(1) states that "[n]o motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of … the motion that resulted in the Order," many of the Nation's arguments are virtually identical to those presented in its summary judgment briefing. For example:

| **Summary Judgment Briefing** | **Motion for Reconsideration** |
|---|---|
| "Since learning in 2009 of the Nation's alleged fraud," the State had ratified the Compact. Doc. 253 (MSJ) at 2. | "[A]s of January 2009, the State actually knew that any representation … that the Nation would not game in the Phoenix area was false." Doc. 295 at 1. |
| "Despite learning of any purported 'fraud' in January 2009, the State has continued to accept all the benefits of the Compact." Doc. 253 at 6. | |
| "The State knew or should have known no | |

2

| | |
|---|---|
| later than January 2009 that any purported 'represent[ions]' by the Nation 'that [the Nation] would not conduct Class III gaming on any lands in the Phoenix metropolitan area' … were incorrect." Doc. 254 (SUMF) ¶ 5.<br><br>"The Nation announced the WVR in January 2009; at that time, the State knew that any 'assurances' the Nation would not locate a gaming facility near Phoenix were incorrect...." Doc. 283 (MSJ Reply) at 1.<br><br>"[T]he Nation's plan for the [WVR] was announced in January 2009. The Nation met with the governor's office to discuss it. At that time, the State knew that any purported representations that the Nation had made about not gaming in the Phoenix area weren't true." 12/14/16 Tr. 6:25-7:4. | |
| "In January 2009, the Nation met with Governor Brewer's staff about its plans to build the West Valley Resort & Casino ('WVR') near Glendale, Arizona." Doc. 254 (SUMF) ¶ 3. | "[T]he Nation disclosed those facts to the State in January 2009 when it met with the State, publicly announced plans for the WVR, and applied to have the WVR property taken into trust." Doc. 295 at 2.<br><br>"It is beyond dispute that, as of January 2009, when the Nation announced its intent to conduct Class III gaming at the WVR and met with the State to discuss the WVR project (SUMF/COSF ¶¶ 3-5), the State knew that any alleged representation that the Nation would not game in Phoenix—or any inference the State drew to that effect based on the Nation's alleged misrepresentations or omissions—was 'not in accord with the facts,' *Rest. (2d) Contracts* §159." Doc. 295 at 4-5. |
| "Following a resolution by the Nation's Legislative Council on January 27, 2009, the Nation publicly announced its plans to build the WVR." Doc. 254 (SUMF) ¶ 4. | "The Nation's January 2009 Council Resolution, for example, stated that the WVR property was acquired in 2003 and the date of the acquisition was widely reported in the media." Doc. 295 at 10. |

3

The Court carefully considered and rejected these arguments in its summary judgment order. Citing the Nation's argument that the State had ratified the Compact "since learning in 2009 of the Nation's alleged fraud" (Doc. 291 at 3), the Court explained that the Nation "ha[d] not established the first step in this argument – when the State learned of the Nation's fraud." *Id*. at 4. It noted that while the Nation asserts it "met with the Governor in January 2009 to discuss its plans to build the WVR, and announced the plans publicly on January 27, 2009"—an argument the Nation repeats in its present motion—such assertions were not "tantamount to disclosure that the Nation … was planning in 2001 and 2002 to open a casino in the Phoenix area." *Id*. at 5. Because "[t]he Director's allegation of fraud focuses on the 2001-2002 time period when the Compact was being negotiated," the Nation needed to establish undisputed facts showing that the State knew the representations made in 2001 and 2002 were false. *Id.* But, as the Court observed, "[t]he Nation's disclosure in 2009 of plans to open the WVR said nothing about when those plans were formed or the truthfulness of representations made during negotiation of the Compact." *Id*. The Court further found that a January 19, 2010 letter from Governor Brewer—the *only* "item of evidence" the Nation cited "in support of its assertion that the State knew of the fraud in January 2009," which the Nation has now abandoned—similarly did not establish the State's knowledge. *Id*. at 6. Far from demonstrating that it had disclosed that its representations in 2001 and 2002 were false, the Nation steadfastly denies that it made any false statements in that time period. *See*, *e.g.*, Doc. 253 at 2. The Nation cannot claim that it disclosed its 2001-2002 fraud and at the same time deny its existence.

**B.   In the Alternative, the Motion Should Be Denied Because the Nation Misstates the Governing Law and Distorts the Record.**

The thrust of the Nation's legal argument is that the Court misconstrued Restatement Section 380 to require actual knowledge by the State of *fraud*—i.e., that comments during negotiations were *intentionally* false when made—rather than a suspicion that those comments were "not in accord with the facts." Doc. 295 at 1, 3.

4

Even though the Nation arguably invited such an interpretation by contending that the State "learn[ed] of any purported '*fraud*' in January 2009" (Doc. 253 at 6, emphasis added; *see also id.* at 2), the Nation is mistaken as to both the legal standard and applicable facts.

Whatever Section 380 requires—whether it is actual knowledge that a statement was simply false when made, or, as the Court stated, actual knowledge that the statement was *intentionally* false when made—it is plainly something more than mere knowledge that a statement is "not in accord with the facts."

The Nation cites Restatement Section 159 to define "misrepresentation" (Doc. 295 at 3), but the illustrations in that Section confirm that what matters for a misrepresentation is not whether a subsequent statement contradicts an earlier one, but whether it shows that the earlier statement was false *when made*. Take illustration 5, for example:

> A, seeking to induce B to make a contract to buy land, promises B to build an expensive house on an adjoining tract. A knows that he neither owns nor has such an interest in the tract that he can perform the promise, although he hopes to perform it. B makes the contract. A's promise implies an assertion that he owns the tract or has such an interest in the adjoining tract that he can perform his promise, and this assertion is a misrepresentation.

If A were to later tell B he can no longer build the house, B could not seek to void the contract on the basis of misrepresentation until B had actual knowledge that A, *at the time he made the promise*, was unable to perform it.

This comports with the Court's holding that the Nation did not establish actual knowledge—of any misrepresentation, much less a fraudulent one—because it failed to show that the State knew in 2009 that the Nation's statements were false when made in 2001 or 2002. Doc. 291 at 5 (2009 disclosure inadequate because it was "quite possible that the plans were formed well after the Compact was signed, in which case they would not support a claim of fraudulent inducement"). The Court should reject the Nation's belated attempt to thrust upon the Court a new legal standard that lacks legal support.

Alternatively, the Nation appears to argue that the State was on notice, based on the 2009 disclosures, that the statements made during negotiations were false when made. Doc. 295 at 6-7 (arguing that the fraud "reasonably could have been discovered" or that there was "notice enough to excite attention" of the fraud). But that effectively argues for a constructive knowledge standard, which is plainly inapplicable to Section 380. *See* Rest. (2d) Contracts § 380 (requiring "actual knowledge" if the misrepresentation is alleged to be fraudulent); *cf. Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 680–82 & n.67, 71 (Del. 2013) ("expressly reject[ing]," in context of reformation claim, the contention that constructive knowledge satisfies Section 380, and noting that "[t]he Arizona Supreme Court impliedly requires actual knowledge for ratification to bar reformation") (citing *Home Owners' Loan Corp. v. Bank of Ariz.*, 94 P.2d 437 (Ariz. 1939)); *Adams v. Adams*, 89 P.3d 743, 751 (Alaska 2004) ("actual knowledge of the misrepresentation, rather than reason to know it, is necessary").[1]  Further, the duty to rescind does not arise until a party has actual knowledge of "*all* the facts related to [a defendant's] misrepresentation" (*Black Gold Marine, Inc. v. Jackson Marine Co. Inc.*, 759 F.2d 466, 471 (5th Cir. 1985) (emphasis added)), or, at minimum, "the *substantial and material facts constituting the fraud*" (*Richardson v. Lowe*, 149 F. 625, 631 (8th Cir. 1906) (emphasis added); *Bowmer v. HC Lewis, Inc.*, 243 Cal. App. 2d 501, 503 (1966) (in deciding whether rescission is an available remedy, "[i]t is essential to ascertain whether the person defrauded did or did not have full knowledge of the material facts")). The cases cited by the Nation are inapposite.  All involve instances of affirming conduct taken after the plaintiff had

---

[1] The Nation cites *Wood v. Carpenter*, 101 U.S. 135 (1879) for the proposition that a "presumption" of actual knowledge should apply because the State could have discovered the fraud in 2009. Doc. 295 at 7.  In *Wood*, the plaintiff (a creditor) argued his claim was timely because the defendant (a debtor) had lied about his ownership of certain properties.  The Court disagreed because the ownership of the properties was a matter of public record—and the plaintiff knew it. *Wood*, 101 U.S. at 140.  Here, of course, the Nation's disclosure of its plans in 2009, or even its purchase of the parcel in 2003, hardly demonstrates that it had plans to game in Phoenix in 2001 or 2002.

knowledge of substantial, material facts of fraud; none imposes an obligation to seek rescission based simply on a *suspicion* that a statement is at odds with an earlier representation.[2]  *See Porto Rico Mining Co. v. Conklin*, 271 F. 570, 582 (8th Cir. 1921) ("[a] mere rumor or suspicion does not require an election" between rescinding or affirming a contract); *see also Blakeley v. Bradley*, 281 S.W.2d 835, 842 (Mo. 1955) (finding that plaintiff did not lose right to rescind contract even though he was "suspicious about the transaction from the start" where there was "active concealment of the facts by defendants" through the time the suit was filed); *Humbert v. Larson*, 68 N.W. 703, 704 (Iowa 1896) (obligation to rescind or affirm contract for sale of stallion did not arise "upon mere rumors" that it was not suitable for breeding).  Such a rule protects defrauded parties but does not reward the non-diligent or those who take actions inconsistent with rescission.

Even though it has the burden to do so, the Nation failed to prove, as a matter of undisputed fact, when the State had actual knowledge of the "substantial and material facts" that the Nation's representations and omissions were false when made—not just that they might support a breach of contract claim.  As the Court correctly concluded, the Nation's announcement of its plans in 2009 did not conclusively establish that Mr. Quigley or Mr. Curry had *lied* in 2001 or 2002 (something the Nation continues to deny), rather than changed their plans or discovered a loophole in the Compact at some later date.  *See* Doc. 291 at 5.

In an attempt to remedy its evidentiary deficit, the Nation first points to several of the State's pleadings—its original and amended complaints in 2011, and Director

---

[2] *See Wolin v. Zenith Homes, Inc.*, 146 A.2d 197, 202−03 (Md. 1959) (party could not rescind real estate transaction after demanding that seller make repairs, even though it later discovered other false and fraudulent misrepresentations); *U.S. Plywood Corp. v. Hudson Lumber Co.*, 139 F. Supp. 19, 21 (S.D.N.Y. 1955) (where the party "ret[ained] the fruits of the contract" over a three-year period, knowledge of fraud not diminished simply because party did not have "every scrap of evidence to establish their claim upon a trial"); *Gladden v. Guyer*, 426 P.2d 953, 955 (Colo. 1967) (acts of affirmance by purchasers of cattle after they had "knowledge that the defendants had concealed [that the cattle were diseased]" waived right of rescission).

7

Bergin's 2015 counterclaims—and argues that the claims alleged in those documents were premised on information the State knew in 2009. *See* Doc. 295 at 9 (discussing "secret plan" allegations in *TON I* complaints); *id.* at 9–10 (arguing that the 2015 counterclaims are premised on "precisely the same facts"). As to the present counterclaims, the Nation is simply wrong: Director Bergin's allegations are based on information he learned after January 2009. *See*, *e.g.*, Doc. 93 ¶¶ 52, 56–60 (discussing testimony and documentary evidence gathered during discovery in *TON I*). As for the complaints in *TON I*, as the Court already found, there is "no evidence that the State knew before [April 22, 2011] that the Nation was planning … to build a west-Phoenix casino" during the compact negotiation period. Doc. 291 at 6. Moreover, what the State believed by 2011 (and thought it could prove after a reasonable opportunity for further investigation or discovery) says nothing about what the State knew in 2009. And far from arguing in 2011 that the State's claim for rescission was tardy, the Nation actually argued it was *premature* (*TON I*, Doc. 24 at 5–11; *see also* Doc. 33 at 2) and that its amended complaint "plead[ed] no facts that would support an inference that the Nation had … 'definite plans' [to game] in 2002." *TON I*, Doc. 33 at 24.

The Nation next cherry-picks snippets of Mr. Bielecki's testimony to argue that "when 'the Nation announced the WVR project,' he thought, 'somebody lied to us.'" Doc. 295 at 5 (quoting Lebsack Supp. Decl. Ex. 1 (Bielecki Tr. 155:7–156:21)). Whatever Mr. Bielecki "personally" believed or suspected, he was not and could not have been speaking on behalf of the State because he: (1) was not employed by the State in 2009; (2) did not recall discussing his thoughts with any representative of the State; and (3) was not designated as a 30(b)(6) witness on the subject of when the State learned the Nation had committed fraud. Doc. 154-2; *see also* Ryerson Decl. Ex. A (Bielecki Dep. Ex. 11).

The Nation's discussion of Director Bergin's statements is even more misleading. First, it distorts Director Bergin's summary judgment opposition—which, of course, was considered by the Court at the time of the summary judgment briefing—and attempts to

imply knowledge by stringing together statements that he did not know the Nation owned the WVR property until 2009 with statements that the State "took responsible steps" "after the Nation revealed its fraud to the State" and did not take the drastic step of "unilaterally voiding the Compact in its entirety as soon as the Nation revealed what it had been concealing." Doc. 295 at 5, 10, 11. But at no time in his opposition did Director Bergin admit that he had actual knowledge of the Nation's fraud as soon as he learned of the ownership of the West Valley parcel; indeed, none of the statements the Nation points to references any particular date at all. Moreover, as noted above, Director Bergin expressly disputed the Nation's allegations that the State knew about any fraud in 2009. Doc. 274 (CSOF) ¶ 5. These statements cannot form the basis for a finding of knowledge either—and certainly not as a matter of law.

Next, the Nation selectively quotes Director Bergin's deposition testimony, arguing that he "became 'aware of the conduct of the Nation' that he contends is the 'basis for not honoring' the Compact 'shortly after he started at ADG in 2009.'" Doc. 295 at 5 (citing Lebsack Supp. Decl. Ex. 2 (ADG 30(b)(6) Tr. 22:15-21)), and that the "allegedly fraudulent 'conduct' included 'concealment of the fact the Nation used a shell corporation to acquire the property … in 2003.'" *Id*. 24:12-22; *see also id.* 23:4-6 ("I've been aware of a variety of different issues" "ever since the announcement was made that the Tribe took [the WVR property] into trust."). The quoted testimony—asking when the Director became "aware" of the "basis for not honoring the 2003 compact"—is ambiguous at best. When asked more directly about when he acquired knowledge of the Nation's misrepresentations, Director Bergin responded that he had "suspicions" but nothing he would describe as knowledge, which is what Section 380 of the Restatement calls for:

> Q. So you became aware at that point that in -- whenever that -- the Nation announced that publicly, that in your view, the statements that the Nation had made in negotiations with state negotiators and also to other third parties were not accurate, were false?
> **A. I hadn't done any actual analysis. It was a suspicion in 2009 when I first heard that they were going to take this land into trust**, which is one

9

thing, but that they were going to conduct gaming in the Phoenix metropolitan area contrary to the exact things they had promised otherwise.
Q. And so **were you aware of this conduct that you're saying forms the basis for the --**
A. Right.
Q. – **Department's position --**
A. Right.
Q. **-- here in 2013?**
**A. Some of it. Not all of it.**
…
Q. At that point, whenever that happened, you were aware of all of the alleged misstatements, truths, omissions that the State had made in 2000 -- you say to the negotiators and to third parties up and through 2002?
…
**A. No. I don't know exactly when I gained all this information. I knew some of it. It was a suspicion, at best, for me.**

*Id*. 25:9-26:1, 27:6-16.

At minimum, these statements support the Court's view that there are genuine issues of material fact as to the timing and nature of the State's knowledge of the misrepresentations. Those issues preclude summary judgment here.

C. **Summary Judgment Remains Inappropriate for Other Reasons.**

Even if the Court decides that the State had a duty to seek rescission in 2009, summary judgment would still be inappropriate for multiple legal and equitable reasons. As Director Bergin's summary judgment opposition explains, none of the State's actions between 2009 and its suit in 2011 affirmed or ratified the Compact, because the State accepted no benefits and performed no obligations with respect to the WVR. Doc. 273 at 12. That is significant because the Compact is divisible as to casinos, like the WVR, that are not yet in operation. *Id*. at 12–13. The Court recognized the need to eventually resolve this question in its order denying summary judgment. Doc. 291 at 7. Because the Compact is divisible, Director Bergin may partially void the Compact with respect to the WVR or, at minimum, may void the provisions induced by fraud, namely, those allowing the Nation to operate four gaming facilities. Doc. 273 at 14 & Addendum A. Finally, even if the Compact were deemed indivisible, the Court should exercise its equitable

10

powers to permit Director Bergin to void the Compact with respect to the WVR or to rescind the fraudulent provisions based on the good faith of the State and the inequitable conduct by the Nation. *See Shore Builders, Inc. v. Dogwood, Inc.*, 616 F. Supp. 1004, 1021−1022 (D. Del. 1985) (explaining that the Restatement is not meant to be applied mechanically). The State should not be punished for having declined to unilaterally void the Compact in 2009—thereby depriving the Nation of revenues from its other, unaffected casinos—at the first suspicion of fraud or misrepresentation. Doc. 273 at 15.

## III. CONCLUSION

For the foregoing reasons, the Nation's motion should be denied.

DATED this 20th day of January, 2017.

                              GIBSON, DUNN & CRUTCHER LLP

By:  s/ Matthew A. Hoffman
       Matthew D. McGill
       Matthew A. Hoffman
       Andrew G. Pappas

-and-

Patrick Irvine
Douglas C. Northup
Carrie Pixler Ryerson

FENNEMORE CRAIG, P.C.

*Attorneys for Defendant Director Daniel Bergin, Arizona Department of Gaming*

# CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2017, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Seth P. Waxman<br>Danielle Spinelli<br>Kelly P. Dunbar<br>Sonya L. Lebsack<br>Kevin M. Lamb<br>Wilmer Cutler Pickering Hale & Dorr LLP<br>1875 Pennsylvania Ave. NW<br>Washington, DC  20006<br>Email:  seth.waxman@wilmerhale.com<br>Email:  danielle.spinelli@wilmerhale.com<br>Email:  kelly.dunbar@wilmerhale.com<br>Email:  sonya.lebsack@wilmerhale.com<br>Email:  kevin.lamb@wilmerhale.com<br>*Attorneys for Plaintiff*<br>*The Tohono O'odham Nation* | Jonathan Landis Jantzen<br>Laura Lynn Berglan<br>Tohono O'odham Nation<br>Office of the Attorney General<br>P. O. Box 830<br>Sells, AZ  85634<br>Email:  jonathan.jantzen@tonation-nsn.gov<br>Email:  laura.berglan@tonation-nsn.gov<br>*Attorneys for Plaintiff*<br>*The Tohono O'odham Nation* |
| Paul K. Charlton<br>Karl M. Tilleman<br>Erin N. Bass<br>Steptoe & Johnson LLP<br>201 E. Washington St., Suite 1600<br>Phoenix, AZ  85004<br>Email:  pcharlton@steptoe.com<br>Email:  ktilleman@steptoe.com<br>Email:  ebass@steptoe.com<br>*Attorneys for Plaintiff*<br>*The Tohono O'odham Nation* | Jennifer B. Bonneville<br>Steptoe & Johnson LLP<br>633 W. Fifth Street, Suite 700<br>Los Angeles, CA 90071<br>Email:  jbonneville@steptoe.com<br>*Attorneys for Plaintiff*<br>*The Tohono O'odham Nation* |

s/ Phyllis Warren
An employee of Fennemore Craig, P.C.

102235489.6

12